UNITED STATES DISTRICT COURT:
EASTERN DISTRICT OF NEW YORK

Richard Roe,

                Plaintiff,

- against -

St. John's University and Jane Doe,

                Defendants.

**Complaint**

19 CIV _____

Plaintiff Richard Roe ("Roe") alleges that:

### First Claim Against St. John's
### (Title IX Violation)

### THE PARTIES

1. He is domiciled in Queens, New York and is a student at defendant St. John's University ("St. John's"),

2. He wishes to remain anonymous in this action because of the harm publicity of this action will have on his academic and professional career and sues "Jane Doe" anonymously for the same reason.

3. St. John's is a private university whose principal place of business is located at 8000 Utopia Parkway, Jamaica, NY 11439.

4. Upon information and belief, defendant Jane Doe ("Doe") is domiciled in Queens County, New York and is a student at St. John's.

## JURISDICTION & VENUE

5. This Court has jurisdiction under Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681 *et seq*; accordingly, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

6. This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over all other claims in this action, as they are so related to claims in this action within its original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

7. This Court is an appropriate venue for this claim pursuant to 28 U.S.C. § 1391.

8. A substantial part of the events or omissions giving rise to the claims herein occurred in this district.

## THE FACTS

9. Roe has completed 2 years of coursework at St. John's as an "A" student; he needs approximately 60 additional credits to obtain his undergraduate degree.

10. Roe paid a significant amount of money to St. John's in the expectation of receiving an education, and upon completion, an undergraduate degree.

11. On April 12, 2018, Roe was in Paris at Duplex, a local club, to celebrate a birthday with several fellow St. John's students studying abroad.

12. Roe was asked by Doe to dance, and they did.

13. Sometime later, Doe told Roe that she was returning to the St. John's dorm where they were both staying.

14. Doe said she was taking an Uber, gave Roe her room number and asked him to check on her when he arrived back at the dorm.

15. Once Roe was back there, he went to Doe's room and found her awake.

16. Doe invited Roe into her room and, thereafter, Doe took Roe's right hand and put it upon her fully clothed breast.

17. He immediately said, "I am not interested in sex."

18. She said, "Then, get the hell out of here," and he left

19. On September 4, 2018, Roe was notified by St. John's that Doe had submitted four different "St. John's Code of Conduct" of sexual misconduct violations against him, *not including rape*.

20. On October 3, 2018, Roe attended a St. John's Faculty Board "Conduct Hearing."

21. On October 15, 2018, as a result of the Faculty Board determination following the Conduct Hearing, Roe was notified by St. John's (the "October 15 letter") that he was cleared of three of Doe's alleged four violations against him.

22. However, he was found "In Violation" of St. John's rules ("St. John's rules") prohibiting "Non-Consensual Sexual Contact."

23. The October 15 letter contained the following statement by the Faculty Board as its grounds for its finding of misconduct, but it supplied no support from the record of the proceeding:

3

> The respondent admitted in engaging in physical contact of a sexual nature with the complainant, and the evidence demonstrated a lack of affirmative consent to engage in such contact. Such evidence included the complainant's intoxication, as described by multiple witnesses, and the respondent's assertion, which was not disputed, that he was not impaired by alcohol.

24. Pursuant to St. John's "Sexual Misconduct Policies and Procedures: Policy 703" ("Policy 703"):

> Non-consensual sexual contact" means any intentional sexual touching, however slight, with any body part or object by an individual upon another individual without consent. Intentional sexual contact included contact with the breast...making another person touch any of these body parts... Consent is required regardless of whether the person initiating the act is under the influence of drugs and/or alcohol.

25. In the October 15 letter, St. John's suspended Roe for the fall 2018 semester upon a finding of his behavior "In Violation of non-Consensual Sexual contact."

26. At the Conduct Hearing, the only "admitted" "sexual contact" by Roe was that Doe "took his right hand and placed it upon her fully clothed breast."

27. Thus, Roe was suspended for the "sexual misconduct" which Doe committed.

28. On January 4, 2019, Doe published a tweet (the "tweet") which stated, "['Roe'] was allowed to stay abroad after raping me...only got half a semester suspension."

