UNITED STATES DISTRICT COURT:
**EASTERN DISTRICT OF NEW YORK**

Richard Roe,

                         Plaintiff,

-   against –

St. John's University and Jane Doe,

                         Defendants.

**Amended
Complaint**

19-cv-04694

PKC-RER

Plaintiff Richard Roe ("Roe") alleges that:

**Title IX First Claim Against St. John's
(It's discriminatory finding that Roe
engaged in sexual misconduct)**

**THE PARTIES**

1.    He is domiciled in Queens, New York and is a student at defendant St. John's University ("St. John's").

2.    He brings suit anonymously because of the harm publicity will have on his academic and professional career and because of St. John's confidentiality restrictions; he sues "Jane Doe" anonymously for the same reasons.

3.    St. John's is a private university whose principal place of business is located at 8000 Utopia Parkway, Jamaica, NY 11439.

4.    Upon information and belief, defendant Jane Doe ("Doe") is domiciled in Queens County, New York and is a student at St. John's.

**JURISDICTION & VENUE**

5.　　This Court has jurisdiction under Title IX of the Education Amendments of 1972

(Title IX), 20 U.S.C. §§ 1681 *et seq*; accordingly, this Court has jurisdiction pursuant to 28

U.S.C. §§ 1331 and 1343.

6.　　This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over all

other claims in this action, as they are so related to claims in this action within its original

jurisdiction that they form part of the same case or controversy under Article III of the United

States Constitution.

7.　　This Court is an appropriate venue for this action pursuant to 28 U.S.C. § 1391.

8.　　A substantial part of the events or omissions giving rise to the claims herein

occurred in this district.

**THE FACTS**

9.　　Roe, a first generation college student, was accepted to St. John's University on

nearly a full scholarship after he graduated with honors at the top of his class, with a weighted

average of 4.5 GPA, and succeeded in multiple Advanced Placement classes in both his junior and

senior year of high school.

10.　　Roe is an immigrant from Ecuador and a citizen of the U.S.; he has completed two

years of coursework at St. John's as an "A" student; he needs approximately 60 additional credits

to obtain his undergraduate degree.

11.　　As of October 15, 2018, he had enrolled in a five year program to receive both his

bachelors in criminal justice and masters in government and politics at an accelerated rate; after

graduation he expected to enroll in St. John's School of Law.

12.     Roe paid a significant amount of money to St. John's in the expectation of receiving an education, and upon completion, an undergraduate degree.

### The Incident in Paris, St. John's Discriminatory Finding and Sanctions Against Roe

13.     On April 12, 2018, Roe was in Paris at Duplex, a local club, to celebrate a birthday with several fellow St. John's students studying abroad.

14.     Roe was asked by Doe to dance, and they did.

15.     Sometime later, Doe told Roe that she was returning to the St. John's dorm where they were both staying.

16.     For both of them, it was their first night in Paris.

17.     Doe said she was taking an Uber, gave Roe her room number and asked him to "check on her" when he arrived back at the dorm.

18.     Several hours later, when Roe was back in the dorm, he went to Doe's room and found her awake and on her phone.

19.     Doe invited Roe into her room and, thereafter, Doe took Roe's right hand and placed it upon her fully clothed breast.

20.     He immediately said, "I am not interested in sex."

21.     She said, "Then, get the hell out of here," and he left.

22.     On September 4, 2018, Roe was notified by St. John's that Doe had submitted a St. John's Code of Conduct complaint of sexual misconduct against him ("Doe's complaint.")

23.     St John's was required to follow its "Sexual Misconduct Policies and Procedures: Policy 703" ("Policy 703") in investigating and determining Doe's complaint.

24.     Policy 703 was promulgated:

> In furtherance of the University's mission, and in accordance with Title IX of the Education Amendments of 1972 ("Title IX"), the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act (the "Clery Act"), as amended by the Violence Against Women Act/Campus Sexual Violence Act ( the "Campus SaVE Act").

25.     Policy 703 provides that:

> The University will take all available steps to promptly, thoroughly, and impartially investigate and address complaints of sexual misconduct by and against its students…in order to stop prohibited conduct, prevent its recurrence and address any effects on campus.

26.     On October 3, 2018, Roe attended a St. John's Faculty Board "Conduct Hearing" scheduled to determine Doe's complaint.

