UNITED STATES DISTRICT COURT
EASTERN DISTRICT NEW YORK

-------------------------------------------------------- x

RICHARD ROE,                                    :
                                                :          Case No. 19-cv-04694 (PKC)(RER)
                          Plaintiff,            :
                                                :          **ORAL ARGUMENT REQUESTED**
               - against -                      :
                                                :
ST. JOHN'S UNIVERSITY AND JANE DOE,             :
                                                :
                          Defendants.           :
-------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF ST. JOHN'S UNIVERSITY'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO
FED. R. CIV. P. 12(b)(6) AND, IN THE ALTERNATIVE, TO CORRECT THE
CAPTION PURSUANT TO FED. R. CIV. P. 10(a) AND FED. R. CIV. P. 17(a)**

**DAVIS WRIGHT TREMAINE LLP**
Lyle S. Zuckerman
Michael Goettig
Kaitlyn E. Fallon
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
(212) 489-8230
Attorneys for Defendant St. John's University

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 2

    A.    Doe's Incident Report and SJU's Subsequent Investigation and Determination ... 3

    B.    The Anonymous Tweet....................................................................................... 4

    C.    The Second Complainant's Incident Report and SJU's Subsequent Investigation and Determination...................................................................................... 5

STANDARD OF REVIEW ......................................................................................... 8

ARGUMENT ............................................................................................................. 10

I.    Plaintiff Fails to Plausibly Allege That SJU Discriminated Against Him on the Basis of Gender When it Disciplined Him for Assaulting Doe .................................... 10

    A.    The Board Properly Determined That Plaintiff – Not Doe – Violated the Student Code of Conduct. ............................................................................................. 10

    B.    The SAC is Devoid of Specific Factual Allegations Showing Gender Bias ........ 12

    C.    The SAC Fails to Identify Any Procedural Deficiency in SJU's Adjudication of Doe's Incident Report ...................................................................................... 14

    D.    The SAC Fails to Support an Inference that SJU was Driven by Public Pressure 15

II.    Plaintiff Fails to Plausibly Allege That Doe Sexually Harassed Plaintiff by Tweet, and That SJU Was Deliberately Indifferent to the "Harassment" ........................................... 16

    A.    Plaintiff Has Not Plausibly Pleaded That He Suffered "Gender-Based" Harassment....................................................................................................... 17

    B.    Plaintiff Fails to Plausibly Plead That SJU Acted With Deliberate Indifference . 18

    C.    Plaintiff Has Not Plausibly Pleaded That the Alleged Harassment Was Severe and Pervasive, and Denied Him Access to Educational Opportunities ...................... 20

    D.    Plaintiff Fails to Plausibly Plead That SJU Had Control Over the Alleged Harassing Conduct .......................................................................................... 21

    E.    If the SAC Alleges Deliberate Indifference in Connection With SJU's Processing of Mary Smith's Assault Allegations – Which is Entirely Unclear – That Claim

i

          too Must Be Dismissed ......................................................................... 23

III.    Plaintiff Fails to Plausibly Allege That SJU Discriminated Against Him on the Basis of Gender When it Disciplined Him for Assaulting Mary Smith ......................................... 23

      A.    Plaintiff's Allegations Fail to Identify Procedural Errors..................................... 24

      B.    Plaintiffs Allegations Fail to Identify Gender-Based Bias .................................. 26

IV.    Plaintiff Fails to Plausibly Plead Valid Contract Claims.................................................. 27

      A.    Plaintiff Has Not Plausibly Pleaded That SJU Breached a Contractual Obligation to Adjudicate Claims Based on a Preponderance of the Evidence Standard........ 28

      B.    Plaintiff Has Not Plausibly Pleaded That SJU Breached an Alleged Contractual Obligation to Address All Claims of Sexual Misconduct..................................... 28

      C.    Plaintiff Has Not Plausibly Pleaded That SJU Breached Any Contract by Failing to Provide Him the Opportunity to Submit a Written Impact Statement.............. 29

      D.    Plaintiff Has Not Plausibly Pleaded That SJU Breached Contractual Obligations to Impartially Investigate His Complaint Over the Tweet and the Mary Smith Sex Assault Complaint.................................................................................................. 30

      E.    Plaintiff Has Not Plausibly Pleaded That SJU Breached Its Contractual Obligation by Failing to Conduct a Fair and Unbiased Hearing............................................. 30

V.    Plaintiff Should Proceed Under His Legal Name ............................................................ 31

      A.    Second Circuit Law Prohibits Plaintiff From Proceeding Under a Pseudonym... 31

CONCLUSION.................................................................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A.B. v. Hofstra Univ.*,
  No. 17 Civ. 5562 (DRH), 2018 WL 1935986 (E.D.N.Y. Apr. 24, 2018).................................32

*Anonymous v. Medco Health Solutions, Inc.*,
  588 Fed App'x 34 (2d Cir. 2014)........................................................................................35

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................................................8

*Baldridge v. State of New York*,
  293 A.D.2d 941 (2002) .......................................................................................................27

*Carabello v. N.Y.C. Dep't of Educ.*,
  928 F. Supp. 2d 627 (E.D.N.Y. 2013) .................................................................................20

*CF v. Monroe Woodbury Cent. Sch. Dist.,* No. 12 Civ. 2200, 2013 WL 177911
  (S.D.N.Y. Jan. 16, 2013), *aff'd* 531 F. App'x 132 (2d Cir. 2013).........................................19

*Davis v. Monroe Cty. Bd. of Educ.*,
  526 U.S. 629 (1999)..................................................................................................... *passim*

*Doe v. Colgate Univ.*,
  760 Fed. App'x 22 (2d Cir. 2019)........................................................................................10

*Doe v. Delta Airlines, Inc.*,
  310 F.R.D. 222 (S.D.N.Y. 2015) ....................................................................................33, 34

*Doe v. Greiner*,
  662 F.Supp.2d 355 (S.D.N.Y. 2009)....................................................................................31

*Doe v. Miami Univ.*,
  882 F.3d 579 (6th Cir. 2017) .........................................................................................22, 23

*Doe v. National Conference of Bar Examiners*,
  No. 16 Civ. 0264 (PKC), 2017 WL 74715 (E.D.N.Y. Jan. 6, 2017) .....................................34

*Doe v. New York Univ.*,
  No. 19 Civ. 00744, 2020 WL 564264 (S.D.N.Y. Feb. 5, 2020), appeal filed .......11, 12, 15, 16

*Doe v. Quinnipiac Univ.*,
  404 F.Supp.3d 643 (D. Conn. 2019).....................................................................................23

*Doe v. Skyline Automobiles, Inc.*,
    375 F.Supp.3d 401 (S.D.N.Y. 2019)...................................................................33

*Doe v. Syracuse Univ.*,
    341 F. Supp. 3d 125 (N.D.N.Y. 2018)................................................27, 28, 30, 31

*Doe v. United States*,
    No. 16 Civ. 7256, 2017 WL 2389701 (S.D.N.Y. June 1, 2017)...........................33

*Doe v. Univ. of St. Thomas*,
    240 F. Supp. 3d 984 (D. Minn. 2017)............................................................13, 14

*Doe v. Washington Univ.*,
    No. 19 Civ. 300, 2020 WL 1308209 (E.D. Mo. Mar. 19, 2020) ...........................13

*Doe v. Washington Univ.*,
    No. 19 Civ. 300, 2020 WL 353587 (E.D. Mo. Jan. 21, 2020), *reconsideration
    denied, Washington Univ. II* ......................................................................13, 18

*DT v. Somers Central School District*,
    348 Fed. Appx. 697 (2d Cir.2009)......................................................................19

*Elgamil v. Syracuse Univ.*,
    99 Civ. 611, 2000 WL 1264122 (N.D.N.Y. 2000) ...............................................20

*Feibleman v. Trustees of Columbia Univ.*,
    No. 19 Civ. 4327, 2020 WL 882429 (S.D.N.Y. Feb. 24, 2020) ..............27, 28, 31

*Feminist Majority Foundation v. Hurley*,
    911 F.3d 674 (4th Cir. 2018) .............................................................................22

*Gally v. Columbia Univ.*,
    22 F.Supp.2d 199 (S.D.N.Y. 1998) ...................................................................30

*Ginx, Inc. v. Soho Alliance*,
    720 F. Supp. 2d 342 (S.D.N.Y. 2010)..................................................................9

*HB v. Monroe Woodbury Central Sch. Dist.*,
    No. 11-5881, 2012 WL 4477552 (S.D.N.Y. Sept. 27, 2012) ................................22

*Itakura v. Primavera Galleries, Inc.*,
    Index No. 08 Civ. 9027, 2009 WL 1873530 (S.D.N.Y. June 30, 2009)...................8

*Johnson v. Rowley*,
    569 F.3d 40 (2d Cir. 2009).................................................................................8

*L-7 Designs, Inc. v. Old Navy*,
    LLC, 647 F.3d 419 (2d Cir. 2011) .....................................................................2, 8

iv

*Lance v. S. Country Cent. Sch. Dist.*,
  No. 05 Civ. 2536, 2006 WL 8439050 (E.D.N.Y. June 2, 2006) ......................................29, 30

*Lenart v. Coach, Inc.*,
  131 F. Supp. 3d 61 (S.D.N.Y. 2015)...........................................................................................9

*M.S. v. Susquehanna Twp. Sch. Dist.*,
  No. 13 Civ. 2718, 2017 WL 6397827 (M.D. Pa. March 29, 2017) ........................................21

*Martinetti v. Mangan*,
  No. 17 Civ. 5484, 2019 WL 1255955 (S.D.N.Y. Mar. 19, 2019), adopting
  report and recommendation, 2017 WL 6403007 (M.D. Pa Aug. 16, 2017) ...........................20

