UNITED STATES DISTRICT COURT
EASTERN DISTRICT NEW YORK

------------------------------------------------------------- x
RICHARD ROE,
                      Plaintiff,           Case No. 19-cv-04694 (PKC)(RER)

            - against -

ST. JOHN'S UNIVERSITY and JANE DOE,

                      Defendants.
------------------------------------------------------------- x

# REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF ST. JOHN'S UNIVERSITY'S MOTION
# TO DISMISS THE SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
Lyle S. Zuckerman
Michael J. Goettig
Kaitlyn E. Fallon
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
(212) 603-6498

*Attorneys for Defendant*
*St. John's University*

**TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT ................................................................................... 1

II. ANALYSIS...................................................................................................................... 1

    A. The Opposition Does Nothing to Save from Dismissal Plaintiff's Claim Alleging a Discriminatory Disciplinary Process........................................................ 1

    B. Plaintiff Concedes His Deliberate Indifference Claim is Deficient, and Fails to Show How the Remaining Allegation States A Cause of Action .............. 2

    C. Policy 703 Does Not Provide Plaintiff With A Cause of Action............................ 5

    D. The Court May Consider Documents Submitted by SJU ...................................... 6

    E. If Any Claim Survives Dismissal, Plaintiff Should Be Compelled to Proceed Under His Own Name ................................................................................ 8

III. CONCLUSION............................................................................................................... 9

4814-1025-5559v.3 0103493-000022

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.B. v. Hofstra Univ.*,
  No. 17 Civ. 5562 (DRH), 2018 WL 1935986 (E.D.N.Y. Apr. 24, 2018)..................................8

*Collins v. Saratoga Cty. Support Collection Unit*,
  528 Fed. Appx. 15 (2d Cir. 2013).........................................................................................2

*Doe v. Greiner*,
  662 F. Supp. 2d 355 (S.D.N.Y. 2009)...................................................................................8

*Doe v. New York Univ.*,
  438 F. Supp. 3d 172 (S.D.N.Y. 2020)................................................................................1, 2

*Doe v. Sarah Lawrence College*
  No. 19-CV-10028, 2020 WL 1819914 (S.D.N.Y. April 10, 2020) .........................................7

*Doe v. Syracuse Univ.*,
  341 F. Supp. 3d 125 (N.D.N.Y. 2018) ..................................................................................5

*Doe v. Washington Univ.*,
  434 F. Supp. 3d 735 (E.D. Mo. 2020)...............................................................................1, 5

*Feibleman v. Trs. of Columbia Univ. in N.Y.*,
  No. 19-cv-4327, 2020 U.S. Dist. LEXIS 120835 (S.D.N.Y. July 9, 2020) ............................3

*Menaker v. Hofstra University*,
  935 F.3d 20 (2d Cir. 2019)....................................................................................................5

*Nungesser v. Columbia Univ.*,
  169 F. Supp. 3d 353 (S.D.N.Y. 2016)...................................................................................4

*Nungesser v. Columbia Univ.*,
  244 F. Supp. 3d 345 (S.D.N.Y. 2017)...............................................................................4, 5

*Sealed Plaintiff v. Sealed Defendant*,
  537 F.3d 185 (2d Cir. 2008)..................................................................................................8

*Tulczynska v. Queens Hospital Center*,
  No. 17 Civ. 1669, 2019 WL 6330473 (S.D.N.Y. Feb. 12, 2019) ..........................................6

*In re UBS AG Sec. Litig.*,
  No. 07 Civ. 11225, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) ........................................2

**Statutes**

Title VII ...................................................................................................................................4

Title IX .......................................................................................................................1, 3, 4, 6

I.        PRELIMINARY STATEMENT

Plaintiff's[1] memorandum of law in opposition to SJU's motion to dismiss the SAC (the "Opposition") is, in large part, little more than a reiteration of the incomplete and misleading allegations set forth in the SAC (and the Amended Complaint before it, and the Complaint before that). In an implicit acknowledgment that both the law and the facts compel dismissal of the SAC, Plaintiff fails to address most of the arguments set forth in SJU's Moving MOL and instead focuses on immaterial matters, misleading recitations of inapposite case law, and rank speculation in a transparent attempt to use this forum to once again be heard on matters already exhaustively investigated and adjudicated.