29. The tweet also included a picture of Roe.

30. The record of the St. John's proceedings where Roe was suspended for alleged misconduct against Doe was confidential.

31. Only Doe, Roe and University officials were informed of Roe's suspension and the reason for it.

4

32. The only person who could have authored the tweet was Doe.

33. In the tweet, Doe accused Roe of raping her although she had not accused him of rape in her complaint to St. John's.

34. On January 5, 2019, one day after the tweet, a male student threatened to "fuck Roe up" via phone calls and text messages.

35. Thereafter, another female St. John's student punched Roe in his face at a bar.

36. Also, on January 5, 2019, one day after the tweet, a second female student accused Doe of sexual misconduct in a complaint to St. John's (the "January 5 complaint").

37. Thereafter, St. John's suspended Roe indefinitely for having been accused of an alleged second violation of St. John's rules.

38. On January 16, 2019, after Roe complained to St. John's about the tweet, Keaton Wong, St. John's Director of Equal Opportunity, Compliance and Title IX Director, responded as follows:

> Thank you for bringing to the University's attention the tweet that was recently posted about you. Although the University cannot sanction the individual who posted the tweet because we cannot confirm their identity, we recognize that it has deeply affected you...

39. On June 12, 2019, Roe's attorney emailed St. John's attorney as follows:

> After investigation, I have reliable information that the tweet "went viral" at the University with faculty members and students almost universally aware of its content. Since the proceedings resulting in [Roe's] suspension were confidential, he may not himself "set the record straight." As a result of the tweet, [Roe] has been threatened with bodily harm and was punched in the face by a female student. A day after the tweet, [Roe] was accused of sexual misconduct in a second complaint. At a hearing [on the new

5

complaint], the faculty members on the panel will have most probably heard of or reviewed the defamatory allegations of the tweet—without there having been a contradiction of it by the University. The University is complicit in the tweet's defamation of [Roe] and in the physical attacks he has been threatened with or experienced.

40. On June 17, 2019, St. John's attorney Joshua S. Hurwit responded as follows:

    Your letter claims that it will be "impossible" for [Roe] to receive a fair hearing. We disagree. You offer no information that the individuals who will adjudicate the matter have knowledge of the tweet or the prior matter involving [Roe], or that even if these individuals had such knowledge, they would be unable to adjudicate the matter fairly and impartially. In sum, your belief that [Roe] will not receive a fair hearing is based on speculation and conjecture.

41. On July 18, 2019, Roe's attorney wrote to Mr. Hurwit, to state, *inter-alia,* "requests" as follows:

    a. "Will the University correct the defamatory statement in the notorious tweet of January 4, 2019?"

    \*                    \*                    \*

    b. "Since there can be no question as to the author of the tweet, will the University sanction [Doe]...?"

42. On July 18, 2019, Mr. Hurwit responded as follows:

    Your requests regarding the "tweet" are self-serving and inaccurate. As I have explained to you on multiple occasions, the "tweet" was made anonymously, St. John's University has no evidence whatsoever that [Doe] is the author of the "tweet," and there will be no reference to the "tweet" at the University Conduct Board hearing unless your client opens the door. [Roe] has received, and will continue to receive, a fair and impartial process.

43. Pursuant to Policy 703, St. John's defines "hostile environment" as follows:

    A "hostile environment" exists when the conduct is sufficiently severe… that it is unreasonably interferes with, limits, or deprives an individual from participation in or benefiting from the University's education… when judged against a reasonable person standard.

6

44. St. John's is obligated to protect Roe's academic atmosphere so as to eliminate any known "hostile environment" of which it is aware.

45. Because of the tweet, a hostile environment has existed for Roe since January 4, 2019.

46. Pursuant to Policy 703, "Sexual Harassment" includes "sexual offensive comments…" and:

> Sex discrimination is an act that disadvantages a person and that occurs because of the affected individual's gender … Sexual harassment includes … verbal conduct of a sexual nature, when … such conduct is sufficiently severe…such that it limits an individual's ability to participate in, or benefit from, the University's education or work programs or activities (hostile environment).

47. Because of Doe's defamatory tweet in violation of St. John's rules, Roe has been punched in the face, banned from social events, and his reputation destroyed.