27.     On October 15, 2018, Roe was notified by St. John's (the "October 15 letter") that he had been found in violation of St. John's rules prohibiting "Non-Consensual Sexual Contact" and informed him that he was suspended (among other sanctions.)

28.     The October 15 letter contained the following statement of the Faculty Board as grounds for its finding but it supplied no support from the record of the proceeding:

> The following rationale has been provided by the hearing officer/board: "The respondent *admitted* (emphasis supplied) in engaging in physical contact of a sexual nature with the complainant, and the evidence demonstrated a lack of affirmative consent to engage in such contact. Such evidence included the complainant's intoxication, as described by multiple witnesses, and the respondent's assertion, which was not disputed, that he was not impaired by alcohol."

4

29. At the Conduct Hearing, other than kissing on the dance floor, the only "physical contact of a sexual nature" Roe "admitted" was that Doe "took his right hand and placed it upon her fully clothed breast."(The record of the October 2018 St. John's proceeding where Roe was suspended for alleged misconduct against Doe is confidential.)

30. Pursuant to Policy 703:

> Non-consensual sexual contact" means any intentional sexual touching, however slight, with any body part or object by an individual upon another individual without consent. Intentional sexual contact included contact with the breast…making another person touch any of these body parts… Consent is required regardless of whether the person initiating the act is under the influence of drugs and/or alcohol.

31. Thus, in the October 15 letter, St. John's suspended Roe for the fall 2018 semester upon a finding that he "admitted" to sexual misconduct by "engaging in physical conduct of a sexual nature," despite the fact that the only "physical contact of a sexual nature" to which Roe "admitted" was that Doe "took his right hand and placed it upon her fully clothed breast."

32. Because this action was initiated by Doe, it was a violation by her of the prohibition on "making another person touch any of these body parts."

33. Thus, Roe was suspended mid semester for the "sexual misconduct" which Doe herself committed.

34. As the initiator of the act, Doe was not shielded by Policy 703 for being "under the influence of alcohol."

35. Policy 703 as found in Section VII of St. John's Rules, "Process for Investigating and Resolving Complaints of Sexual Misconduct…" provides that:

If the University concludes that the respondent is responsible
for a violation of the policy, both the complainant and respondent
shall have the opportunity to submit a written impact statement to
the decision-maker prior to a determination of an appropriate sanction(s).
In making a determination regarding sanctions, the decision-maker may consider
the parties' impact statements…

36.     Roe appealed his October 2018 suspension on the grounds, *inter alia*, that he was

given no opportunity to submit an impact statement after a finding of misconduct and before

sanctions were determined.

37.     St. John's determination of Roe's appeal was as follows:

[Roe] argues that the "Conduct Board mandated sanctions simultaneously
with the finding of his misconduct" and, therefore, he did not have the
opportunity to submit a written impact statement … [Roe's] argument is
premised on application of Section VII (G) of University Policy 703…
[It] sets forth the University's policies to implement Title IX of the
Education Amendments of 1972, the Clery Act, and the other state and
federal laws. As such it is not part of the Code of Student Conduct or its
process. ..The Code of Student Conduct provides that only a complainant in
a Title IX-related student conduct matter has a right to present a written impact
statement.
*                          *                          *
Apart from claims of new evidence, our jurisdiction is limited to determining
whether there was "an omission in the *Student Conduct Process…*" To the
extent the Respondent claims that Policy 703 was not followed, his argument
is beyond our purview.

38.     Despite Roe's appeal and notwithstanding St. John's clear violation of Policy 703's

mandate requiring St. John's to comply with Title IX to give Roe the opportunity to submit a

written impact statement prior to its determination of sanctions, it refused.

39.     St. John's discriminatory bias against Roe as a male student is evident by:

a)      It finding him in violation of the St. John's rules based upon the conduct of
        Doe taking his hand and placing it upon her breast, a clear violation of the
        St. John's rules by her and not by him, and

b)      By denying his appeal in disregard of its own rules entitled to comply under
        Title IX.

40.     By reason of the foregoing, St. John's has favored a female student over a male student and in doing so denied Roe, the male student, due process in violation of Title IX.