*McNeil v. Yale Univ.*,
  No. 19 Civ. 0209, 2020 WL 495061 (D. Conn., Jan. 30, 2020) .............................................22

*Miller-Harris v. Dinello*,
  No. 16 Civ. 0541, 2018 WL 5728115 (N.D.N.Y. Aug. 7, 2018) ...........................................20

*North Jersey Media Group, Inc. v. Doe Nos. 1-5*,
  No. 12 Civ. 6152, 2012 WL 5899331 (S.D.N.Y. Nov. 26, 2012) ........................32, 33, 34, 35

*Nungesser v. Columbia Univ.*,
  169 F.Supp.3d 353 (S.D.N.Y. 2016)..................................................................................17, 18

*Nungesser v. Columbia Univ.*,
  244 F. Supp.3d 345 (S.D.N.Y. 2017)........................................................................... *passim*

*Papelino v. Albany Coll. of Pharmacy of Union Univ.*,
  633 F.3d 81 (2d Cir. 2011)......................................................................................................17

*Quinn v. Green Tree Credit Corp.*,
  159 F.3d (2d Cir. 1998)...........................................................................................................20

*S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*,
  599 F.2d 707 (5th Cir. 1979) ..................................................................................................31

*Salau v. Denton*,
  139 F. Supp. 3d 989 (W.D. Mo. 2015) ..................................................................................14

*Sealed Plaintiff v. Sealed Defendant*,
  537 F.3d 185 (2d Cir. 2008).............................................................................................31, 34

*Spiteri v. Russo*,
  No. 12 Civ. 2780, 2013 WL 4806960 (E.D.N.Y. Sept. 7, 2013), *aff'd sub nom.*
  *Spiteri v. Camacho,* 622 Fed. Appx. 9 (2d Cir. 2015) ............................................................9

*T.Z. v. City of New York,*
 634 F.Supp.2d 263 (E.D.N.Y. 2009) .......................................................................21

*Tulczynska v. Queens Hosp. Ctr.,*
 No. 17 Civ. 1669, 2019 WL 6330473 (S.D.N.Y. Feb. 12, 2019) ...............................9

*Tyrell v. Seaford Union Free Sch. Dist.,*
 792 F. Supp. 2d 601 (E.D.N.Y. 2011) ....................................................................22

*United States v. Microsoft Corp.,*
 56 F.3d 1448 (D.C. Cir. 1995) ...............................................................................31

*Yu v. Vassar Coll.,*
 97 F. Supp. 3d 448 (S.D.N.Y. 2015).........................................................11, 23, 24

*Yusuf v. Vassar College,*
 35 F.3d 709 (2d Cir. 1994)..............................................................................25, 26

**Rules**

Fed. R. Civ. P. 10(a) ....................................................................................................31

Fed. R. Civ. P. 12(b)(6)..................................................................................2, 8, 12, 14

## PRELIMINARY STATEMENT

After twice engaging in non-consensual sexual contact with two different female students, Plaintiff was expelled by St. John's University ("SJU"). Plaintiff was afforded all rights due him under SJU policy, and he exercised those rights –by retaining an attorney as his advisor, reviewing and commenting on investigation reports, fully participating in disciplinary hearings, and filing appeals. Plaintiff makes no plausible allegation that the Conduct Boards which found him in violation of SJU policy – largely based on his admissions and untruthful testimony – failed to abide by SJU polices or, more critically, were biased against him because he is male.

Nonetheless, Plaintiff's Second Amended Complaint ("SAC") asserts in wholly conclusory fashion Title IX sex discrimination and quasi-contract claims. Plaintiff audaciously also accuses his first victim of sexually harassing him (for which he seeks to hold SJU liable), based on an anonymous tweet in which she (allegedly) expressed dissatisfaction with the sanction SJU imposed against him. Plaintiff levels these baseless claims while impermissibly hiding behind a pseudonym.

All of the claims against SJU should be dismissed. Plaintiff was afforded each of the rights available to any SJU student regardless of sex, and the SAC does not otherwise plausibly plead gender discrimination. Thus, Plaintiff's Title IX sex discrimination claims (Counts One and Three) must be dismissed. Count Two, for harassment (alleging that that SJU did not investigate the tweet), fails to plead that Plaintiff suffered severe and pervasive gender-based harassment, and, in any event, SJU investigated the matter and took corrective action. Count Four, alleging that SJU breached an implied contract by failing to follow internal policies, must be dismissed because it is duplicative of the Title IX claims, and otherwise fails to state a claim.

1

Block DocID

Finally, if the Court does not dismiss all four causes of action against SJU (which it should),

Plaintiff should be required to amend the caption with his legal name.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff is a former student at SJU, a private New York university. SAC ¶¶ 1-2.[2] In

accordance with Title IX of the Education Amendments of 1972 and Article 129-B of the New

York State Education Law, SJU strictly prohibits harassment on the basis of sex, including

between students, through its "Sexual Misconduct Policy and Procedures" ("Policy 703"). SAC,

Ex. 1. Policy 703 defines prohibited misconduct, identifies resources and reporting options

available to aggrieved students, and explains that the procedure for investigating and

adjudicating alleged violations of student-on-student conduct is governed by the Student Code of

Conduct and Conduct Process (collectively, the "Student Code"). *Id.*

When SJU receives a Policy 703 report, the Student Code dictates that a Student Conduct

Administrator either meets with the respondent at a Behavioral Hearing or refers the case directly

to a University Conduct Board, which conducts a hearing.[3] Declaration of Joshua S. Hurwit

("Hurwit Decl."), Ex. A.

During the University Conduct Board hearing, the Student Conduct Administrator or

Investigator may present the incident report and the charges generally, and Conduct Board

members may question the Administrator or Investigator. *Id.* Similarly, the complainant and the

---

[1] SJU accepts the truth of the allegations in the SAC solely for the purposes this motion to dismiss, unless they are contradicted by documents referenced therein. While a court may generally only consider facts alleged in the complaint in deciding a motion to dismiss under Rule 12(b)(6), a pleading "is [also] deemed to include any written instrument attached to it as an Exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *L-7 Designs, Inc. v. Old Navy*, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotes omitted).

[2] Plaintiff states he is a "student at defendant St. John's University." SAC ¶ 1. However, since initiating the original complaint in this action, he has been expelled. *See, e.g.,* SAC ¶¶ 121, 143, 148.

[3] The Court may consider the Student Code in light of its repeated reference in the SAC and incorporation through Policy 703, which Plaintiff attached to the SAC. SAC, Ex. 1. *See L-7 Designs, Inc., 647 F.3d at 422.*

respondent may be questioned by the Conduct Board, and the respondent has the right to question witnesses. *Id.* The Conduct Board deliberates and determines whether a preponderance of the evidence shows that the respondent engaged in the alleged conduct. *Id.* If the Conduct Board finds a violation, the matter is referred to the Office of Student Conduct for appropriate sanctions. *Id.* Either party may appeal the outcome. *Id.*

### A.     Doe's Incident Report and SJU's Subsequent Investigation and Determination

The first of Plaintiff's two violations of the Student Code occurred on April 12, 2018, when he and co-defendant "Jane Doe" ("Doe") were studying abroad. SAC ¶¶ 13-21. Specifically, Doe reported that "At approximately 6:30 AM, [she] reported that she awoke to find the [Plaintiff] in her bed without permission or knowledge of how he got there[.] Doe reported that "[Plaintiff] was laying in the bed and touching her breasts, that he was digitally penetrating her vagina, and that she could feel his erect penis touching her back." Hurwit Decl., Ex. E.

On April 13, 2018, the University instructed Plaintiff to have no contact with Doe while SJU investigated the matter. Hurwit Decl., Ex. B. SJU's Office of the Title IX Coordinator conducted a prompt and thorough investigation, including by interviewing Plaintiff, and issued a report dated July 19, 2018 summarizing its findings. Hurwit Decl., Ex. C. On August 6, 2018, Plaintiff was given the opportunity to review the report and request any corrections that he felt were warranted. Hurwit Decl., Ex. D. Plaintiff requested several edits, including concerning his detention in police custody following the incident. *Id*. Plaintiff explained that he "just want[ed] to make sure everything is written correctly and fairly." *Id.* Plaintiff's requested revisions were incorporated into the investigator's report. Hurwit Decl., Ex. E.

3

In September 2018, the Director of the Office of Student Conduct notified Plaintiff that the matter had been referred to the Student Conduct Board and a Behavioral Hearing had been scheduled. SAC ¶¶ 22-23. Plaintiff engaged counsel, who requested a second opportunity to review the investigation report. On or around September 28, Plaintiff and his attorney, Peter G. Eikenberry ("Eikenberry"), did so. SAC, Ex. 5 fn. 5.

A Conduct Hearing was held on October 3, 2018. SAC ¶ 26. The Board determined that Plaintiff was not in violation on three of the counts asserted against him (one by unanimous determination and the remaining two by a vote of 3-2), and was in violation of the fourth count. SAC ¶ 27; *see also* Hurwit Decl., Exs. F and G; SAC, Ex. 5. Factors weighing in support of the Board's unanimous "in violation" determination included that both Plaintiff and Doe acknowledged that sexual contact occurred, and that Doe was not capable of giving consent. Hurwit Decl., Exs. F and G; SAC, Ex. 5, § 1. The Board also evaluated their credibility, giving weight to the fact that Doe immediately reported the incident and that Plaintiff was not forthcoming about certain facts. Hurwit Decl., Ex. F. The matter was referred to SJU's Director of Student Conduct to determine appropriate sanctions. SAC, Ex. 5. On October 15, the Director imposed a one-semester suspension, among other sanctions. *Id*. Plaintiff's counsel filed an appeal, and on January 8, 2019, the University Conduct Board of Appeals affirmed the findings and sanctions. SAC ¶ 54; SAC, Ex. 5.