II.       ANALYSIS

A.     **The Opposition Does Nothing to Save from Dismissal Plaintiff's Claim Alleging a Discriminatory Disciplinary Process**

Plaintiff's initial Title IX claim asserts that SJU's investigative and adjudicatory processes were discriminatory. Notably absent from the Opposition, however, is any attempt to rebut SJU's contention that Plaintiff's claim in this regard is supported by nothing more than Plaintiff's baseless speculation (Moving MOL, at 12-15, 26-27). Nor does Plaintiff dispute that SJU's adjudicative procedures were governed by the Student Code of Conduct, and not by Policy 703 (Moving MOL, at 24-26). Plaintiff also fails even to address the many cases cited by SJU in which courts have dismissed complaints – much like Plaintiff's – purporting to challenge educational institutions' decisions in response to allegations of student misconduct. *See*, *e.g.*, *Doe v. New York Univ.*, 438 F. Supp. 3d 172 (S.D.N.Y. 2020) (discussed in Moving MOL, at 11, 12, 15, 16), *Doe v. Washington Univ.*, 434 F. Supp. 3d 735 (E.D. Mo. 2020) (discussed in Moving MOL, at 13-14).

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in SJU's May 8, 2020 memorandum of law (the "Moving MOL").

1

By failing to address these points in the Opposition, Plaintiff "concedes through silence" the legitimacy of the arguments presented in the Moving MOL. *In re UBS AG Sec. Litig.*, No. 07 Civ. 11225, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012); *see also Collins v. Saratoga Cty. Support Collection Unit*, 528 Fed. Appx. 15, 17 (2d Cir. 2013) (where a plaintiff fails to present claims in opposition to a motion, "any such claims [are] forfeited").

Plaintiff's only meager effort to stave off dismissal of this claim are his conclusory assertions, not supported by plausible factual allegations, that, "within five days of the tweet storm, [SJU] lapsed into a confusing and irregular pattern of responding to complaints of sexual harassment," and that "Roe was suspended without explanation and his appeal of sanctions denied three days after the tweet storm[.]" Opposition, at 17. On this point, Plaintiff's recitation of events is incomplete and misleading. As Plaintiff – *and his attorney* – know full well, SJU's January 8, 2019 denial of Plaintiff's appeal was the culmination of a months-long investigation and adjudication process. *See* Moving MOL, at 3-4. Similarly, SJU's January 7, 2019 notice to Plaintiff that he was to have no contact with Jane Doe, and the notice of suspension the following day, was in response to the incident report she filed on Saturday, January 5, 2019 alleging that he sexually assaulted her. Even at this stage, the Court need not accept as true Plaintiff's baseless allegations that SJU's actions were some knee-jerk response to a "tweet storm" rather than steps taken pursuant to SJU's clearly defined protocols. *Doe v. New York Univ.*, 438 F. Supp. 3d, at 185 (dismissing complaint and rejecting plaintiff's contention that university was motivated by public pressure in its response to allegations of plaintiff's sexual misconduct).

**B.   Plaintiff Concedes His Deliberate Indifference Claim is Deficient, and Fails to Show How the Remaining Allegation States A Cause of Action**

It appears that Plaintiff has abandoned his assertions that SJU failed to take action against (i) the student who left him threatening voicemails (because documentary evidence demonstrates

2

that it did), and (ii) the individual who allegedly punched him in an off-campus location (because as part of its investigation into the alleged assault SJU attempted to interview Plaintiff and he refused to cooperate). All that remains of Plaintiff's claim that SJU was deliberately indifferent to his plight, then, was his contention that SJU failed to investigate his complaint that co-defendant Doe posted the Anonymous Tweet under the Twitter handle "St. John's Memes."[2]