48. However, despite due complaint by Roe and his attorney, St. John's has not investigated the tweet.

49. Had it done so, the Doe's tweet probably would have disappeared and the hostile environment against Roe would have dissipated.

50. Pursuant to 20 U.S.C. sections 1681-1688, "Any education facility receiving federal funds can't discriminate on the basis of sex."

51. There is irrefutable evidence of St. John's discriminatory bias against Roe as a male student since it found him in violation of the St. John's rules based upon the conduct of Doe taking his hand and placing it upon her breast, a clear violation of the St. John's rules by her and not by him.

52. When allegations of "Code of Conduct" violations were made against Roe by Doe, St. John's immediately investigated and scheduled a hearing as to her claims.

53. Although Roe's tweet made a complaint of "Code of Conduct" violations by Doe, St. John's did not investigate it.

54. As a male student, Roe was denied the right to have the "tweet" investigated which St. John's admits, "deeply affected him."

55. St. John's has scheduled a Faculty Board hearing on the second complaint for August 27.

56. St. John's has not published the procedures that will be followed to ensure that due process is observed at the Conduct Hearing on the second complaint.

57. For instance, there is no information published by St. John's as to how faculty members are selected for a Conduct Hearing, by whom they are selected, who may speak to them prior to, during and after the hearing, the permissible subject of any St. John's conversations with members or prospective members of the Conduct Board and as to safeguards to be observed to prevent bias.

58. Investigation has revealed that the allegations of the tweet against Roe are commonly known by the faculty and students of St. John's.

59. In Roe's circumstance, it is almost certain that one or more of the faculty members will have known about the tweet, therefore, making it impossible to eliminate bias so as to observe due process.

60. By reason of the foregoing, St. John's has violated Title IX and Roe is entitled to the following relief:

    a. Judgment in favor of Roe awarding compensatory damages in the amount of at least $750,000, and

    b. An injunction restoring Roe as a student without any Code of Conduct violations and prohibiting further disciplinary proceedings that violate Title IX, and which do not observe due process, and

    c.     Court costs and other reasonable expenses incurred in maintaining this action, including reasonable attorney's fees as authorized by 42 U.S.C. §1988.

### For a Claim Against Defendant Jane Doe
### (Defamation)

61. Roe repeats and realleges each and every allegation of all paragraphs except those of paragraph 60.

62. Doe's allegations of rape against Roe were false, malicious, vindictive and intended to cause great harm and emotional distress.

63. By reason of the foregoing, Doe has defamed Roe and caused him great emotional distress and monetary damages as follows:

    a.     Compensatory damages of at least $750,000, and

    b.     Emotional distress damages of approximately $300,000, and

    c.     Punitive damages of $1,000,000.

### For a Second Claim Against St. John's
### (Defamation)

64. Roe reasserts and realleges each and every allegation set forth above except for those of paragraphs 60 and 63.

65. Despite the knowledge that Roe was not suspended for rape as alleged by the tweet; but for Doe having placed Roe's hand upon her breast, St. John's:

    a.     Did not investigate and sanction Doe for her defamatory allegations in the tweet of rape, and

    b.     Did not release a statement condemning Doe's tweet and correcting its allegations of rape by Roe, and

    c.    Has maliciously and purposely allowed the defamatory tweet to be unchallenged, thus, severely damaging Roe's future career and life prospects.

66. By reason of the foregoing, Roe asks:

    d.    Compensatory damages of at least $750,000, and

    e.    Emotional distress damages of approximately $300,000, and

    f.    Punitive damages of $2,000,000.

WHEREFORE, plaintiff seeks the relief requested above in paragraphs 60, 63 and 66.

**Jury Demand**

Roe hereby demands a trial by jury.

August 13, 2019

Attorneys for plaintiff Richard Roe:

*[signature]*

Peter G. Eikenberry (7257)
75 Maiden Lane, Room 402
New York, NY 10038
Tel: (917) 596-4168
pete@eikenberrylaw.com

Michael Valentine (0552)
61 Third Place
Brooklyn, New York 11231
Tel: (718) 858 0818
mvalentine@valentinelaw.com