41.     By reason of the foregoing, Roe is entitled to:

   a) Judgment awarding him compensatory damages in the amount of at least $750,000, emotional distress damages of $300,000 and punitive damages of $2,000,000, and

   b) The destruction of all records concerning the finding of sexual misconduct against him, and

   c) Court costs and other reasonable expenses incurred in maintaining this action, including reasonable attorney's fees as authorized by 42 U.S.C, and

   d) Removal of all sanctions.

**Title IX Second Claim Against St. John's**
**(Refusal to investigate Roe's complaint of sexual misconduct**
**and suspension of Roe without due process)**

42.     Roe repeats and realleges each and every allegation set forth above except for those of paragraph 41.

43.     On January 4, 2019, the hashtag "#SurvivingSJU" was created.

44.     #SurvivingSJU was the number one hashtag "trending" on Twitter in the U.S. from January 4, 2019, to January 6, 2019.

45.     On January 4, 2019, Doe authored a tweet (the "tweet") which stated that, "[Roe] after raping me…only got half a semester suspension…" (See Exhibit 1 attached); the tweet also included a picture of Roe.

46.     Doe almost instantly "liked" the tweet and less than 30 minutes later claimed in another tweet that she had written a "final statement" for the Conduct Hearing instead of "writing essays."

47.     Policy 703 provides that:

> Hearings are to be private and not open to members of the
> university community or to the public. Conduct Board members
> are duty bound to maintain confidentiality. The Chair shall advise
> witnesses that they are not to discuss their testimony outside
> the hearing room. *All written records of proceedings are confidential
> and are property of the University* (emphasis supplied).
> \*                \*                \*
> 'Privacy' means that dissemination of information relating to each
> report of sexual misconduct is limited to individuals who have a
> legitimate need to know in order to carry out their duties and
> responsibilities in accordance with this policy and law.

48.     Thus, only Doe, Roe and University officials were informed of Roe's suspension and the reason for it.

49.     Since the tweet references Roe's suspension for sexual misconduct directed against the author of the tweet- the rational for his suspension- the only person who could have authored the tweet was Doe.

50.     By authoring the tweet, Doe violated St. John's rules mandating confidentiality relative to its hearings on sexual misconduct.

51.     On January 5, 2019, one day after the tweet, a male student threatened to "fuck [Roe] up" via phone calls and text messages.

52.     Thereafter, a female St. John's student punched Roe in his face at a bar.

53.     On January 8, the St. John's student newspaper, "The Torch," reported that:

> More than 2,000 tweets surfaced on Friday, Jan. 4 [the date
> #SurvivingSJU was created] detailing alleged experiences of
> sexual misconduct that had taken place at St. John's.

54.     On January 5, 2019, one day after the tweet was published, in a complaint to St.

John's, a second female student accused Roe of sexual misconduct for an alleged incident that

had taken place a month before. ("the second complaint")

55.     On January 10, WABC reported that:

> St. John's University is responding to a firestorm of tweets inspired by
> the new TV series 'Surviving R. Kelly' from individuals alleging
> experiences of sexual assault while they were associated with the university.
> *                         *                         *
> Activity peaked over the weekend when #SurvivingSJU was trending
> on Twitter. The hashtag generated at least 2,000 unique tweets and 1,786
> retweets.
> *                         *                         *
> *Many of the tweets also contained complaints that the university had
> allowed alleged perpetrators to remain on campus.*

56.     Thus,  a) After over at least 2,000 tweets—in the period January 4 through

January 7, 2019—were deeply critical of St. John's treatment of women who were sexually

assaulted, and, b) after St. John's received a second complaint of sexual misconduct against Roe

in January 5—on January 7 and 8, St. John's officials, in obvious disarray, contacted Roe

inconsistently and repeatedly as follows:

> i) January 7, 2019, St. John's Office of Student Conduct (with cc to Jack
>    Flynn) notified Roe by emailed formal letter as follows:
>
> You are restricted from having any contact with… [the second complainant]
> until otherwise instructed by the Office of Student Conduct.
> *                         *                         *
> *Entering a common area or classroom/ study space where this person
> is present should not be considered a violation of this order.* (See Exhibit 2
> attached), and
>
> ii) 11:30 am on January 8 St. John's denied Roe's appeal of the
> sanctions he received as a result of Doe's complaint (See Exhibit 3 attached), and

iii) <u>Around 12:00 noon to 1:00 pm on January 8,</u> Dean of Students Jackie Lochrie notified Roe by telephone that he would be receiving formal notification of suspension from the University, and

iv) <u>January 8, at 1:38 pm</u>, St. John's Director of Student Conduct Jack Flynn emailed Roe a formal letter as follows:

This document will serve as a formal notification that you are immediately suspended from St. John's University, pending the results of a non-academic disciplinary investigation.
*                                    *                              *
*Suspension from the University means that you are not permitted to be in class, participate in any St. John's University –sponsored programs or events or be on any St. John's University property* (Exhibit 4 attached ), and

v) <u>January 8, at 3:16 pm,</u> Dean Lochrie emailed a formal letter to Roe as follows:

As we discussed on the phone, today, the University is beginning an investigation into an incident in which you were named as being involved. As such, you will be notified by Mr. John Breheny, the investigator assigned to this case. In addition, you have the right to the following:

      1. Academic and/or housing accommodations, and

      2. Counselling support through the Center for Counselling, and

      Consultation and/or Campus Ministry (Exhibit 5 attached), and

*                                    *                              *

vi) <u>On January 8, 2019</u> at 3:26 pm, Dean Lochrie notified Roe by emailed formal letter:

 You are indefinitely restricted from having any contact with [the second complainant].
*                                    *                              *
*Entering a common area or classroom/ study space where this person is present should not be considered a violation of this order* (Exhibit 6 attached).

57.      Thus, Roe, who was scheduled to return to his classes in less than two weeks, on

January 7, was first given a "no contact" notification which permitted him to continue classes.

58.    One day later, on January 8, Roe was arbitrarily suspended from St. John's without explanation or citation of rule, and, thereafter, also on January 8, confusingly, he was given a second "no contact" letter permitting him to attend classes.

59.    In contrast, Roe had been permitted to attend classes during the investigation of Doe's complaint.

60.    Pursuant to Policy 703, "Sexual Harassment" includes "sexual offensive comments…" and:

> Sex discrimination is an act that disadvantages a person and that occurs because of the affected individual's gender … Sexual harassment includes … verbal conduct of a sexual nature, when … such conduct is sufficiently severe…such that it limits an individual's ability to participate in, or benefit from, the University's education or work programs or activities (hostile environment). A "hostile environment" exist when the conduct is sufficiently, severe, persistent, or pervasive that it unreasonably interferes with, limits, or deprives an individual from participating in or benefiting from the University's education or employment programs and/or activities when judged against a reasonable person standard.

61.    Because of Doe's false and defamatory tweet, published in violation of St. John's rules against "verbal conduct of a sexual nature…sufficiently severe" to "limit" Roe's "ability to participate in the University's activities" etc. Roe has been punched in the face, banned from social events, suspended from St. John's and his reputation destroyed.

62.    Thus, since January 4, 2019, Roe has been subjected to a hostile educational environment permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive that it totally altered the conditions of and destroyed his educational environment.

63.    On January 7, 2019, Roe's attorney complained about the tweet to St. John's attorney Josh Hurwit as follows:

> I am attorney for Roe. Thank you for speaking with me today. I have

forwarded a tweet- apparently from [Jane Doe]. As a result of the tweet, [Roe] received calls and messages from someone threatening to "fuck up" [Roe]. I ask for University action to protect Roe from a violation of policy and false allegations. (See copy of January 7 email attached hereto as Exhibit 8).

64.     Pursuant to Policy 703, all claims of violation must be investigated:

Once a complaint or notice of any allegation of sexual
misconduct is received, the Title IX Coordinator…will
make an initial assessment of the reported information.
*                           *                           *
A preliminary investigation is when an investigator conducts a
preliminary investigation and the Title IX Coordinator…will
assess whether this Policy or the Student Code of Conduct may
have been violated.

65.     On January 16, 2019, Keaton Wong, St. John's Director of … Title IX, responded

as follows:

Thank you for bringing to the University's attention the tweet that was
recently posted about you. Although the University cannot sanction the
individual who posted the tweet because we cannot confirm their identity,
we recognize that it has deeply affected you and other students in the St.
John's University community. Attached is the University's 'You are Not
alone' guide.

66.     In its "Preface," the **"You are Not Alone"** "guide" states, *inter-alia*, as follows:

St. John's University is committed to supporting survivors of sexual
Violence…by providing the necessary safety and support services so
that students can remain at St. John's University, meet academic standards,
obtain necessary health/mental health treatment, and maintain social
relationships. This document is written for survivors of sexual misconduct…
in order to assist survivors in the recovery process and in their efforts to heal
from this unacceptable form of violence.