**B.** **The Anonymous Tweet**

On January 4, 2019, an anonymous poster using the Twitter handle "St. John's Memes" tweeted a picture of Plaintiff and the following message: "'*[Plaintiff] was allowed to stay abroad after raping me with no travel restrictions. Only got half a semester suspension*'" (the

"Anonymous Tweet"). SAC ¶ 39; SAC, Ex. 2.[4] The Anonymous Tweet was enclosed in quotation marks, indicating that it was repeating someone else's words. On January 7, Eikenberry spoke with SJU's Associate General Counsel, Joshua S. Hurwit ("Hurwit"), about it, and followed up by letter asking SJU to "protect [Roe] from a violation of policy and false allegations." SAC, Ex. 9. Eikenberry also claimed that Plaintiff received threats because of the Anonymous Tweet. (*Id.*) SJU immediately investigated. *See* SAC, Ex. 10; Hurwit Decl., Ex. H.

SJU's investigation into threats made against Plaintiff, substantiated a violation of SJU policy and corrective action was taken. Hurwit Decl., Ex. H. SJU advised Plaintiff that the anonymous tweeter could not be identified. SAC, Ex. 10. Eikenberry disagreed with that finding, citing only his personal speculation that the author must have been Doe. SAC, Ex. 12. Eikenberry did not raise this matter again until the eve of Plaintiff's University Conduct Board Hearing for a second allegation of sexual assault (discussed below).

### C.     The Second Complainant's Incident Report and SJU's Subsequent Investigation and Determination

On December 15, 2018, eight months after the first claim of sex assault against Plaintiff, he was involved in another incident with a female student which led to a second sex assault claim. An intoxicated female student, "Mary Smith," returned to Plaintiff's off-campus residence with him after a night out at a local bar. SAC ¶¶ 95-97. When she fell asleep on an outdoor porch, Plaintiff brought her inside to sleep on a couch, on which he also slept. *Id*. ¶¶ 99-102, 106.

On or about January 5, Smith filed an incident report in which she alleged that she awoke on the couch to Plaintiff digitally penetrating her vagina without her consent, and that, when she

---

[4] Plaintiff attached a redacted version of the Anonymous Tweet as Exhibit 2 to the SAC; however, the full tweet remains publicly available online.

attempted to remove his hand and escape, he lay atop her and covered her mouth with his hand. *Id.* ¶ 108; Hurwit Decl., Ex. K.

SJU issued Plaintiff a "No Contact Order" on January 7. SAC, Ex. 4. The following day, in two letters, SJU suspended Plaintiff pending investigation of Smith's claim and notified him of his rights. SAC, Exs. 6-7. The latter referred Plaintiff to SJU's online Student Bill of Rights and Sexual Misconduct Policy, and also advised him that he had the right to participate in the investigation and hearing process and have an advisor throughout. SAC, Ex. 7.

SJU investigated Smith's complaint, speaking with Plaintiff and other witnesses, and reviewing contemporaneous text messages, photos, and security card swipes; John Breheny, SJU's Director of Public Safety, issued a draft Final Report dated February 7, 2019, which was shared with Plaintiff. Hurwit Decl., Ex. I. Plaintiff requested that "corrections" be made. Hurwit Decl., Ex. L. SJU added footnotes to the Final Report reflecting certain of the purported "corrections." Hurwit Decl., Ex. K.

On June 6, Plaintiff was advised that a Behavioral Hearing concerning Smith's incident report would be held by the Office of Student Conduct ("OSC") on June 13, 2019. Hurwit Decl., Ex. L. Plaintiff was advised that his failure to appear may result in the matter being "adjudicated in [his] absence" by OSC, without a Conduct Board hearing. *Id*. Plaintiff did *not* appear for the Behavioral Hearing, nor did he contact SJU to reschedule it. Hurwit Decl., Ex. M. Rather than adjudicate the matter in absentia, OSC provided him another opportunity to contact OSC by July 3, 2019 or OSC would "administer findings and sanctions in this matter." *Id*. On June 18, 2019, Eikenberry asked to adjourn the Behavioral Hearing, and it was rescheduled for July 8, 2019. Hurwit Decl., Ex. N. Eikenberry then objected to conducting the Behavioral Hearing by telephone, and Plaintiff did not attend. *Id.* Rather than defaulting Plaintiff, the OSC treated

6

Eikenberry's objection as a denial by Plaintiff of any wrongdoing, and set the matter down for a

University Conduct Board hearing on August 5, 2019. *Id.*

At about the same time, on June 12, Eikenberry wrote to Hurwit, claiming that the

Anonymous Tweet would prejudice the Conduct Board hearing because it had gone "viral." SAC

¶ 111; SAC, Ex. 12. In addition, Eikenberry claimed for the first time that Plaintiff was punched

at an off-campus bar as a result of the Anonymous Tweet; no date for that alleged assault appears

in the SAC or in any communication with SJU, which Hurwit noted in his reply. SAC ¶70; SAC,

Ex. 12; Hurwit Decl., Ex. O. SJU's Department of Public Safety attempted to investigate

Eikenberry's claim, but *Plaintiff refused to cooperate with the investigation*, so it was

discontinued. Hurwit Decl., Ex. P.

A University Conduct Board Hearing was scheduled to hear the Mary Smith matter on

August 5, 2019. Hurwit Decl., Ex. Q. The hearing was rescheduled twice to accommodate

Eikenberry's schedule, and ultimately was held on September 17. Hurwit Decl., Exs. R and S.

There is no allegation in the SAC that Eikenberry (or Plaintiff) requested a written copy of the

hearing procedures, which are available online to anyone with an Internet connection at

https://www.stjohns.edu/life-st-johns/student-conduct/student-conduct-process. In any event,

Hurwit's July 18, 2019 letter encouraged Eikenberry to review them. SAC, Ex. 13. Moreover, as

this was Plaintiff's second Conduct Board Hearing in less than a year, he was fully familiar with

SJU's process.

The Conduct Board unanimously found Plaintiff in violation of the charge of non-

consensual sexual conduct, but not in violation of the more serious charge of non-consensual

penetration. SAC ¶¶ 119-121; Hurwit Decl., Ex. T. The Conduct Board determined that Plaintiff

was not truthful in his testimony, and that there was corroborating evidence to support Smith's

7

charges – namely, contemporaneous text messages to her sister and contemporaneous reports to others. *Id.*. As a result, Plaintiff was expelled. SAC ¶¶ 119-121; Hurwit Decl., Ex. T.

On October 25, Eikenberry submitted a written appeal of the University Conduct Board's decision, alleging media bias, various technical procedural errors, and that Plaintiff was not provided the opportunity to submit a written impact statement. SAC ¶ 122, SAC, Ex. 16. The University Conduct Appeals Board denied Plaintiff's appeal in a six-page decision. SAC ¶¶ 124-25, SAC, Ex. 17. The Appeals Board addressed head-on each contention raised in the Appeal. *Id.*

## STANDARD OF REVIEW

A pleading is appropriately dismissed for failure to state a claim pursuant to Rule 12(b)(6) if it fails to allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Johnson v. Rowley*, 569 F.3d 40, 43-44 (2d Cir. 2009), (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Bald assertions and legal conclusions, or legal conclusions masquerading as facts need not be accepted as true by the Court." *Itakura v. Primavera Galleries, Inc.*, Index No. 08 Civ. 9027, 2009 WL 1873530, at *1 (S.D.N.Y. June 30, 2009), (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and pleadings that "are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678-79.

On a motion to dismiss under Rule 12(b)(6), a pleading "is [also] deemed to include any written instrument attached to it as an Exhibit, materials incorporated in it by reference, *and documents that, although not incorporated by reference, are integral to the complaint*." *L-7 Designs, Inc.*, 647 F.3d at 422 (internal quotes omitted and emphasis added). When a plaintiff intentionally omits documents integral to a claim, "there is no need for the court to convert the

motion to a summary judgment motion in order to take them into account." *Ginx, Inc. v. Soho Alliance*, 720 F. Supp. 2d 342, 352 (S.D.N.Y. 2010). "Extrinsic evidence outside the pleading may be considered part of a complaint when . . . a court deems the evidence to be integral to at least one claim in the pleading." *Tulczynska v. Queens Hosp. Ctr.*, No. 17 Civ. 1669, 2019 WL 6330473, at *4 (S.D.N.Y. Feb. 12, 2019). "Evidence is integral to the pleading where the plaintiff has actual notice of the evidence and the complaint relies heavily upon its terms and effect in framing the pleading. Courts may also consider documents that the plaintiff either possessed or knew about and relied upon in bringing the suit." *Id.* (internal quotes and citations omitted). "Artful pleading by the plaintiff is exemplified by the failure to include matters of which as pleaders they had notice and which were integral to their claim – and that they apparently most wanted to avoid; this will not forestall a district court's decision on a motion to dismiss." *Id.* (internal quotes omitted).

Where a plaintiff's "own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." *Lenart v. Coach, Inc.*, 131 F. Supp. 3d 61, 67 (S.D.N.Y. 2015) (internal quotes omitted); *Spiteri v. Russo,* No. 12 Civ. 2780, 2013 WL 4806960, at *8 (E.D.N.Y. Sept. 7, 2013) ("Where an allegation in the complaint conflicts with other allegations  . . . the court is [not] obligated to . . . accept the allegation in the pleadings as true [on] a motion to dismiss." (internal quotes and citation omitted)), *aff'd sub nom. Spiteri v. Camacho,* 622 Fed. Appx. 9 (2d Cir. 2015).

Here, Plaintiff cherry-picks documents from the investigatory and adjudicative record to engage in artful pleading. He ignores documents and information from that same record – all of which he possesses or knows about, and which defeat his claims. SJU's instant motion references

only those ignored document in this motion, which the Court may properly consider without

converting this to a motion for summary judgment.