As a threshold matter, Plaintiff attempts to have the Court analyze this claim using an incorrect legal standard: whether the alleged conduct is "severe *or* pervasive." *See* Opposition, at 16,[3] citing *Tubbs v. Stony Brook Univ.*, 343 F. Supp. 3d 292 (S.D.N.Y. 2018). As the case cited by Plaintiff himself makes clear, however, a claim sounding in sexual harassment under Title IX must allege, among other things, that the conduct in question was so "severe, pervasive, *and* objectively offensive" that it deprived the plaintiff of "access to the education opportunities or benefits provided by the school." *Id.*, at 307, quoting *Davis v. Monroe County*, 526 U.S. 629, 644-45, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (emphasis added); *see also Feibleman v. Trs. of Columbia Univ. in N.Y.*, No. 19-cv-4327, 2020 U.S. Dist. LEXIS 120835 (S.D.N.Y. July 9, 2020) ("In a case of student-on-student sexual harassment, an educational institution is liable under Title IX only when it is deliberately indifferent to the harassment, of which it has actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victim of access to the educational opportunities or benefits provided by the school"). As set forth in detail in SJU's Moving MOL, this one Anonymous Tweet was not severe and pervasive as a matter of law, and the Opposition fails to present any argument or evidence to the contrary.

---

[2] Plaintiff does not dispute that SJU had no control over the alleged off-campus and online harassing conduct (*Id.*, at 21-22).

[3] The first page of the body of the Opposition bears the page number 6. Plaintiff's discussion of the applicable standard of review appears on the eleventh page of the Opposition (not including the cover page, table of contents and table of authorities). For ease of reference, SJU refers to the page numbers as they appear in the footer of the Opposition.

In a similar vein, the Opposition repeatedly refers to Title VII of the Civil Rights Act of 1964 ("Title VII"). *See*, *e.g.,* Opposition, Point I, at 17 (the SAC "states a claim for sexual discrimination under Title VII"), and *id.*, Point V, at 21 (SJU "failed to correct a hostile working environment in violation of Title VII"). Title VII concerns relations between employers and employees rather than educational institutions and students, and none of the causes of action in the SAC are asserted under Title VII.

Next, Plaintiff's deliberate indifference claim is contradicted by correspondence that Plaintiff *himself* attached to the SAC, which indicates that SJU looked into the matter and advised Plaintiff that the anonymous tweeter could not be identified. SAC, Ex. 10; *see also* Hurwit Decl. Ex. H. On this point, Plaintiff's mere disagreement with SJU's conclusion – a disagreement predicated upon rank speculation that "Doe was the only logical author of the language of the tweet" (Opposition, at 14) – is insufficient to state a cause of action under Title IX.

The Opposition also fails to address the point in the Moving MOL that Plaintiff failed to plausibly plead that the Anonymous Tweet was motivated by Plaintiff's gender. To be sure, Plaintiff has not pointed to any factual allegation in the SAC alleging that the Anonymous Tweet was motivated by gender or sex-based stereotypes, as opposed to an alleged criminal sex act and the fact that Plaintiff was suspended for "only … half a semester." *See Nungesser v. Columbia Univ.*, 244 F. Supp. 3d 345, 367 (S.D.N.Y. 2017). In this regard, Plaintiff entirely fails to address the cases most directly applicable to his claims, *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353 (S.D.N.Y. 2016) (discussed in Moving MOL, at 17, 18) and *Nungesser v. Columbia Univ.*, 244 F. Supp. 3d 345 (discussed in Moving MOL, at 18, 21, 27-28, 30), in which the court dismissed a male student's complaint that he was wrongly identified as a rapist.