67.     Thus, St. John's recognized Roe as a "survivor of sexual misconduct."

68.     Yet St. John's, having recognized that the tweet itself was the commission of

sexual misconduct, failed to undertake investigation beyond Mr. Keaton's dismissive treatment

of Roe's January 7 complaint, failing to comply with its contractual and legal obligation pursuant to Policy 703 and Title IX to undertake an investigation.

69.     On June 12, 2019, Roe's attorney emailed Mr. Hurwit again seeking redress:

> Since the proceedings resulting in [Roe's] suspension were confidential, he may not himself "set the record straight." As a result of the tweet, [Roe] has been threatened with bodily harm and was punched in the face by a female student. The University is complicit in the tweet's defamation of [Roe] and in the physical attacks he has been threatened with or experienced.

70.     On July 18, 2019, Roe's attorney wrote to Mr. Hurwit again to state, *inter-alia,* "requests" as follows:

> a)     "Will the University correct the defamatory statement in the notorious tweet of January 4, 2019?"

> *                           *                           *

> b)     "Since there can be no question as to the author of the tweet, will the University sanction [Doe]…?"

71.     On July 18, 2019, Mr. Hurwit responded, denying any obligation to investigate Roe's charges against Doe despite the overwhelming evidence that she was the author of the tweet that violated Roe's rights to privacy and confidentiality and right to be free of a hostile environment pursuant to Policy 703:

> Your requests regarding the "tweet" are self-serving and inaccurate. As I have explained to you on multiple occasions, the "tweet" was made anonymously, St. John's University has no evidence whatsoever that [Doe] is the author of the "tweet…"

72.     Mr. Hurwit obviously had evidence that the author of the tweet could only have been Doe, but St. John's still failed to investigate.

73.     Pursuant to Policy 703, St. John's defines "hostile environment" as follows:

> A "hostile environment" exists when the conduct is sufficiently severe...
> that it is unreasonably interferes with, limits, or deprives an individual
> from participation in or benefiting from the University's education...
> when judged against a reasonable person standard.

74.     St. John's was obligated to protect Roe's academic atmosphere so as to eliminate
any known "hostile environment" of which it was aware.

75.     Because of Doe's tweet, a hostile environment has existed at St. John's against
Roe since January 4, 2019, as was recognized in the January 16, 2019, email by St. John's Title
IX Director.

76.     However, despite due complaint by Roe and his attorney about Doe's privacy
violations and commission of "sexual harassment" of a "verbal sexual nature," St. John's has not
investigated Roe's complaint about the tweet or issued a statement addressing Doe's false
statements concerning the outcome of her complaint against Roe.

77.     Had it done so, it is reasonable to assume that the hostile environment against Roe
would have dissipated.

78.     Obviously, St. John's did not investigate the tweet, denied the appeal, and
simultaneously suspended Roe because it was under enormous pressure to appear to fully
support student women in their allegations of sexual misconduct after #SurvivingSJU was
created on January 4, 2019, and after over 2,000 women tweeted thereafter complaining about St.
John's inadequate investigation of complaints and about its allowing accused men to remain on
campus.

79.     However, student men also are entitled to due process and in these circumstances
St. John's, a) should have followed its own rules and investigated Roe's complaint against Doe,
and b) should not have suspended Roe without due process.

80.     Title IX of the Education Amendments of 1972 provides, *inter alia*, that:

No person in the United States, shall on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

81. Both the U.S. Department of Education and the U.S. Department of Justice have promulgated regulations under Title IX that require a school to "adopt and publish grievance procedures providing for the prompt and equitable resolution of student... complaints alleging any action which would be prohibited by" Title IX or regulations thereunder. 34 C.F.R. § 106.8(b) (Dep't of Education); 28 C.F.R. § 54.135(b) (Dep't of Justice).

82. Such prohibited actions include all forms of sexual harassment.

83. "The 'prompt and equitable' procedures that a school must implement pursuant to Title IX to "accord due process to both parties involved" must include, at a minimum: "Adequate, reliable and impartial investigation of complaints..."

84. Although Roe made a complaint of hostile environment based upon Doe's false and defamatory tweet in violation of Code of Conduct privacy requirements, St. John's refused to investigate his complaint.