## ARGUMENT

**I.    Plaintiff Fails to Plausibly Allege That SJU Discriminated Against Him on the Basis of Gender When it Disciplined Him for Assaulting Doe**

The SAC is not a model of clarity. Read in the light most favorable to Plaintiff, however,

it appears that the first cause of action concerns Plaintiff's suspension from SJU in connection

with Doe's incident report. In this respect, "Title IX bars the imposition of university discipline

where gender is a motivating factor in the decision to discipline." *Doe v. Colgate Univ.*

("*Colgate Univ.*"), 760 Fed. App'x 22, 30 (2d Cir. 2019) (internal quotes omitted). The SAC

identifies four grounds upon which SJU's actions discriminated against him on the basis of his

sex – none of which is availing, and each of which is addressed in turn below. *See* SAC ¶ 56.

**A.    The Board Properly Determined That Plaintiff – Not Doe – Violated the Student Code of Conduct.**

"Title IX claims concerning disciplinary proceedings generally follow either an 'erroneous

outcome' theory or a 'selective enforcement' theory." *Colgate Univ.*, 760 Fed. App'x at 30

(internal quotes omitted). In the SAC, Plaintiff argues that it was Doe rather than he who violated

SJU's Code of Student Conduct when she allegedly took Plaintiff's hand and placed it on her

breast. *See* SAC ¶¶ 29, 56(a). Accordingly, it appears that Plaintiff is attempting to allege a

violation of Title IX under a theory of selective enforcement. However, this attempt finds no

support in applicable law or fact and avails Plaintiff nothing.

To survive a motion to dismiss on a selective enforcement theory, Plaintiff "must show: 1)

similarly situated female students at [the college] were treated differently during investigations

and disciplinary proceedings concerning sexual assault; and 2) the Defendants had the requisite

10

discriminatory intent." *Doe v. New York Univ.* ("*New York Univ.*"), No. 19 Civ. 00744, 2020 WL 564264, at *6 (S.D.N.Y. Feb. 5, 2020), appeal filed March 6, 2020. "The male plaintiff must show that the University's actions against [him] were motivated by his gender and that a similarly situated woman would not have been subjected to the same disciplinary proceedings." *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 480 (S.D.N.Y. 2015).

Here, the Student Conduct Board's determination was not based on Plaintiff's or Doe's gender, but rather on Doe's lack of capacity to affirmatively consent to sexual contact. Indeed, Plaintiff admitted he was sober while several witnesses described Doe as intoxicated.

The Final Decision on Plaintiff's appeal of Doe's incident report, attached as Exhibit 5 to the SAC, incorporates by reference the Director of Student Conduct's October 15, 2018 correspondence to Plaintiff. That document, attached as Exhibit G to the Declaration of Joshua S. Hurwit, sets forth the basis for the Student Conduct Board's conclusion that Plaintiff engaged in non-consensual sexual contact, and reads in relevant part as follows:

> The respondent admitted in engaging in physical contact of a sexual nature with the complainant, and the evidence indicated a lack of affirmative consent to engage in such contact. Such evidence included the complainant's intoxication, as described by multiple witnesses, and the respondent's assertion, which was not disputed, that he was not impaired by alcohol.

Hurwit Decl., Ex. G; SAC, Ex. 5. Policy 703, attached as Exhibit 1 to the SAC, provides the following commentary to the definition of the term "affirmative consent":

> Consent cannot be given when a person is incapacitated, which occurs when an individual lacks the ability to knowingly choose to participate in sexual activity. Incapacitation may be caused by the lack of consciousness or being asleep, being involuntarily restrained, or if an individual otherwise cannot consent. Depending on the degree of intoxication, someone who is under the influence of alcohol, drugs or other intoxicants may be incapacitated and therefore unable to consent.

Accordingly, it was Doe's lack of capacity to affirmatively consent to sexual contact due to her intoxication – *not* her gender – which distinguished her from Plaintiff. On this basis alone, Plaintiff's attempt to claim that he was similarly situated to Doe fails. *See New York Univ.*, 2020 WL 564264 at *7 ("courts in this circuit have consistently dismissed selective enforcement claims absent allegations 'that a school treated similarly situated members of the opposite sex – that is members of the opposite sex facing comparable disciplinary charges – differently'") (citations omitted). Because the SAC is devoid of any such allegation of disparate treatment, the first cause of action fails to state a claim of selective enforcement and must be dismissed.

**B.     The SAC is Devoid of Specific Factual Allegations Showing Gender Bias**

Plaintiff next attempts to impute gender-based discrimination to SJU by alleging that SJU "[a]ssert[ed] that Roe, the male student, should have *expected* a sanction of some kind for admitting that Doe, the female student, had initiated physical contact of a sexual nature." SAC ¶ 56(b) (emphasis in the original). This is an inaccurate and misleading characterization of the Board's determination, and the Court need not give it deference under Rule 12(b)(6) in light of the language in the operative documents. As set forth directly above, the Board found that Plaintiff violated the Student Code because he engaged in sexual conduct with Doe when she was intoxicated and could not give consent (and he was sober). *See* Section I(A), *supra*.

To the extent that this allegation's reference to Plaintiff as a "male student" and Doe as the "female student" suggests that sex stereotyping played any part in the Board's determination, the Court should reject it. As a preliminary matter, Policy 703 "applies to all members of the University Community regardless of sex" or other protected characteristics. SAC, Ex. 1 ("Scope of the Policy"). What's more, students in precisely Plaintiff's position have attempted and failed to argue that sex stereotyping played any part in the application of a policy that prohibited

unwelcome sexual contact where – as here – the allegations in the complaint were devoid of any word or deed on the part of any university representative that would support an inference of animus on the basis of gender.

For example, in *Doe v. Washington University*, the plaintiff was a male student who was expelled after being found to have violated a university's code of conduct by engaging in sexual contact with a student who was intoxicated. The plaintiff argued in relevant part that the university had reached an erroneous outcome because its determination was tainted by gender stereotypes. After noting that "plaintiffs who claim that an erroneous outcome was reached must allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding", the presiding court noted that, "[t]o proceed on his erroneous outcome claim, plaintiff was required to show: (1) evidence illustrating an 'articulable doubt' as to the accuracy of the outcome of the proceeding, and (2) particular circumstances showing gender bias was a motivating factor in the erroneous outcome." *Doe v. Washington Univ.*, ("*Washington Univ. II*"), No. 19 Civ. 300, 2020 WL 1308209, at *1 (E.D. Mo. Mar. 19, 2020) (quoting *Yusuf v. Vassar College,* 35 F.3d 709, 715 (2d Cir. 1994)). The court upheld the university's determination that expulsion was an appropriate sanction for the plaintiff's conduct, and rejected the plaintiff's argument that the university was biased on the grounds that "only men get accused of having sex with someone who is incapacitated by means of voluntary intoxication." *Doe v. Washington Univ.*, ("*Washington Univ. I*"), No. 19 Civ. 300, 2020 WL 353587, at *15 (E.D. Mo. Jan. 21, 2020), *reconsideration denied, Washington Univ. II*. In rejecting that argument, the court collected cases ruling that such a "general, conclusory assertion does not support a finding of gender bias. . . ." *Id.* (citing *Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d 984, 991 (D. Minn. 2017) ("[N]umerous courts have held a court 'cannot

13

plausibly infer. . . .a higher rate of sexual assaults committed by men against women, or filed by women against men, indicates discriminatory treatment of males accused of sexual assault.'") (citations omitted) and *Salau v. Denton*, 139 F. Supp. 3d 989, 999 (W.D. Mo. 2015) ("plaintiff's allegation that the 'male respondents in sexual misconduct cases at [the University] are discriminated against based solely on their sex' does not establish a pattern of decision making that tends to show gender bias, because plaintiff only points to one case—his own.")).

Such is the case here. Plaintiff has failed to assert any specific factual allegation – as opposed to rank conjecture and speculation, which is not entitled to deference under Rule 12(b)(6) – to suggest that *any* aspect of SJU's investigation into Doe's incident report was tainted by gender-based bias. Accordingly, the Court should dismiss this part of the SAC.

### C.    The SAC Fails to Identify Any Procedural Deficiency in SJU's Adjudication of Doe's Incident Report

The SAC alleges that SJU's "discriminatory bias against [Plaintiff] as a male student is evident by . . . . [d]enying his appeal in disregard of Policy 703 which applied to all policies of the University relating to sexual misconduct." SAC ¶ 56(c). This allegation is contradicted by the plain language of Policy 703, and thus is insufficient to state a cause of action under Title IX.

Plaintiff's invocation of Policy 703 throughout the SAC is entirely misplaced. SJU has established separate and distinct mechanisms for the investigation and adjudication of claims of sexual misconduct, depending upon the identity of the respondent. Policy 703 makes clear that complaints involving student respondents are addressed through procedures in the Student Code of Conduct – *not* those set forth in Policy 703. Section VII(I) of Policy 703 ("Adjudication") reads in relevant part as follows:

The University has distinct procedures for the investigation and resolution of:

- Complaints against students (Student Code of Conduct);

14

- Complaints against faculty (Investigation and Resolution as set forth below, and applicable University procedures as provided in the Collective Bargaining Agreement and University Statutes in taking any disciplinary action);

- Complaints against staff and administrators (as set forth below).

SAC, Ex. 1, § VII(I). Accordingly, Plaintiff's attempt to argue that Policy 703 is the operative procedure is contradicted by the plain language of the policy itself, and thus his allegation cannot be credited.