4

Plaintiff finally pins his hope on inapposite case law, including by citing to *Menaker v. Hofstra University*, 935 F.3d 20 (2d Cir. 2019), which cannot save his claims from dismissal. In *Menaker*, Hofstra University terminated the employment of a male tennis coach after a female student-athlete accused him of sexual misconduct. The coach denied the allegations and pointed to exculpatory evidence, but was fired. He sued, claiming that the university's investigation process was highly irregular and negligent, and the product of public pressure to act against males accused of sexual harassment. In reversing the lower court's dismissal of the action, the Second Circuit held that where a university "(1) takes an adverse action against a student or employee, (2) in response to allegations of sexual misconduct, (3) following a *clearly irregular investigative or adjudicative process*, (4) amid criticism for reacting inadequately to allegations of sexual misconduct by members of one sex, these circumstances provide the requisite support for a *prima facie* case of sex discrimination." 935 F.3d, at 33 (emphasis added). The instant case is readily distinguished: SJU's alleged "indifference" was not in response to allegations of sexual misconduct, but rather to the Anonymous Tweet; and, as set forth in the Moving MOL (and unrebutted in the Opposition), there are no plausible allegations of a *clearly irregular investigative or adjudicative process*. *See* Moving MOL, at 14, 24-26. Plaintiff's reference to *Menaker* is merely an attempt to distract from cases like *Nungesser* and *Doe v. Washington University*, which are squarely on all-fours with this action – and which compel dismissal of the SAC.

### C. Policy 703 Does Not Provide Plaintiff With A Cause of Action

The Opposition cites only Policy 703 as the "contract" allegedly violated by SJU. Opposition, at 22. As explained in the Moving MOL, Policy 703 is a non-actionable statement of general policy that cannot support a breach of contract claim. *Doe v. Syracuse Univ.*, 341 F. Supp. 3d 125, 140 (N.D.N.Y. 2018). In any event, Plaintiff is required to plead precisely how the alleged contract was violated, but he fails to do so. In the Opposition, Plaintiff claims that SJU did not

5

"notify Doe of Roe's complaint in writing, did not schedule a meeting with Doe, or … correct[] the falsity of the tweet[.]" *See* Opposition, at 22. Policy 703 provides no such contractual promise to do any of these things, however. To the contrary, Policy 703 provides that SJU will conduct a preliminary investigation of allegations – which it did – and only if there is a reasonable basis for determining that a violation occurred will the Title IX Coordinator take further action, including by interacting with the alleged respondent. SJU had no reasonable basis to proceed against Doe, because it could not identify the author of the Anonymous Tweet. What's more, SJU's procedure to contact and meet with an alleged respondent does not afford the complaining party (here, Plaintiff) any contractual right or benefit. It is, at most, a statement of process intended to provide the person accused of harassment with the opportunity to respond to the allegations against him or her. Accordingly, Plaintiff's attempts to plead a claim sounding in breach of contract fail.

### D.  The Court May Consider Documents Submitted by SJU

Among the authorities cited in SJU's Moving MOL and conspicuously ignored in Plaintiff's Opposition is *Tulczynska v. Queens Hospital Center*, which applied the rule that, in circumstances where "the plaintiff knows about a document, intentionally chooses to disregard it, and avoids mentioning it in the pleading, but relies on the document's information in framing their pleading, a defendant moving to dismiss may still rely on that document in a motion to dismiss." No. 17 Civ. 1669, 2019 WL 6330473, at *5 (S.D.N.Y. Feb. 12, 2019). This is because "[t]here is no principled reason for a district court to subject the defendant to the additional expense and burden of considering the same matter later on a motion for summary judgment." *Id*.

The Opposition does not specifically identify any document of which Plaintiff was unaware (indeed, even Exhibit F – which Plaintiff claims not to have seen – is referenced in SJU's University Conduct Appeals Board's January 8, 2019 Final Decision, attached as Exhibit 5 to the SAC). Rather, Plaintiff once again attempts to create smoke where there is no fire by writing that

6

Roe did not "receive" copies of the investigators' reports. What Plaintiff does not write – because he cannot do so truthfully – is that he never reviewed those reports, or that he was unaware that they were part of SJU's investigative file. To the contrary, Plaintiff specifically acknowledged that he had received and reviewed one of the documents included in support of SJU's motion. *See* Hurwit Decl., Ex. D (August 22, 2018 correspondence from Plaintiff to SJU noting in relevant part, "Hey Jackie[,] so I read and signed [the Investigating Officers'] Report").