85. As a male student, Roe was denied the right to have the "tweet" investigated which St. John's admits, not only "deeply affected him" but also "other students in the St. John's University community."

86. Despite its non-public knowledge that Roe was not suspended for rape as alleged by the tweet, but for allowing Doe to place his hand on her breast, St John's:

a) Did not investigate and sanction Doe for her violation of its confidentiality rules, and

b) Did not investigate and sanction Doe for her false and defamatory allegation that Roe was suspended for raping her which resulted in a hostile environment for Roe, and

15

c) Did not release a statement condemning Doe's tweet and correcting its allegations that Roe was suspended for rape, and

d) Has maliciously and purposely allowed the false and defamatory tweet to be unchallenged, thus, severely damaging Roe's future career and life prospects, and

e) Arbitrarily suspended Roe without reference to any rule and in violation of due process.

87. By reason of the foregoing, St. John's has violated Title IX and Roe is entitled to the following relief:

a) Judgment in favor of Roe awarding compensatory damages in the amount of at least $750,000, emotional distress damages of $300,000 and punitive damages of $2,000,000, and

b) An injunction mandating an investigation of Roe's complaint about the tweet, restoring Roe as a student without any Code of Conduct violations and prohibiting further disciplinary proceedings against him that violate Title IX and which do not observe due process, and

c) An injunction restoring him as a full time student, and

d) The destruction of all records concerning the finding of sexual misconduct against Roe, and

e) Court costs and other reasonable expenses incurred in maintaining this action, including reasonable attorney's fees as authorized by 42 U.S.C. §1988.

**Title IX Third Claim Against St. John's**
**(It's refusal to afford Roe a fair and unbiased**
**hearing on the second complaint)**

88. Roe repeats and realleges each and every allegation set forth above except for those of paragraphs 41 and 87.

89. St. John's has scheduled a Conduct Hearing on the second complaint for September 17.

90. St. John's has not published the procedures that will be followed to ensure that due process is observed at the Conduct Hearing on the second complaint.

91. For instance, there is no due process type information published by St. John's as to how faculty members are selected for a Conduct Hearing, by whom they are selected, who may speak to them prior to, during and after the Conduct Hearing, the permissible subjects of any St. John's officials' conversations with members or prospective members of the Conduct Board and as to safeguards to be observed to prevent bias in the circumstances of the public's knowledge of the tweet's allegation of rape.

92. On June 12, 2019, Roe's attorney emailed St. John's attorney, *inter-alia*, as follows:

> …I have reliable information that the tweet "went viral" at the University with Faculty members and students almost universally aware of its content.
>
> A day after the tweet, [Roe] was accused of sexual misconduct in a second complaint. It will be impossible for him to receive a fair hearing regarding the second complaint. At a hearing, the faculty members on the panel will have most probably heard of or reviewed the defamatory allegations of the tweet- without there having been a contradiction of it by the University.

93. On June 17, 2019 St. John's attorney, Mr. Hurwit, responded as follows:

> Your letter claims that it will be "impossible" for [Roe] to receive a fair hearing. We disagree. You offer no information that the individuals who will adjudicate the matter have knowledge of the tweet or the prior matter involving [Roe], or that even if these individuals had such knowledge, they would be unable to adjudicate the matter fairly and impartially. In sum, your belief that [Roe] will not receive a fair hearing is based on speculation and conjecture.

94. On July 18, 2019, Mr. Hurwit emailed Roe's attorney, *inter-alia*, as follows:

> There will be no reference to the "tweet" at the University Conduct Board hearing unless your client opens the door. [Roe] has received, and will continue to receive, a fair and

Impartial process.

95.    In Roe's circumstance, it is almost certain that one or more of the faculty members of the Conduct Board will have known about the tweet, therefore, making it impossible to eliminate bias so as to meet due process requirements.

96.    Thus, on the basis of sex, St. John's has deprived Roe of his right to due process and equal protection through the improper administration of (and deficiencies in) St. John's guidelines and regulations.

97.    The procedures adopted by a school whose conduct is governed by Title IX must not only "ensure the Title IX rights of the complainant, "but must also" accord "due process to both parties involved…"

98.    By reason of the foregoing, Roe's education and future career prospects have been severely damaged.

99.    Without appropriate redress, the unfair procedures and administration of the scheduled Conduct Hearing will continue to cause irreversible damages to Roe's educational career and future employment prospects, with no end in sight including problems completing any undergraduate degree, being admitted to a law school, or being admitted as a member of any state bar association.