Incidentally, even if Plaintiff were to identify irregularities in SJU's adjudication of the Doe's incident report (of which there were none), dismissal would nevertheless be compelled because nothing in the SAC (other than Plaintiff's conclusory allegations) suggests that any such irregularities were due to *gender-based discrimination*. In this respect as well, *New York Univ.*, provides insight: it applied guidance from the Second Circuit Court of Appeals to reject the plaintiff's claim that purported irregularities in the adjudicative process supported an inference of bias. 2020 WL 564264, at *9-10 (quoting *Menaker v. Hofstra Univ.*, 935 F.3d 20, 34 n. 50 (2d Cir. 2019) ("our standard requires clear irregularities to raise an inference of bias. Variations among employers . . . universities, are expected, and minimal irregularities (absent other indicia of bias) do not suffice to suggest discrimination")).

Accordingly, the Court should reject Plaintiff's contention that alleged irregularities in the adjudicative process suggest that SJU was motivated by gender when it found him to be in violation of the Student Code.

### D.   The SAC Fails to Support an Inference that SJU was Driven by Public Pressure

Plaintiff also alleges that gender-based animus drove SJU to "[d]eny[ ] [Plaintiff's] appeal on January 8, 2019, at a time when [SJU] was confronted by public scrutiny of over 2,000 complaints [of] female students against it." SAC ¶ 56(d). This allegation is insufficient to state a

claim in light of the timing of the Doe proceeding. Doe filed her report on April 13, 2018, and 11 witnesses were interviewed within weeks. Hurwit Decl., Ex. E. On May 3, Plaintiff requested that one of those witnesses be re-interviewed – which SJU did. *Id.* A draft of the investigation report was provided to Plaintiff and Doe for their feedback, which SJU incorporated therein. Hurwit Decl., Exs. C and E. The matter was referred to a hearing before the Student Conduct Board, which was held on October 3, and the Board found Plaintiff in violation of one of the four charges. He was notified of his suspension on or around October 15 – *months before the Anonymous Tweet*. Hurwit Decl, Ex. G. The fact that SJU's determination on Plaintiff's appeal was finalized shortly after the Anonymous Tweet was posted is of no moment.

This was precisely the set of circumstances that the Court faced in *New York Univ.* There, the plaintiff claimed that N.Y.U.'s expulsion of him was in response to social media posts criticizing the university for failure to respond to claims of sexual assault which, according to the allegations in the complaint, were distributed to a thousand people. 2020 WL 565264, at *10. The presiding court rejected the plaintiff's contention that this was sufficient to support an inference of gender bias: "[p]laintiff's allegations are conclusory and insufficient to establish a 'plausible inference of sex discrimination' considering he never establishes that NYU was under public criticism during the pendency of the underlying investigations and proceedings[.]" *Id.*

For these same reasons, the Court should reject Plaintiff's contention that the months' long disposition of his appeal was compromised in any way by the Anonymous Tweet.

## II.     Plaintiff Fails to Plausibly Allege That Doe Sexually Harassed Plaintiff by Tweet, and That SJU Was Deliberately Indifferent to the "Harassment"

Plaintiff's second theory of Title IX liability alleges that SJU was deliberately indifferent to the Anonymous Tweet and the conduct which allegedly resulted therefrom. To plead this claim, Plaintiff must allege (1) "sexual harassment . . . that is so severe, pervasive, and

16

objectively offensive that it" deprived Plaintiff of "access to the educational opportunities or benefits provided by the school"; (2) that [SJU] had "actual knowledge" of the harassment; and (3) that [SJU] was "deliberately indifferent to [the] sexual harassment." *Davis v. Monroe Cty. Bd. of Educ.,* 526 U.S. 629, 650 (1999). The alleged harassment must, of course, be "gender-oriented." *Id.* at 651. Finally, Plaintiff must allege that a school official "failed to adequately respond." *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011).

### A.   Plaintiff Has Not Plausibly Pleaded That He Suffered "Gender-Based" Harassment

Plaintiff fails to plausibly plead that the Anonymous Tweet was motivated by Plaintiff's gender. This is precisely the conclusion reached in *Nungesser v. Columbia Univ.* ("*Nungesser I*"), 169 F.Supp.3d 353 (S.D.N.Y. 2016), a matter involving an analogous fact pattern. In *Nungesser I*, a female student accused a male student-athlete of raping her. Following a Title IX investigation and hearing, the accused male, Nungesser, was found "not responsible." The female student embarked on a months-long campaign accusing Nungesser of rape, including by facilitating articles published in *The New York Post* and a Columbia University student-run publication, holding a press conference with U.S. Senator Kirsten Gillibrand, and filing a police report for the express purpose of publicizing Nungesser's identity as the alleged "rapist." The female student also allegedly induced other females to file Title IX complaints against Nungesser. Finally, a "rapist list" that identified Nungesser as a "serial rapist" appeared on campus in flyers, on graffiti, and on a Columbia-hosted website. Threats of violence (including murder and "revenge rape") were made against those whose names appeared on the list, including Nungesser. *Id.* at 359-62.

Nungesser filed a Title IX action, accusing Columbia of "fail[ing] to investigate" and stopping the "campaign of harassment" against him. The court dismissed the complaint.

Critically, the court held that the plaintiff had failed to plead facts giving rise to a plausible

inference that the plaintiff's actions – the "campaign of harassment" – was motivated by

Nungesser's gender. Rather, the plaintiff was reacting to Nungesser having been found "not

responsible" for her assault by Columbia's student conduct panel. Thus, the plaintiff was not

motivated by Nungesser's "status as male," but rather by his alleged conduct toward her (rape).

*Id.* at 364; *see e.g., Washington Univ. I*, 2020 WL 353587 (dismissing Title IX claims where

actions of other students against male accused were not because of his gender, but because of his

alleged sexual misconduct).

The same is true here. There is not a factual allegation in the SAC alleging that the

Anonymous Tweet was *motivated by gender* or sex-based stereotypes, as opposed to an alleged

criminal sex act and the fact that Plaintiff "only got half a semester suspension." *See Nungesser*

*v. Columbia Univ.* ("*Nungesser II*"), 244 F. Supp.3d 345, 367 (S.D.N.Y. 2017). The only

plausible reading of the Anonymous Tweet is that it was motivated by anger. Plaintiff's

allegations that another student threatened him by voicemail and text messages, and a female

student punched him at an off-campus bar, because of the Anonymous Tweet also lacks any

reference to gender-motivated bias. SAC ¶¶ 45, 47.

Because neither the Anonymous Tweet nor any of the conduct alleged to have been taken

in response thereto is "gender-oriented," they cannot form the basis for a Title IX claim.

**B.    Plaintiff Fails to Plausibly Plead That SJU Acted With Deliberate**
**Indifference**

Plaintiff also fails to plausibly plead that SJU's actions were "clearly unreasonable in

light of the known circumstances," and thus the SAC does not sufficiently allege deliberate

indifference to sex harassment. *Davis*, 526 U.S. at 648.

Title IX does not require schools to "remedy peer harassment" or to "ensure that students conform their conduct to certain rules." *Id.* (alterations omitted). "On the contrary, the [school] must merely respond to known peer harassment in a manner that is not clearly unreasonable." *Id.* at 648-49. To establish liability, "[t]he measures taken [by the school] must be *so inadequate that a degree of discriminatory intent may be inferred.*" *KF ex rel. CF v. Monroe Woodbury Cent. Sch. Dist.,* No. 12 Civ. 2200, 2013 WL 177911, at *6 (S.D.N.Y. Jan. 16, 2013), *aff'd* 531 F. App'x 132, 134 (2d Cir. 2013) (emphasis added). "Furthermore, the deliberate indifference must subject a student to harassment, 'that is, the indifference must, at a minimum, cause students to undergo harassment or make them liable to or vulnerable to it.'" *DT v. Somers Central School District,* 348 Fed. Appx. 697, 700 (2d Cir.2009) (quoting *Davis,* 526 U.S. at 645). Given these burdens, "[i]n an appropriate case, there is no reason why courts, on a motion to dismiss . . . could not identify a response as not 'clearly unreasonable" as a matter of law." *Davis*, 526 U.S. at 649; *KF ex rel. CF*, 2013 WL 177911, at *6 (dismissing plaintiff's Title IX claim because she failed to allege facts that school acted with deliberate indifference in responding to the sexual assault).

Here, Plaintiff's complaint about the Anonymous Tweet and ensuing threatening voicemail was investigated. SJU identified the male student who left the voicemail, and sanctioned him (placing him on probation and barring him from non-academic premises). As a matter of law, SJU's response was not "clearly unreasonable."

Similarly, SJU's investigation determined that the Anonymous Tweet was posted under an anonymous Twitter handle, that its entirety was a quote attributable to someone else, and that there was no evidence plausibly linking Doe to the "St. John's Memes" Twitter handle. Plaintiff

takes issue with SJU's determination,[5] which was communicated to him in writing (SAC, Ex. 10), but there is nothing "clearly unreasonable" about it or the investigation that preceded it.

Finally, SJU was not aware that Plaintiff allegedly was punched until Eikenberry mentioned it in passing in a letter sent in June – five months after the Anonymous Tweet. SAC, Ex. 12. Even then, the Public Safety Department attempted to interview Plaintiff to obtain relevant facts, but Plaintiff *refused to cooperate*. Hurwit Decl., Ex. P. Given all of this, Plaintiff cannot plausibly allege that SJU was deliberately indifferent to the concerns that he raised.