*Doe v. Sarah Lawrence College*, described in the Opposition as a "remarkably similar question" to the one presented here (Opposition, at 20), is inapposite. There, the plaintiff attached no documents to her complaint, and made only "general references to some of the exhibits" attached by the defendant college to its pre-answer motion to dismiss the complaint. No. 19-CV-10028, 2020 WL 1819914, at *6 (S.D.N.Y. April 10, 2020). Here, in sharp contrast, Plaintiff attached seventeen (17) exhibits to the SAC, running some 120 pages in length. In each of his four causes of action against SJU, Plaintiff attacks virtually every aspect of the investigatory and adjudicative processes which resulted in his expulsion from the school. In support of his desperate attempt to plausibly plead a cause of action where none exists, Plaintiff cherry-picks documents to weave a false and misleading narrative that is directly at odds with the documented process that SJU followed in its investigation into and adjudication of the claims against him. This is precisely the circumstance in which courts in this circuit permit a defendant to attach documents in support of a pre-answer motion to dismiss. The exhibits attached by SJU are integral to the pleading, Plaintiff had actual notice of the evidence, and the SAC heavily relies upon them. orated by reference in the Complaint, and/or were in Plaintiff's possession or knowledge and relied on in drafting the Complaint. Defs.' Mem. of Law in Support at 10. However, the Court disagrees. While such exhibits may be helpful at trial on the merits of Plaintiff's allegations, it cannot be said, at this

7

juncture, that such exhibits are integral to the complaint.

### E. If Any Claim Survives Dismissal, Plaintiff Should Be Compelled to Proceed Under His Own Name

As enumerated in the Moving MOL, courts in the Second Circuit consider a non-exhaustive list of ten factors when determining whether to allow a party to pursue litigation pseudonymously. *See* Moving MOL, at 32-33. Because the Opposition fundamentally fails to demonstrate why the balancing of these considerations tips in favor of maintaining Plaintiff's anonymity, the Court should compel Plaintiff to publicly identify himself if any of his claims survive SJU's motion.

"[W]hen determining whether a plaintiff may be allowed to maintain an action under a pseudonym, the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008). In the Moving MOL, SJU sets forth a detailed enumeration of each of the ten factors to be considered in determining whether to allow Plaintiff to proceed under a pseudonym, thereby demonstrating how legal precedent compels Plaintiff to identify himself in public filings in order to proceed with this action. (Moving MOL, at 33-35.) That recitation remains largely unrebutted. In the Opposition, Plaintiff contends that only *two* of the Second Circuit's non-exhaustive list of ten factors favor his application to remain anonymous, while conspicuously ignoring the remaining eight factors. *See* Opposition, at 23; *see also, A.B. v. Hofstra Univ.*, No. 17 Civ. 5562 (DRH), 2018 WL 1935986, at *1 (E.D.N.Y. Apr. 24, 2018) (citing *Sealed Plaintiff*, 537 F.3d, at 189). Plaintiff has fundamentally failed to demonstrate that his private interests warrant the "extraordinary relief" of being allowed to proceed pseudonymously in this action.[4] *Doe v. Greiner*, 662 F. Supp. 2d 355, 360 (S.D.N.Y. 2009) (internal citations omitted).

---

[4] Additionally, documents attached as exhibits to the SAC contain Plaintiff's full name. Because Plaintiff has already disclosed his identity with the public filing of the SAC – however inadvertently – he has no basis upon which to proceed under a pseudonym at this stage.

8

On that basis, the Court should grant that part of SJU's motion seeking to compel Plaintiff to identify himself in the public record in connection with this action.

### III.   CONCLUSION

For the foregoing reasons, the defendant St. John's University respectfully submits that Plaintiff's Second Amended Complaint must be dismissed in its entirety for failure to state a cause of action.

Dated:   New York, New York
         August 14, 2020

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: ___/s/_____
    Lyle S. Zuckerman
    Michael J. Goettig
    Kaitlyn E. Fallon

1251 Avenue of the Americas
21st Floor
New York, New York 10020
+1 (212) 603-6498

*Attorneys for Defendant
St. John's University*