100.    By reason of the foregoing, Roe requests, pursuant to 28 U.S.C. § 2201, a declaration that:

a)    St. John's rules, regulations and guidelines are unconstitutional as drafted and applied to sexual conduct complaints by its students, and

b)    That no Conduct Hearing on the second complaint be held until St. John's supplies Roe's counsel with procedures that shall conform to proper due process standards without gender bias or bias from knowledge of the tweet, and

c) That the scheduled Conduct Hearing be adjourned indefinitely until either Roe's counsel or the Court approve the procedures be followed in hearing the second complaint.

### For a Claim Against Defendant Jane Doe
### (Defamation)

101. Roe repeats and realleges each and every allegation set forth above except those of paragraphs 41, 87 and 100.

102. Doe's allegations of rape against Roe were false, malicious, vindictive and intended to cause him great harm and emotional distress.

103. By reason of the foregoing, Doe has defamed Roe and caused him great emotional distress and he seeks monetary damages as follows:

 a. Compensatory damages of at least $750,000, and
 b. Emotional distress damages of approximately $300,000, and
 c. Punitive damages of $1,000,000.

**Wherefore**, plaintiff seeks the relief requested above in paragraphs 41, 87, 100 and 103.

### Jury Demand

Roe hereby demands a trial by jury.

Attorneys for plaintiff Richard Roe:

September 10, 2019

Peter G. Eikenberry (7257)
75 Maiden Lane, Room 402
New York, NY 10038
(917) 596-4168, and
pete@eikenberrylaw.com

Michael Valentine
61 Third Place
Brooklyn, New York 11231
Tel: (718) 858 0818
Cell: (917) 593 1047
mvalentine@valentinelaw.com

# EXHIBIT 1

 **St. John's Memes** @vincentianteens · Jan 4
#SurvivingSJU : a thread

💬 8          ⟲ 68          71

 **St. John's Memes**
@vincentianteens          ( Follow )

" was allowed to stay abroad after raping me with no travel restrictions. Only got half a semester suspension"

**PICTURE**

**OMITTED**

3:44 PM - 4 Jan 2019

**11** Retweets  **34** Likes      

**EXHIBIT 2**

# Memo



# ST. JOHN'S
# UNIVERSITY

| | |
|---|---|
| Date: | JANUARY, 7TH 2019 |
| To: | |
| Cc: | Jack Flynn, Joshua Rich, Eric Finklestein |

**Office of Student Conduct**
Division of Student Affairs

Tel. (718) 990-6878
Fax (718) 990-7905
Bent Hall, Garden Level

| | |
|---|---|
| Subject: | NO CONTACT ORDER |

You are restricted from having any contact with ▮▮▮▮▮▮▮ ▮▮▮▮▮▮ until otherwise instructed by the Office of Student Conduct. Examples of unauthorized contact include, but are not limited to: phone calls, written or electronic correspondence, personal visits or messages sent through social networking sites. This restriction applies to both on- and off-campus interactions, as well as contact initiated by a third party on your behalf or at your request. You are prohibited from speaking with this person at any time and you must make accommodation in your academic and social pursuits to avoid being in the same room with this person.

The primary purpose of this order is to mandate civil conduct between the involved parties. For example, entering a common area or classroom/study space where this person is present should not be considered a violation of this order.) Intentional contact with the above person(s) must be reported to the Director of Student Conduct immediately.

Please note that failure to comply with these directives will be considered a potential violation of the Student Code of Conduct regarding Compliance with the Student Conduct Process. This may result in your temporary suspension from St. John's University until the conclusion of the student conduct process.

If you have any questions or concerns regarding this matter, please contact the Director of Student Conduct, Mr. Jack Flynn at 718-990-5036 or at flynnj@stjohns.edu.

**EXHIBIT 3**

**Pete Eikenberry**

**From:** Larry Cunningham <cunninl1@stjohns.edu>
**Sent:** Tuesday, January 8, 2019 11:31 AM
**To:** Jack Flynn; Jackie Lochrie; Peter Eikenberry; ███████████
**Cc:** Joshua Hurwit
**Subject:** ███████ - final decision on appeal
**Attachments:** ███████ final decision.pdf

Good morning:

Attached is the final decision of the University Conduct Appeals Board in the matter of ███████ This concludes the appeal and the University Conduct Appeal Board's role in the matter.