### C.   Plaintiff Has Not Plausibly Pleaded That the Alleged Harassment Was Severe and Pervasive, and Denied Him Access to Educational Opportunities

Plaintiff fails to plead facts demonstrating that the alleged "harassment . . . is so severe, pervasive, and objectively offensive, and that [it] so undermines and distracts from the [plaintiff's] educational experience, that the [plaintiff is] effectively denied equal access to an institution's resources and opportunities." *Davis*, 526 U.S. at 650-51. "[I]solated remarks or occasional episodes of harassment will not merit relief…; in order to be actionable, the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive.'" *Quinn v. Green Tree Credit Corp.*, 159 F.3d, 759, 768 (2d Cir. 1998) (internal quotes omitted). *Miller-Harris v. Dinello*, No. 16 Civ. 0541, 2018 WL 5728115, at *4 (N.D.N.Y. Aug. 7, 2018), adopting report and recommendation, 2018 WL 4204245 (N.D.N.Y. Sept. 4, 2018). Indeed, even a single instance of a sexual *touching* is typically insufficient to meet the severe and pervasive standard, unless "the conduct consists of extreme sexual assault or rape." *Carabello v. N.Y.C. Dep't of Educ.*, 928 F. Supp. 2d 627, 643 (E.D.N.Y. 2013) (one incident of

---

[5] Plaintiff contends that it must have been authored by Doe because it states "…after raping me." That conclusory assertion ignores that the tweet was place in quotes, indicating that it was said by someone else – not the tweeter. And, given that the events leading up to the incident occurred in a Paris nightclub and a student dorm, the Anonymous Tweet could have been authored by anyone.

sexual touching was not sufficiently severe to state a Title IX claim); *Martinetti v. Mangan*, No. 17 Civ. 5484, 2019 WL 1255955, at *4 (S.D.N.Y. Mar. 19, 2019); *Elgamil v. Syracuse Univ.*, No. 99 Civ. 611, 2000 WL 1264122, (N.D.N.Y. 2000) (single events will meet the standard only if they are extreme, "such as a sexual assault"). A single tweet and voice message plainly are insufficient to meet the severe and pervasive standard. They were isolated incidents, occurring during a brief 72-hour period when SJU was not in session.

The SAC also lacks allegations to support an inference that the Anonymous Tweet and voicemail message deprived Plaintiff of access to SJU's educational resources and opportunities – because they did not. Plaintiff fails to claim that the two actions resulted in a decline in academic performance, emotional distress, his failure to attend classes or take part in extra-curricular activities, or otherwise had a "concrete negative effect" on his education. *Nungesser II*, 244 F. Supp.3d at 369-70. The SAC contains only a single conclusory allegation that SJU's indifference "ultimately deprived [Plaintiff] of access to educational opportunities," devoid of any specific examples. Critically, the Anonymous Tweet and voicemail occurred during Winter Break, when SJU was not in session. SAC ¶ 92. Accordingly, the Second Cause of Action must be dismissed. *Nungesser II*, 244 F. Supp.3d at 368-370.

**D.**     **Plaintiff Fails to Plausibly Plead That SJU Had Control Over the Alleged Harassing Conduct**

"Title IX does not impose liability for deliberate indifference to conduct over which an educational institution has no control." *Nungesser II*, 244 F. Supp. 3d at 369 (citing *Davis,* 526 U.S. at 645). Rather, liability is limited to "circumstances wherein [the school] exercises substantial control over both the harasser and the context in which the known harassment occurs." *Davis*, 526 U.S. at 645; *see also T.Z. v. City of New York*, 634 F. Supp. 2d 263, 268 (E.D.N.Y. 2009) ("A plaintiff seeking recovery for a violation of Title IX based on student-on-

student harassment must prove that the alleged harassment took place in a location within the control of a recipient of federal funds"). SJU does not exercise control over student tweets or phone calls, and thus cannot be held liable for the Anonymous Tweet or voicemail. *M.S. v. Susquehanna Twp. Sch. Dist.*, No. 13 Civ. 2718, 2017 WL 6397827, at \*10 (M.D. Pa. March 29, 2017), adopting report and recommendation, 2017 WL 6403007 (M.D. Pa Aug. 16, 2017) (dismissing Title IX claim because harassment via social media not within school's control); *Feminist Majority Foundation v. Hurley*, 911 F.3d 674, 704-05 (4th Cir. 2018) (alleged harassment over third-party social media application not within university's control).

Similarly, SJU does not exercise control over the tavern where Plaintiff was allegedly punched. Off-campus conduct, outside of school hours, in a space and time not "definitively under" SJU's control cannot give rise to a Title IX claim. *McNeil v. Yale Univ.*, No. 19 Civ. 0209, 2020 WL 495061, at \*12 (D. Conn., Jan. 30, 2020) (dismissing Title IX claim because the alleged conduct occurred at an off-campus fraternity house not under Yale's control and which is not a college-sponsored event or educational activity); *HB v. Monroe Woodbury Central Sch. Dist.*, No. 11-5881, 2012 WL 4477552, at \*16 (S.D.N.Y. Sept. 27, 2012) (allegations of molestation occurring off of school grounds does not show control by school district).[6]

---

[6] What's more, the SAC does not allege that the woman who allegedly punched him at the off-campus tavern was an SJU student, further undermining Plaintiff's inability to plead that SJU exercised control over the matter. Plaintiff does not identify the woman by name. "Merely labeling something as student [peer] harassment does not make it so." *Feminist Majority Foundation*, 911 F.3d at 711-12. A "naked assertion that students" engaged in the alleged conduct "is insufficient as a matter of law to plead a cognizable Title IX claim." *Id*; see also *Tyrell v. Seaford Union Free Sch. Dist.*, 792 F. Supp. 2d 601, 626 (E.D.N.Y. 2011) (Title IX claim dismissed where plaintiffs were unable to identify the perpetrators, and thus no evidence that school district had substantial control over the harassers).

**E.     If the SAC Alleges Deliberate Indifference in Connection With SJU's Processing of Mary Smith's Assault Allegations – Which is Entirely Unclear – That Claim too Must Be Dismissed**

The Second Cause of Action is undoubtedly confusing, but read liberally, it may be read to attempt to assert a second claim of deliberate indifference on the part of SJU – namely, that the adjudication process in connection with the Mary Smith sex assault complaint was affected by gender bias. SAC ¶¶ 46, 51-52, 81, 91(e). As set forth in Section IV(B), below, that allegation is patently false, but, in any event, it also fails to state a claim for harassment. In *Doe v. Miami Univ.*, 882 F.3d 579, 590-91 (6th Cir. 2017), the plaintiff alleged that Miami University's sexual assault disciplinary process was riddled with gender bias, and he sued the university under a deliberate indifference theory. The Sixth Circuit affirmed dismissal of the plaintiff's claim, holding that the deliberate-indifference theory of liability under Title IX requires allegations of sex *harassment*, not only mere discrimination. *Id.*; *accord, Doe v. Quinnipiac Univ.*, 404 F. Supp. 3d 643, 664 (D. Conn. 2019) (university cannot be held liable under deliberate indifference theory for flaws in disciplinary process).

**III.    Plaintiff Fails to Plausibly Allege That SJU Discriminated Against Him on the Basis of Gender When it Disciplined Him for Assaulting Mary Smith**

Read in the light most favorable to Plaintiff, it appears that the third cause of action is predicated upon an argument that the Conduct Board and the Conduct Appeals Board reached an erroneous outcome in their adjudication of Mary Smith's incident report.  To proceed under this theory, Plaintiff must adequately plead 1) that he "was innocent and wrongly found to have committed the offense," and 2) that "gender bias was a motivating factor" behind that erroneous outcome.  *Yu*, 97 F. Supp. 3d at 462 (internal quotes omitted). In this respect, Roe's attempts to impute to SJU error arising out of gender-based bias concerning its investigation into and adjudication of Mary Smith's incident report fares no better than those concerning Jane Doe's

report.  Accordingly, the Court should dismiss the Third Cause of Action alleging that SJU "fail[ed] to afford Roe a fair and unbiased hearing on the second complaint as [r]equired by Policy 703 and Title IX" in its entirety.

### A.    Plaintiff's Allegations Fail to Identify Procedural Errors

The allegations in support of the third cause of action are devoid of *any* fact that would suggest that any aspect of SJU's investigative or adjudicatory process concerning Mary Smith's incident report was conducted in error. They instead recite a litany of trivial grievances having nothing whatsoever to do with the elements of a cause of action under Title IX. Accordingly, the Court should dismiss Plaintiff's third cause of action for failure to state a claim upon which relief may be granted.

As a preliminary matter, and as set forth more fully in Section I(C), *supra*, Plaintiff's reliance on Policy 703 in an attempt to allege procedural irregularities is wholly misplaced. Because Plaintiff was a student – and *not* a member of SJU's faculty, staff or administration (claims concerning whom *are* adjudicated in accordance with Policy 703) – adjudication of Mary Smith's report of Plaintiff's sexual assault was governed by the Student Code of Conduct rather than Policy 703.

Plaintiff's attempts to allege a violation of his "due process" rights (*see* SAC ¶¶ 128-29, 132) are unavailing for similar reasons. This is because "the federal Constitution does not establish the level of due process that [SJU] had to give [Plaintiff] in his disciplinary proceeding." *Yu*, 97 F. Supp. 3d at 462-63 (citing *Bleiler v. Coll. of Holy Cross*, No. 11 Civ. 11541-DJC, 2013 WL 4714340, at *4 (D. Mass. Aug. 26, 2013) and *Rensselaer Soc'y of Eng'rs v. Rensselaer Polytechnic Inst.*, 260 A.D.2d 992 (3d Dep't 1999) (for the rule that "the relationship between a private university and its students . . . is essentially a private one such

24

that, absent some showing of State involvement, their disciplinary proceedings do not implicate the full panoply of due process guarantees").