Sincerely,

**Larry Cunningham**
Associate Dean for Assessment & Institutional Effectiveness
Director, Center for Trial and Appellate Advocacy
Professor of Legal Writing
St. John's University School of Law
(718) 990-7616 | Bio | Publications | Twitter
Law School Assessment Blog
New York Criminal Law and Procedure Blog

This email may contain proprietary, confidential and/or privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

EXHIBIT 4



# ST. JOHN'S UNIVERSITY

**Office of Student Conduct**
St. John's University

Tel. (718) 990-6878
Bent Hall, Garden Level
Student Affairs Suite
www./stjohns.edu/studentconduct

January 8, 2019



Sent electronically to ███████████████████

**PERSONAL AND CONFIDENTIAL**

████████

Mr███████

This document will serve as a formal notification that you are immediately suspended from St. John's University, pending the results of a non-academic disciplinary investigation. The suspension stems from an incident you were involved in on January 5, 2019. Suspension from the university means that you are not permitted to be in class, participate in any St. John's University-sponsored programs or events or be on any St. John's University property.

In order to address this matter, you are directed to contact me at (718) 990-5036 in order to schedule an appointment for us to meet as soon as possible.

Regards,

Jack Flynn
Director of Student Conduct

CC:   Jackie Lochrie, Acting Dean of Students
      Denise Vencak, Executive Director, Public Safety
      Joanne Llerandi, University Registrar

**EXHIBIT 5**



## ST. JOHN'S
## UNIVERSITY

**Office of the Title IX Coordinator**
St. John's University

Tel. (718) 990-2660
University Center
Human Resources Suite

January 8, 2019

███████████

Sent electronically to ████████████████

███████████

Mr. ██████████

**PERSONAL AND CONFIDENTIAL**

As we discussed on the phone, today, the University is beginning an investigation into an incident in which you were named as being involved. As such, you will be notified by Mr. John Breheny, the investigator assigned to this case. In addition, you have the right to the following:

•Academic and/or housing accommodations.
•Counseling support through the Center for Counseling and Consultation and/or Campus Ministry.
•Participate in the University investigation/hearing processes.
•Right to an advisor of your choice at any time during the process.
•Right to appeal the outcome determination.

**Understand that retaliation, in any form, is not tolerated.**

I advise you to review the following St. John's University websites for all the information you may need.

Student Bill of Rights
Student Wellness Resources
SJU Sexual Misconduct Policy

You may contact me with any questions.

Sincerely,



Jackie Lochrie
Acting Dean of Students, Associate Dean for Student Services, Deputy Title IX Coordinator

CC:   John Breheny, Director, Public Safety

**EXHIBIT 6**



## ST. JOHN'S UNIVERSITY™

**Office of the Dean of Students**
St. John's University

Tel. (718) 990-6568
Fax (718) 990-2767
Bent Hall, G023
Garden Level

January 8, 2019

████████
Sent electronically to ████████████

**PERSONAL AND CONFIDENTIAL**

████████

Mr. ████████

You are indefinitely restricted from having any contact with ████████████. Examples of unauthorized contact include, but are not limited to: phone calls, written or electronic correspondence, personal visits or messages sent through social networking sites. This restriction applies to both on- and off-campus interactions, as well as contact initiated by a third party on your behalf or at your request. You are prohibited from speaking with this person at any time and you must make accommodation in your academic and social pursuits to avoid being in the same room with this person.

The primary purpose of this order is to mandate civil conduct between the involved parties. For example, entering a common area or classroom/study space where this person is present should not be considered a violation of this order.) Intentional contact with the above person(s) must be reported to the Director of Student Conduct immediately.

Please note that failure to comply with these directives may be considered a violation of the Student Code of Conduct and may result in your temporary suspension from St. John's University.

If you have any questions or concerns regarding this matter, please contact the Director of Student Conduct, Jack Flynn, directly at (718) 990-5036 or flynnj@stjohns.edu.

Sincerely,

*Jackie Lochrie*

Jackie Lochrie
Acting Dean of Students, Associate Dean for Student Services, Deputy Title IX Coordinator