The purported irregularities identified by Plaintiff include the allegation that the SJU's investigator inaccurately reported that Plaintiff had moved out of the house in which the assault occurred in order to move in with his mother, when he had actually moved in with his father. *See* SAC ¶ 123. This attempt to focus on immaterial matters is illustrative of Plaintiff's efforts to conjure a cause of action out of nothing at all. The investigator's report into Mary Smith's allegations make plain that multiple witnesses testified that Plaintiff was *forced* to move out of their house because of their understanding that he had sexually assaulted Mary Smith. *See* Hurwit Decl., Ex. K (Witness 1 "stated that all four housemates discussed the incident and the witness expressed to the group that he wanted the respondent to move out. The housemates agreed and it was decided they would inform the respondent that night." Witness 4 stated that "The respondent was . . . informed that the complainant was reporting he had sexually assaulted her and that he must move out of the house"). In light of this testimony, the Conduct Panel found that "key aspects of [Plaintiff's] account of the events lacked credibility," including when he attempted to explain why he had moved out of the house.  Hurwit Decl., Exh. T. Among the facts that the Student Conduct Board identified in support of its unanimous finding of non-consensual sexual contact were the inconsistencies between Plaintiff's testimony and that of his housemates. It is of no moment whether Plaintiff testified that he moved out to be with his mother or to be with his father; what the Conduct Panel found material was that Plaintiff's proffered reason was entirely at odds with the testimony of his former housemates. Plaintiff's other attempts to identify procedural irregularities are similarly insufficient to cast "articulable doubt on the

accuracy of the outcome of the disciplinary proceeding" (*Yusuf,* 35 F.3d at 715), and were addressed in the Appeal Board's January 15, 2020 decision. SAC, Ex. 17.

Accordingly, the third cause of action fails to state a cause of action under Title IX and must be dismissed.

### B.   Plaintiffs Allegations Fail to Identify Gender-Based Bias

Plaintiff's attempts to allege bias on the basis of his gender in connection with SJU's adjudication of Mary Smith's incident report fare no better. Even if Plaintiff had identified procedural irregularities sufficient to cast doubt upon the integrity of the proceedings concerning Mary Smith's incident report (which he has not), the third cause of action must nonetheless be dismissed because Plaintiff has offered nothing beyond conclusory allegations and speculation to suggest that the determinations of the Student Conduct Board and the Appeal Board were motivated by gender-based bias.

"[A]llegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss." *Yusuf,* 35 F.3d at 715. Because "conclusory allegations of gender discrimination" is *all* that Plaintiff proffers on this point, the third cause of action must be dismissed. In an effort to impute gender-based bias to the Conduct Board's determination, Plaintiff claims that "it is almost certain that one or more of the faculty members at the Conduct Board …. would know about the tweet, therefore, making it impossible to eliminate bias[.]" SAC ¶ 114. Not only is this allegation pure speculation on the part of Plaintiff, but the Appeal Board has already reviewed and addressed it. *See* SAC, Ex. 17, § III(A) ("Even now, on appeal, Respondent does not allege who among the panel members had a conflict of interest that warranted recusal"). Moreover, as set forth more fully in Section II(A), even if

Board members had been aware of the Anonymous Tweet, that awareness is insufficient to demonstrate gender-based bias. The remaining allegations in support of the third cause of action are wholly devoid of any specific factual assertion that would support an inference that *anyone* involved with the adjudication of Mary Smith's incident report was motivated by bias on the basis of Plaintiff's gender.

For this reason as well, the third claim fails to state a cause of action.

## IV.    Plaintiff Fails to Plausibly Plead Valid Contract Claims

"In New York, the relationship between a university and its students is contractual in nature." *Nungesser II*, 244 F. Supp. 3d at 372 (quoting *Yu*, 97 F.Supp.3d at 481 (internal quotes and other citations omitted)). However, although a "university's bulletins, circulars and regulations made available to the student, become a part of this contract . . . [,] [n]ot every dispute between a student and a university is amenable to a breach of contract claim." *Id.* (quoting *Gally v. Columbia Univ.*, 22 F.Supp.2d 199, 206 (S.D.N.Y. 1998)) (internal quotes omitted). "[T]he mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted." *Id.* (citing *Baldridge v. State of New York,* 293 A.D.2d 941, 942 (2002) ("[W]hile a school may be subject to a cause of action for breach of contract, this requires a contract which provides for 'certain specified services' as 'courts have quite properly exercised the utmost restraint applying traditional legal rules to disputes within the academic community'") (internal citations omitted)).

"To survive a motion to dismiss for a breach of contract claim under New York law, the complaint must allege facts which show: (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages." *Doe v. Syracuse Univ*. ("*Syracuse Univ.*"), 341 F. Supp. 3d 125, 140 (N.D.N.Y. 2018)

(quoting *Habitzreuther v. Cornell Univ.*, No. 14 Civ. 1229, 2015 WL 5023719, at *5 (N.D.N.Y. Aug. 25, 2015) (citations and internal quotes omitted). "[A] student must identify 'specifically designated and discrete promises.'" *Nungesser II*, 244 F. Supp. 3d at 372 (quoting *Ward v. New York Univ.*, No. 99 Civ. 8733, 2000 WL 1448641, at *4 (S.D.N.Y. Sept. 28, 2000). "'General policy statements' and 'broad and unspecified procedures and guidelines' will not suffice." *Id.*

### A.    Plaintiff Has Not Plausibly Pleaded That SJU Breached a Contractual Obligation to Adjudicate Claims Based on a Preponderance of the Evidence Standard

Plaintiff alleges that when the Student Conduct Board rejected his narrative that Doe placed his hand on her breast, SJU "breached its contractual obligation to adjudicate claims based on a preponderance of the evidence standard" in Policy 703. SAC ¶¶ 140-41. However, "[t]he mere fact that [Plaintiff] disagrees with the outcome does not support a plausible inference that [SJU] surreptitiously chose to apply a lesser evidentiary standard." *Feibleman v. Trustees of Columbia Univ.*, No. 19 Civ. 4327, 2020 WL 882429, at *19 (S.D.N.Y. Feb. 24, 2020). Rather, the evidence presented to the University Conduct Board demonstrates by Plaintiff's own admission, that "[Plaintiff], while sober, engaged in physical conduct of a sexual nature with [Doe], who was intoxicated, but that he lacked affirmative consent to do so." SAC, Ex. 5, § III(B).

### B.    Plaintiff Has Not Plausibly Pleaded That SJU Breached an Alleged Contractual Obligation to Address All Claims of Sexual Misconduct

Plaintiff next alleges that SJU breached its "contractual obligation to address all claims of sexual misconduct [because SJU] made no findings against female student Doe despite [Plaintiff's] testimony that Doe intentionally placed his hand on her breast." SAC ¶ 142. Plaintiff's claim fails for at least two reasons. First, this allegation fails to identify a specific contractual promise by SJU. *See Nungesser II*, 244 F.Supp.3d at 372 (quoting *Ward*, 2000 WL

1448641, at *4) ("In order to state a claim for breach of such a contract, a student must identify 'specifically designated and discrete promises.'"). The purpose of Policy 703 – to address sexual misconduct – is a non-actionable statement of general policy that cannot support a breach of contract claim. *See Syracuse Univ.*, 341 F. Supp. 3d 125, 141 (N.D.N.Y. 2018). Second, there is no allegation that Plaintiff ever alleged (or reported to SJU) that Doe engaged in sexual misconduct, and thus SJU had no obligation to address any such claim. Rather, Plaintiff told SJU investigators that "the only contact between [Plaintiff and Doe] *was mutual* and over clothes," and he conceded that he was sober while she was not. *See* Hurwit Decl., Ex. E. (emphasis added).

> ### C. Plaintiff Has Not Plausibly Pleaded That SJU Breached Any Contract by Failing to Provide Him the Opportunity to Submit a Written Impact Statement

Plaintiff also alleges that SJU violated Policy 703 when it failed to allow him to submit a written impact statement in both sexual assault proceedings. SAC ¶¶ 143, 148. As set forth in Section I (C), Policy 703 – which is a general policy prohibiting sexual misconduct – does not address the issue. Rather, the Student Code applies to the adjudication of Title IX hearings involving student respondents, and it provides that only a *complainant* has the right to present a written impact statement. Plaintiff was the respondent in both cases, and thus had no such right. *See* SAC, Exs. 5 and 17; Hurwit Decl., Ex. A. In any event, Exhibit 5 to the SAC reveals that Plaintiff had 12 days between the time that the Conduct Board found him in violation for Doe assault and when the Office of Student Conduct imposed sanctions, yet Plaintiff never attempted to submit a written impact statement. *Id.* § III(A). The same is true for the proceeding concerning Mary Smith's incident report: Plaintiff had 15 days to submit a written impact statement, but

failed to do so. SAC, Ex. 17, § III(C). Plaintiff's allegations are belied by the documentary evidence he attaches to the SAC, and thus must be dismissed.

### D.   Plaintiff Has Not Plausibly Pleaded That SJU Breached Contractual Obligations to Impartially Investigate His Complaint Over the Tweet and the Mary Smith Sex Assault Complaint

Plaintiff repeats claims he already set forth in Counts I-III, namely that SJU allegedly failed to investigate the Anonymous Tweet, that SJU failed to redress the tweet or its effects which resulted in SJU's failure to prevent a hostile educational environment, and that SJU failed to thoroughly and impartially investigate the Smith complaint because it suspended Roe within three days of the complaint. SAC ¶¶ 144-46. As discussed in detail above, each of these claims are also alleged as violations of Title IX. Consequently, these claims should be dismissed as superfluous. *See Lance v. S. Country Cent. Sch. Dist.,* No. 05 Civ. 2536, 2006 WL 8439050, at *6 (E.D.N.Y. June 2, 2006) (Where the "breach of contract claim is nothing more than a restatement of her federal Title VII and Section 1983 claims, the state law breach of contract is dismissed as superfluous."). Moreover, these allegations fail to allege a breach of contract claim, as they merely state "general policy" violations. *See Syracuse Univ.*, 341 F. Supp. 3d, at 141; *Gally*, 22 F.Supp.2d at 207; *Nungesser II*, 244 F. Supp. 3d at 373.

### E.   Plaintiff Has Not Plausibly Pleaded That SJU Breached Its Contractual Obligation by Failing to Conduct a Fair and Unbiased Hearing

Plaintiff alleges that SJU failed "to conduct a fair and unbiased hearing by (a) failing to publish procedures as to how faculty members are selected for the Hearing Board; (b) failing to enforce procedural safeguards, such as preventing panel members from conferring with St. John's prior to the hearing; (c) disregarding the potential bias created by the fact that faculty members had almost certainly seen the tweet prior to the hearing; and (d) failing to provide a

record of the hearing to serve as a basis for an appeal and in securing an impartial investigator."
SAC ¶ 147.

These allegations offer mere "general policy" violations that courts in this Circuit have repeatedly rejected in breach of contract claims. For example, the plaintiff in *Syracuse Univ.* alleged that he "was not provided 'adequate notice' of the complaint against him," but failed to "identify a specific policy violation in this regard." 341 F. Supp. 3d at 141. The Court noted that "[t]he provision that students receive 'written notice' or 'adequate notice' of complaints is incorporated in the 'Fundamental Fairness' section" of Syracuse's policies and procedures." *Id*. The Court went on to conclude that "[p]rovisions that students will be treated in a 'fundamentally fair' manner, or in a manner that is consistent with fundamental 'student rights,' are the sorts of non-actionable statements of general policy that courts applying New York law have held cannot support a breach of contract claim." *Id*.[7]  Accordingly, Plaintiff fails to state a plausible breach of contract claim, and the fourth cause of action must be dismissed.

## V.      Plaintiff Should Proceed Under His Legal Name

Plaintiff initiated this action under a pseudonym without advance permission of the Court, and in derogation of Fed. R. Civ. P. 10(a) and applicable Second Circuit precedent. Because he cannot establish any basis for proceeding anonymously, he should amend the caption under his legal name.

### A.      Second Circuit Law Prohibits Plaintiff From Proceeding Under a Pseudonym

"Parties to a lawsuit must typically openly identify themselves." *United States v. Microsoft Corp.*, 56 F.3d 1448, 1463 (D.C. Cir. 1995); *see* Fed. R. Civ. P. 10(a). "This

---

[7] Plaintiff's breach of contract claim fails also because he does not set forth damages resulting from the alleged breaches. *See Feibleman*, 2020 WL 882429, at *18.

requirement . . . serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d Cir. 2008). And, because defendants cannot avoid being publicly identified, which "may cause damage to their good names and reputation," requiring plaintiffs who are leveling "serious" accusations against them to mutually identify themselves is also "dictate[d]" by "[b]asic fairness." *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979). For these reasons, an application to omit names from a caption is "a request for *extraordinary relief*" – indeed, "the people have a right to know who is using their courts." *Doe v. Greiner*, 662 F.Supp.2d 355 (S.D.N.Y. 2009) (quoting, *Sealed Plaintiff*, 537 F.3d at 189) (emphasis added).

"[T]he Second Circuit has carved out a *narrowly crafted* exception" to the rule that parties must identify themselves, consisting of a "nonexhaustive" list of factors for District Courts to consider *A.B. v. Hofstra Univ.*, No. 17 Civ. 5562 (DRH), 2018 WL 1935986 a *1 (E.D.N.Y. Apr. 24, 2018) (citing *Sealed Plaintiff*, 537 F.3d at 189):

(1)  whether the litigation involves matters that are highly sensitive and personal [in] nature;

(2)  whether identification poses a risk of retaliatory physical or mental harm to the . . . party [seeking anonymity] or even more critically, to innocent non-parties;

(3)  whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity;

(4)  whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age;

(5)  whether the suit is challenging the actions of the government or that of private parties;

(6)  whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of [any] prejudice differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;

(7)  whether the plaintiff's identity has thus far been kept confidential;

32

(8)  whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity;

(9)  whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and

(10) whether there are alternative mechanisms for protecting confidentiality of the plaintiff.

*Id.* at *1-*2 (quoting *Sealed Plaintiff*, 537 F.3d at 187 (internal quotes and citations omitted).

Factor #1: *Highly Sensitive Matters*. The SAC claims that Plaintiff was denied fair disciplinary hearings, and failed to investigate the Anonymous Tweet. SAC ¶¶ 69, 72-73, 77 132, 144-46. Such matters are not highly sensitive to Plaintiff (although they may be as to Doe). Courts have found that cases relating to "birth control, abortion, homosexuality, or the welfare rights of illegitimate children or abandoned families" meet the definition of "highly sensitive and of a personal nature". *See North Jersey Media Group, Inc. v. Doe Nos. 1-5*, No. 12 Civ. 6152, 2012 WL 5899331, at *4 (S.D.N.Y. Nov. 26, 2012) (internal quotes omitted). This case presents no such allegations.

Plaintiff cannot rely upon claims that he was falsely accused of sex assault to meet the "sensitive matter" factor. Courts in this Circuit have routinely denied "Jane Doe" status to plaintiffs who alleged that they were the *victims* of sexual assault, and that publicizing their name would cause humiliation and further psychological injury. *Doe v. Skyline Automobiles, Inc.*, 375 F.Supp.3d 401, 403 (S.D.N.Y. 2019) (application to proceed anonymously denied despite that "Complaint contain[ed] graphic and disturbing details of violence and allegations of severe mistreatment.")[8]

---

[8] To the extent that Plaintiff cites risk to his reputation, the reputational risks that Plaintiff seeks to avoid by proceeding anonymously are the same reputational risks that any private litigant bears. *See, e.g., Doe v. Delta Airlines, Inc.* ("*Delta Airlines, Inc.*"), 310 F.R.D. 222, 226 (S.D.N.Y. 2015).

Factors #2 & #3: *Risk of Retaliation In Connection With Filing This Action, and the Likelihood and Severity of the Harm Arising Therefrom*. The SAC does not allege that Plaintiff was harmed or threatened as the result of initiating this case. Prior knowledge of a plaintiff's identity by the defendant weighs *against* granting a motion to proceed anonymously. *Doe v. United States*, No. 16 Civ. 7256, 2017 WL 2389701, at *3 (S.D.N.Y. June 1, 2017). Both defendants are aware of Plaintiff's identity, and Plaintiff alleges that his name was disclosed to the SJU community (and anyone else in the world with access to the Internet) by the Anonymous Tweet. SAC ¶¶ 22, 39, 46.

Factor #4: *Vulnerability and Age of Plaintiff*. Plaintiff is an adult, and there is nothing of which SJU is aware that makes him particularly vulnerable to the possible harms of disclosure. This factor weighs in favor of denying anonymity.

Factor #5: *Government Action or Private Action*. SJU is a private party, and has a substantial interest in maintaining its good standing in the educational, religious, and civic communities – particularly in light of the allegations that it treated a student unfairly by depriving him of federal statutory rights. This factor weighs in favor of denying anonymity.

Factor #6: *Scope, Extent and Possible Mitigation of Prejudice to Defendant*. SJU will be prejudiced if it is required to defend this action in a public forum where its integrity as an educational and religious institution are openly attacked, while Plaintiff may launch those attacks from behind the cover of anonymity. *Delta Airlines, Inc.*, 310 F.R.D. at 225. Anonymity also will hamper SJU's ability to conduct discovery and defend against certain allegations leveled by Plaintiff – most notably his claim that his reputation was damaged. SAC ¶ 64.

Factor #7: *Status of Confidentiality in the Proceedings*. Plaintiff's identity was disclosed to several SJU administrators responsible for investigating and resolving Jane Doe's and Mary

Smith's incident reports; to students who were interviewed as witnesses; and to additional personnel who served as members of the conduct boards which evaluated the charges against Plaintiff. Plaintiff also alleges that his identity was exposed in the Anonymous Tweet. Plaintiff's lack of anonymity to date weighs in favor of denying anonymity. *Doe v. National Conference of Bar Examiners,* No. 16 Civ. 0264 (PKC), 2017 WL 74715, at *3 (E.D.N.Y. Jan. 6, 2017).

Factors #8 & #9: *Public Interest in the Litigation and Nature of the Issues*. The Second Circuit directs district courts to determine "whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity." *Sealed Plaintiff,* 537 F.3d at 190. "[W]here the litigation involves, not abstract challenges to public policies, but rather . . . particular actions and incidents, open proceedings nevertheless benefit the public as well as the parties and also serve the judicial interest in accurate fact-finding and fair adjudication." *North Jersey,* 2012 WL 5899331, at *8 (internal quotes omitted). Here, the gravamen of Plaintiff's allegations are the type that "further the public's interest in enforcing legal and social norms." *Id.*

Factor #10: *Alternative Mechanisms for Protecting Confidentiality*. Given that many of the documents at issue in this case are internal to SJU, and that some are protected from public disclosure by the Federal Educational Rights and Privacy Act, Plaintiff could apply for a protective order, or the parties could enter a confidentiality agreement, with respect to any highly-sensitive documents. This weighs against allowing Plaintiff to proceed anonymously. *See e.g. Anonymous v. Medco Health Solutions, Inc.*, 588 Fed App'x 34 (2d Cir. 2014).

## CONCLUSION

For the reasons set forth above, Plaintiff's SAC must be dismissed in its entirety. If the SAC is not dismissed in its entirety, Plaintiff should be ordered to amend the caption to reflect his legal name or voluntarily dismiss this action, with prejudice.

Dated:   New York, New York
         May 8, 2020

DAVIS WRIGHT TREMAINE LLP

By: /s Lyle S. Zuckerman

Lyle Zuckerman, Esq.
Michael Goettig, Esq.
Kaitlyn E. Fallon, Esq.
1251 Avenue of the Americas, 21st Floor
New York, New York 10119
(212) 603-6452