UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Richard Roe, | 19-cv-04694 |
| Plaintiff, | PKC-RER |
| -against- | |
| St. John's University and Jane Doe, | |
| Defendants. | |

**DEFENDANT JANE DOE'S MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT ST. JOHN'S UNIVERSITY'S MOTION TO DISMISS THE AMENDED
COMPLAINT TO ADDRESS THE ISSUES OF PLAINTIFF'S USE OF A PSEUDONYM
IN THIS CASE AND LACK OF JURISDICTION SHOULD ST. JOHN'S UNIVERSITY'S
MOTION TO DISMISS BE GRANTED**

**BAKER HOSTETLER LLP**

Melissa M. Carvalho, Esq.
Chardaie C. Charlemagne, Esq.
45 Rockefeller Plaza
New York, New York 10111
Tel: 212.589.4200
Fax: 212.589.4201

*Attorneys for Defendant Jane Doe*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................... 1

SUMMARY OF THE FACTS ...................................................................................... 2

ARGUMENT ............................................................................................................... 4

I.   PLAINTIFF SHOULD AMEND THE CAPTION AND PROCEED UNDER HIS LEGAL

NAME ......................................................................................................................... 4

A.   Plaintiff's use of pseudonym violates Federal Rule of Civil Procedure 10(a) ....... 4

B.   Plaintiff's use of pseudonym violates Second Circuit case law ............................ 5

II.   IF SJU'S MOTION TO DISMISS IS GRANTED, PLAINTIFF CANNOT PROCEED

AGAINST DEFENDANT DOE BECAUSE THERE IS NO SUPPLEMENTAL

JURISDICTION OVER DOE ..................................................................................... 14

CONCLUSION ....................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.B. v. C.D.*,
  No. 2:17-cv-5840 (DRH) (AYS), 2018 WL 1935999 (E.D.N.Y. Apr. 24,
  2018) ...........................................................................................................7, 9, 11, 13

*A.B. v. Hofstra Univ.*,
  No. 2:17-cv-5562 (DRH) (AYS), 2018 WL 1935986 (E.D.N.Y. Apr. 24,
  2018) .................................................................................................................8, 12

*Doe v. Delta Airlines, Inc.*,
  310 F.R.D. 222 (S.D.N.Y. 2015) ........................................................................10

*Doe v. New York*,
  2016 U.S. Dist. LEXIS 1634 (S.D.N.Y. Feb. 4, 2016)..........................................8

*Doe v. Skyline Automobiles, Inc.*,
  375 F. Supp. 3d 401 (S.D.N.Y. 2019)............................................................ *passim*

*Doe v. Solera Capital LLC*,
  No. 18 CIV. 1769 (ER), 2019 WL 1437520 (S.D.N.Y. Mar. 31, 2019),
  *reconsideration denied*, 2019 WL 5485210 (S.D.N.Y. Oct. 25, 2019)..................13

*Doe v. Townes*,
  No. 19-cv-8034 (ALC) (OTW), 2020 WL 2395159 (S.D.N.Y. May 12, 2020)................7, 13

*Doe v. United States*,
  2017 U.S. Dist. LEXIS 83745, 2017 WL 2389701 (S.D.N.Y. June 1, 2017) ........................13

*Doe v. Vassar College*,
  No. 19-CV-09601 (NSR), 2019 WL 5963482 (S.D.N.Y. Nov. 13, 2019) ..............................7

*Doe v. Zinsou*,
  No. 19 Civ. 7025 (ER), 2019 WL 3564582 (S.D.N.Y. Aug. 6, 2019) ...................................10

*Lawson v. Rubin*,
  No. 17-cv-6404 (BMC) (SMG), 2019 WL 5291205 (E.D.N.Y. Oct. 17, 2019)......................7

*N. Jersey Media Grp. Inc. v. Doe Nos. 1-5*,
  No. 12 Civ. 6152 (VM), 2012 WL 5899331 (S.D.N.Y. Nov. 26, 2012) ...............................12

*Olle v. Columbia Univ.*,
  332 F.Supp.2d 599 (S.D.N.Y. 2004).......................................................................14

*Palazo v. Corio*,
    232 F.3d 38 (2d Cir. 2000)................................................................................15

*Parker v. Della Rocco*,
    252 F.3d 663 (2d Cir. 2001)..............................................................................16

*Sealed Plaintiff v. Sealed Defendant #1*,
    537 F.3d 185 (2d Cir. 2008)........................................................................ *passim*

*United States v. Pilcher*,
    950 F.3d 39 (2nd Cir. 2020)................................................................................5

*United States v. UCB, Inc.*,
    No. 14-CV-2218 (TPG), 2017 WL 838198 (S.D.N.Y. Mar. 3, 2017)....................................8

*Valencia v. Lee*,
    316 F.3d 299 (2d Cir. 2003)..............................................................................16

*Wis. Dep't of Corrections v. Schacht*,
    524 U.S. 381 (1998)......................................................................................15

**Statutes**

28 U.S.C. § 1331.............................................................................................14

28 U.S.C. § 1343.............................................................................................14

28 U.S.C. § 1332..........................................................................................14, 15

28 U.S.C. § 1367.............................................................................................14

**Rules**

Fed. R. Civ. P. 12(b)(1)......................................................................................14

Fed. R. Civ. P. 10(a).........................................................................................4

## PRELIMINARY STATEMENT

After sexually assaulting Doe, engaging in a campaign of intimidation and harassment against her, and plunging her into the darkest depths of emotional and mental anguish, the Plaintiff sued Doe in this lawsuit *anonymously* so he could continue to hide from the truth—his disturbingly identical patterns of sexual assault against women and the consequences that appropriately have followed his own actions.

Plaintiff has been accused by multiple female students at St. John's University of sexual assaults.  At least two of these instances have been reported to the University directly—one of which was brought to the attention of the University by Defendant Doe—and have resulted in extensive investigations and ultimately, Plaintiff's suspension from the University.  Plaintiff now seeks to improperly hide under the cloak of anonymity while he sues the University and Defendant Doe (his victim!).

Doe was sexually assaulted by the Plaintiff in her dorm room while participating in the University's study abroad program.  Plaintiff entered her room while she was sleeping, and she awoke to him on top of her digitally penetrating her vagina.  After Doe reported this crime to the University and authorities, the Plaintiff harassed and intimidated Doe, incited his friends and fellow SJU students to taunt Doe, took every opportunity to label Doe a liar and a slut and then *sued Doe* for defamation in this action.

Plaintiff *chose* to initiate this action against the University and *his victim* in this Court. Plaintiff should proceed under his full legal name and the caption of this action should be amended accordingly.  Additionally, should St. John's University's motion to dismiss be granted, Plaintiff's claims against Doe should be dismissed for lack of jurisdiction.

## SUMMARY OF THE FACTS

Plaintiff and Doe were both in Paris, France in April 2018 as part of St. John's University's study abroad program.  (Second Amended Complaint (Dkt. No. 23) (hereinafter "Amended Compl.") at ¶13; Jane Doe's Answer and Counterclaims (Dkt. No. 27) (hereinafter "Counterclaims") at ¶ 173-175).  On April 12, 2018, Plaintiff and Doe had both gone out to the same club in Paris, Le Duplex, with different groups of friends. (Amended Compl. at ¶13; Counterclaims at ¶177).  Doe arrived at Le Duplex first and sometime later Plaintiff and his friends arrived.  (Counterclaims at ¶ 179).  While at the club, Doe was dancing with her friends when Plaintiff pulled Doe over to dance with him and then he kissed her.  (*Id*. at ¶ 180).  Doe immediately signaled her discomfort to her friend who came over and pulled Doe away from Plaintiff and they rushed to the bathroom together to get away from Plaintiff.  (*Id*. at ¶ 182).

Doe and her friend decided to leave Le Duplex.  (*Id*. at ¶ 183).  Doe and her friend returned to the campus and went straight to Doe's room.  (*Id*. at ¶ 188).  Doe's friend left the room and Doe fell asleep on the bottom bunkbed.  (*Id*.)  Doe's roommate was also in the room and was on her computer on the top bed bunk.  (*Id*.)

At some point after Doe fell asleep, Plaintiff entered Doe's dorm room while Doe was still sleeping.  (*Id*. at ¶ 189).  Doe awoke to Plaintiff on top of her in bed.  (*Id*. at ¶ 191).  Doe's pants had been pulled down and Plaintiff was digitally penetrating her vagina.  (*Id*.)  Doe was frozen in shock and initially could not speak or scream.  (*Id*. at ¶ 193).  Doe managed to turn herself over and told Plaintiff to stop.  (*Id.* at ¶ 194).  Doe then felt Plaintiff begin to masturbate against her back.  (*Id*. at ¶ 195).  Doe again told Plaintiff to stop and to leave her room. (*Id*. at ¶ 196).  Plaintiff then got up and left Doe's room.  (*Id*. at ¶ 196).

As soon as Plaintiff left, Doe got out of bed and showed her roommate her disheveled

clothing and dropped pants and told her roommate that Plaintiff had just sexually assaulted her while she was asleep and that she had just kicked him out.  (*Id*. at ¶ 197).   Doe and her roommate immediately alerted St. John's University to Plaintiff's entrance into her room while she was asleep and his sexual assault upon her.  (I*d*. at ¶ 198).  Doe also reported the incident to the Paris Campus security guard, the Residence Assistant, the Residence Director, the Paris Campus administrators, and the Paris police in the 14th Arrondisement Mall. (*Id*. at ¶199 & ¶ 206).  Plaintiff was arrested and held by the Paris police as a result of Doe's report of the sexual assault.  (*Id*. at ¶ 207).  The Paris police ultimately dismissed the case due to the contradictory stories that they received from Doe and Plaintiff.  (*Id*. at ¶ 209).

In response to Doe's repeated complaints, St. John's put a "no-speaking," no-contact order in place between Plaintiff and Doe on April 13, 2018.  (*Id*. at ¶ 201).  On April 16, 2018, an additional restriction was put into the no-contact order declaring that neither Plaintiff nor Doe were permitted on each other's dorm floors on the Paris Campus.  (*Id*. at ¶ 203).  Plaintiff was eventually removed from the Paris Campus by St. John's University but permitted to continue studying abroad.  (*Id*. at ¶ 210).

Plaintiff and Doe returned to New York at the conclusion of the study abroad program on May 11, 2018.  (*Id*. at ¶ 216).  St. John's University held a disciplinary hearing on October 3, 2018 to address the sexual assault.  (*Id*. at ¶ 217).  On October 16, 2018, Doe was notified that Plaintiff was suspended from St. John's University.  (*Id*. at ¶ 218).  Doe was notified that Plaintiff had appealed the University's suspension and that the University had denied Plaintiff's appeal.  (*Id*. at ¶¶ 219 & 220).

On January 4, 2019, a tweet was published from an unknown Twitter account, St. John's Memes @vincentianmemes, regarding Roe with the hashtag "#survivingSJU."  (*Id.* at ¶ 221).

Doe "liked" the @vincentianmemes tweet.  (Amended Compl. at ¶ 40; Counterclaims at ¶ 222).

On January 4, 2019, Doe posted a tweet from her own Twitter account: "I should have been

writing essays but instead I was writing my final statement #survivingsju."  (Amended Compl. at

¶ 40; Counterclaims at ¶ 223).  This tweet is just one example of the advocacy done by Doe

against sexual assault.  (Counterclaims at ¶ 224).

On January 5, 2019, the day after the tweets, another complaint was lodged against Roe

by a second female victim ("Mary Smith"), who similarly accused Roe of sexual misconduct.

(Amended Compl. at ¶ 46).  Smith reported that she fell asleep on the living room couch and

awoke to Roe lying behind her with his hand inside her pants, penetrating her vagina with his

fingers.  (*Id*. at ¶¶ 96-108).  St. John's investigated this incident as well.  (*Id*. at ¶ 109).

## ARGUMENT

Plaintiff has improperly pursued this action under a pseudonym without court permission

and in violation of the Federal Rules of Civil Procedure and Second Circuit case law.  Should the

Court grant all other aspects of St. John's motion to dismiss, Plaintiff's remaining claims against

Doe should also be dismissed for lack of jurisdiction.

## I.      PLAINTIFF SHOULD AMEND THE CAPTION AND PROCEED UNDER HIS LEGAL NAME

Plaintiff should proceed under his legal name in this action.

### A.  Plaintiff's use of pseudonym violates Federal Rule of Civil Procedure 10(a)

Federal Rule of Civil Procedure 10(a) requires that "[t]he title of [a] complaint must name all

the parties."  "This requirement, though seemingly pedestrian, serves the vital purpose of

facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly."

*Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 188–89 (2d Cir. 2008).  Identifying

parties in a proceeding "is an important dimension of publicness, as people have a right to know

who is using their courts." *United States v. Pilcher*, 950 F.3d 39, 42 (2d Cir. 2020) (internal citations omitted).

**B. Plaintiff's use of pseudonym violates Second Circuit case law**

The Second Circuit, in *Sealed Plaintiff*, 537 F.3d 185, set forth ten "non-exhaustive" factors that courts should consider when a party requests to proceed in the action by using a pseudonym.[1]  In a recent Second Circuit decision from February 2020, the court explained that these factors are designed to "weigh the plaintiff's interest in anonymity against both the public interest in disclosure and any prejudice to the defendant." *Pilcher*, 950 F.3d at 42 (internal citations omitted).  These factors are:

1. Whether the litigation involves matters that are highly sensitive and of a personal nature;

2. Whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties;

3. Whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity;

4. Whether the plaintiff is particularly vulnerable to the possible harms of disclosure particularly in light of his age;

5. Whether the suit is challenging the actions of the government or that of private parties;

6. Whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of the prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;

7. Whether the plaintiff's identity has thus far been kept confidential;

8. Whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity;

9. Whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and

---

[1] Plaintiff in this case—to our knowledge—has never requested permission from this Court to proceed in this action under a pseudonym.

10. Whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Sealed Plaintiff*, 537 F.3d at 189-190 (internal citations omitted) (finding that plaintiff – despite being convicted of child pornography – could not proceed under a pseudonym).

"[A] district court is not required to list each of the factors or use any particular formulation as long as . . . the court balance[s] the interests at stake in reaching its conclusion." *Id.* at 191, n.4.  Nevertheless, in this case, all factors weigh against Roe's anonymity.

**<u>Factor 1</u>: Whether the litigation involves matters that are highly sensitive and of a personal nature**

The facts here relate directly to Plaintiff's sexual assault of Doe while both were St. John's University students during their participation in the St. John's study abroad program. Plaintiff Roe **chose** to hire legal counsel.  Plaintiff Roe **chose** to bring this lawsuit against St. John's (his former University) and Doe (his victim).  Plaintiff Roe **chose** to bring his claims to the judicial system for adjudication.  Plaintiff Roe **chose** to make sensitive allegations about his sexual encounters with Doe and Mary Smith public through the judicial system.  Doe had no choice in any of this.  She did not choose to re-live this nightmare.  She did not choose to be sued by her attacker.  She did not choose to be dragged into the courthouse. Plaintiff Roe must not be allowed to now hide behind the "personal nature" of his very public allegations that he **chose** to assert against Doe and others.

Indeed, Doe's need for confidentiality—as Plaintiff's **victim**—can be clearly contrasted with Plaintiff's.  Although "allegations of sexual assault, by themselves, are not sufficient to entitle a plaintiff to proceed under a pseudonym," *see Doe v. Skyline Automobiles, Inc.*, 375 F. Supp. 3d 401, 405 (S.D.N.Y. 2019), "courts have recognized the important public interest in

protecting the identities of sexual assault **victims** to ensure that other **victims** would not be deterred from reporting similar crimes." *Doe v. Vassar College*, No. 19-CV-09601 (NSR), 2019 WL 5963482, *2 (S.D.N.Y. Nov. 13, 2019) (emphasis added); *see Lawson v. Rubin*, No. 17-cv-6404 (BMC) (SMG), 2019 WL 5291205 (E.D.N.Y. Oct. 17, 2019) (Plaintiffs "allege that Rubin raped and beat them, leading to injuries that required cosmetic and dental reconstructive surgery. These allegations are highly sensitive and of an extremely personal nature, and the public has an interest in permitting victims of sexual assault to proceed pseudonymously, both to protect victims' privacy and to avoid deterring other victims from coming forward.").

**Factor 2:** **Whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties**

Disclosure of a plaintiff's identity is disfavored where the identification poses a risk of retaliatory physical or mental harm. "The risks must be more than speculative claims of physical or mental harms" and "[a] risk of retaliation may be found where there is a history of substantiated prior action directed at plaintiff(s) from defendant(s)." *Doe v. Townes*, No. 19-cv-8034 (ALC) (OTW), 2020 WL 2395159, at *4 (S.D.N.Y. May 12, 2020) (citations omitted). A defendant's prior knowledge of a plaintiff's identity weighs against a finding of retaliatory physical or mental harm and "[e]vidence of embarrassment, social stigmatization, and economic harm are insufficient to proceed anonymously." *Id.* Where a plaintiff has alleged that he has already suffered from alleged defamation, further identification of that plaintiff in a legal action is unlikely to cause mental harm that has not already been caused by events that preceded the action. *See A.B. v. C.D.*, No. 2:17-cv-5840 (DRH) (AYS), 2018 WL 1935999, at *2 (E.D.N.Y. Apr. 24, 2018) ("Plaintiff states that he has already suffered from the alleged defamation by losing his livelihood. Therefore, identifying him here is unlikely to cause mental harm that has

not already been caused by the events that preceded this action."). "Moreover, some courts have suggested that a plaintiff should submit medical documentation to support the alleged harm they will suffer if they were not permitted to proceed anonymously." *Skyline Automobiles Inc.*, 375 F. Supp. 3d at 406 (citing *Doe v. New York*, 2016 U.S. Dist. LEXIS 1634, at *7 (S.D.N.Y. Feb. 4, 2016)).

Roe's identity is already known by the defendants in this matter and Roe cannot demonstrate any risks of retaliatory physical or mental harm. There is no history of retaliation from either defendant against Roe and Roe has already alleged that he has suffered from alleged defamation making further identification of Roe unlikely to cause him mental harm. Any harm Roe may attempt to claim would fall under the categories of embarrassment, social stigmatization, and economic harm which are insufficient to proceed under a pseudonym.

**Factor 3: Whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity**

"The third factor asks whether identification presents other harms and the likely severity of those harms, including whether 'the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity.'" *A.B. v. Hofstra Univ.*, No. 2:17-cv-5562 (DRH) (AYS), 2018 WL 1935986, at *2 (E.D.N.Y. Apr. 24, 2018) (citing *Sealed Plaintiff*, 537 F.3d at 187). This factor only supports the use of a pseudonym where the need for anonymity is based on something more than "attenuated and speculative risks of harm." *United States v. UCB, Inc.*, No. 14-CV-2218 (TPG), 2017 WL 838198, at *4 (S.D.N.Y. Mar. 3, 2017) ("The Court finds, as an initial matter, that Nash's articulated need for anonymity is based on attenuated and speculative risks of harm"). Here, this factor does not weigh in Roe's favor. For the reasons previously

discussed in the second factor above, there is little risk of other harms or of incurring the injury litigated against.

**Factor 4: Whether the plaintiff is particularly vulnerable to the possible harms of disclosure particularly in light of his age**

The fourth factor also weighs against Plaintiff as he is not a member of a population that is particularly vulnerable to the possible harms of disclosure, such as young children. *See A.B. v. C.D.*, 2018 WL 1935999, at *3. Here, Plaintiff Roe is an adult that has chosen to pursue this action against his former university and sexual assault victim. The fourth factor weighs against proceeding anonymously.

**Factor 5: Whether the suit is challenging the actions of the government or that of private parties**

This suit is brought by a private party (Plaintiff Roe) against two private parties (Defendants St. John's University and Doe). No governmental actions are being challenged. Therefore, the fifth factor weighs against the Plaintiff. *See Sealed Plaintiff*, 537 F.3d at 187 (anonymity not warranted in sexual discrimination and harassment suit against private parties where no privacy interest beyond personal embarrassment identified) (internal citations omitted). *See also A.B. v. C.D.*, 2018 WL 1935999, at * 3.

**Factor 6: Whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of the prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court**

When determining whether a plaintiff may proceed anonymously, the Second Circuit has instructed courts to consider "whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated." *Sealed Plaintiff*, 537 F.3d at 190. "Fundamental principles of fairness suggest that when a case involves

9

potentially damaging allegations, plaintiffs who publicly accuse defendants of misconduct in civil suits should sue under their real names." *Doe v. Zinsou*, No. 19 Civ. 7025 (ER), 2019 WL 3564582, at *8 (S.D.N.Y. Aug. 6, 2019) (denying Plaintiff's request to proceed anonymously and holding "there is, at minimum, slight prejudice to Defendants in granting Plaintiff continued anonymity.")

Doe was the victim of sexual assault at the hands of Roe.  Roe then brought this suit—anonymously—against Doe for defamation.  Roe's anonymity will hamper Doe's ability to defend against Roe's defamation allegation, particularly with respect to evidencing her truth defense and challenging Roe's credibility.  *See Skyline Automobiles, Inc.*, 375 F.Supp.3d at 407 ("Allowing Plaintiff to proceed anonymously would disadvantage Defendants at all stages of litigation, including settlement, discovery, and trial.")

In *Doe v. Skyline Automobiles, Inc.*, the court held that "Plaintiff's anonymity would make it more difficult to obtain witnesses and witness testimony, Defendants would have less leverage in settlement negotiations, and Defendants would not be able to fully and adequately cross-examine the Plaintiff."  375 F.Supp.3d at 407.  The situation is similar here.  If Roe is permitted to proceed anonymously, it will be more difficult to proceed with the litigation, from discovery, to potential settlement negotiations, and into trial and cross-examining Plaintiff. Indeed, "allowing [Roe] to remain anonymous at trial would shield [him] from accountability before the jury for making meritless claims."  *Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222, 225 (S.D.N.Y. 2015) (denying Plaintiff's request to proceed pseudonymously at trial because she put her credibility at issue).   Thus, the sixth factor weighs against Plaintiff's confidentiality in this action.

**Factor 7: Whether the plaintiff's identity has thus far been kept confidential**

Plaintiff's identify has never been confidential.  As soon as Doe got Plaintiff Roe out of her dorm room after he sexually assaulted her, Doe told her roommate that Plaintiff had sexually assaulted her while she was asleep and that she had just kicked him out.  (*See* Counterclaims at ¶ 197).  Doe immediately alerted St. John's University and spoke with the Paris Campus security guard, the Residence Assistant, the Residence Director, and the Paris Campus administrators.  (*See id*. at ¶ 198-199).  Doe also reported the sexual assault to the Paris police and Plaintiff was arrested.  (*See id*. at ¶ 206-207).  All of the students participating in the Study Abroad Program were aware of Doe's allegations against Roe.  In fact, Roe went so far as to label Doe a "liar" and a "slut" and initiated and continued a campaign of intimidation and harassment against Doe.  (*See id*. at ¶ 213).  Clearly, Roe, himself, was out there talking to many people.  Doe certainly was and she identified Roe as her assailant and reported the crime and spoke out about Roe.  (*See id*. at ¶¶ 224 – 26).

When the students returned to the St. John's Campus in Queens, they participated in the University's investigation process as well as a hearing.  St. John's has represented in this action that Roe's identity was made known to several school administrators and members of conduct boards as well as students who were interviewed as witnesses.  **Indeed, the only time Plaintiff's identity has been kept confidential is in this lawsuit**.  The seventh factor weighs strongly against Plaintiff's confidentiality in this action.  *See A.B. v. C.D*., 2018 WL 1935999, at *3 (finding that Plaintiff's identity had not been kept confidential thus far and therefore, the seventh factor weighed strongly against Plaintiff).

11

**Factor 8**: **Whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity**

Courts also consider "whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity." *Sealed Plaintiff*, 537 F.3d at 190. If the issues presented are "purely legal in nature," generally "there is an atypically weak public interest in knowing the litigants' identities." *Id.* However, "[w]here the litigation involves, not abstract challenges to public policies, but rather . . . particular actions and incidents, open proceedings nevertheless benefit the public as well as the parties and also serve the judicial interest in accurate fact-finding and fair adjudication." *Skyline Automobiles Inc.*, 375 F. Supp. 3d at 408 (quoting *N. Jersey Media Grp. Inc. v. Doe Nos. 1-5*, No. 12 Civ. 6152 (VM) (KNF), 2012 WL 5899331, at *8 (S.D.N.Y. Nov. 26, 2012)). Because this action is not purely legal in nature and involves particular incidents of sexual assault, a university's response to such sexual assault allegations, and alleged defamation by Doe (the sexual assault victim), the eighth factor weighs against use of a pseudonym. "This factor relates to the 'general presumption that parties' identities are public information,'" *A.B. v. Hofstra Univ.*, 2018 WL 1935986, at *3 (citations omitted), and Roe cannot overcome this general presumption.

**Factor 9**: **Whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities**

The Plaintiff's allegations do not present purely legal issues for adjudication. Quite the contrary, specific factual allegations have been made about the University's handling of the investigations, hearings, findings and conclusions into Plaintiff's alleged sexual misconduct against both Defendant Doe and another female student, referred to in the Complaint as "Mary Smith." Plaintiff Roe also asserts a claim of defamation against Defendant Doe. The ninth

factor also weighs against Plaintiff because the issues presented here are not purely legal in nature. *A.B. v. C.D.*, 2018 WL 1935999, at *3; *Doe v. Townes*, 2020 WL 2395159, at *6.

**<u>Factor 10</u>: Whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff**

Alternative mechanisms for protecting the confidentiality of a plaintiff include the redaction of documents, sealing, protective orders, and a confidentiality agreement. *See Skyline Automobiles Inc.*, 375 F. Supp. 3d at 408 (noting that "[t]here are multiple other ways a plaintiff's interests can be protected, including the redaction of documents and sealing.  Further, Plaintiff could seek a protective order, or the parties could enter a confidentiality agreement" (citations omitted)).  "If a viable alternative to complete anonymity exists, this factor weighs against a finding for anonymity." *Doe v. Solera Capital LLC*, No. 18 CIV. 1769 (ER), 2019 WL 1437520, at *8 (S.D.N.Y. Mar. 31, 2019), *reconsideration denied*, 2019 WL 5485210 (S.D.N.Y. Oct. 25, 2019) (citing *Doe v. United States*, 2017 U.S. Dist. LEXIS 83745, at *5, 2017 WL 2389701 (S.D.N.Y. June 1, 2017)).

Roe's identity has not been kept confidential outside of this lawsuit.  Doe immediately alerted St. John's University, the Paris Campus security guard, the Residence Assistant, the Residence Director, the Paris Campus administrators, and the Paris police immediately after Roe sexually assaulted her. (*See* Counterclaim*s* at ¶198-199 & ¶ 206-207).  All of the students participating in the Study Abroad Program were aware of Doe's allegations against Roe.  When the students returned to the St. John's Campus in Queens, Roe's identity was made known to several school administrators with a role in the investigation and conduct hearing, members of conduct boards, and students who were interviewed as witnesses.  **The only time Plaintiff's**

**identity has been kept confidential is in this lawsuit** and there are other means available to seal and protect any confidential information from public disclosure.

All factors weigh against Roe proceeding anonymously in this action.

**II.**     **IF SJU'S MOTION TO DISMISS IS GRANTED, PLAINTIFF CANNOT PROCEED AGAINST DEFENDANT DOE BECAUSE THERE IS NO SUPPLEMENTAL JURISDICTION OVER DOE**

An action should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) if the plaintiff fails to satisfy a jurisdictional requirement.  If St. John's University is dismissed from this action, this Court will lack subject matter jurisdiction over the remaining defamation claim against Defendant Doe because the claim does not implicate a federal question and there is no diversity between the parties pursuant to 28 U.S.C. § 1332.

Under 28 U.S.C. § 1367, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action."  A District Court may, at its discretion, exercise supplemental jurisdiction over state law claims even where it has dismissed all claims over which it had original jurisdiction, although it cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction.  *Olle v. Columbia Univ.*, 332 F.Supp.2d 599, 620 (S.D.N.Y. 2004).

Plaintiff brought claims under Title IX of the Education Amendments of the 1972 (Title IX) against Defendant St. John's arise under federal law, and thus, fulfill the requirements for federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.  (*See* Amend. Compl. at ¶ 5).

Plaintiff alleges this Court has supplemental jurisdiction over his claim against Defendant Doe pursuant to 28 U.S.C. §1367.  (*See* Amend. Compl. at ¶ 6).  The Court's supplemental

14

jurisdiction over Doe is directly tied to the Title IX claims against St. John's.  St. John's has moved to dismiss all claims, and if the Title IX claims against St. John's are dismissed, this court will no longer have jurisdiction over the claim against Doe.

Absent federal question jurisdiction or supplemental jurisdiction, the federal district courts have subject matter jurisdiction over claims where there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332.  A litigant must satisfy both prongs in order to invoke diversity jurisdiction.

Diversity Jurisdiction requires complete diversity: no plaintiff and defendant may be citizens of the same state.  *Wis. Dep't of Corrections v. Schacht*, 524 U.S. 381, 388 (1998) ("A case falls within the federal court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, i.e., only if there is no plaintiff and no defendant who are citizens of the same state.").  The presence of a nondiverse party automatically destroys diversity, divesting the court of jurisdiction over the case, a defect that can neither be waived nor cured through consent.  *Id.* at 389.

In the present matter, Plaintiff cannot satisfy the diversity of citizenship requirement necessary for this court to exercise jurisdiction over Plaintiff's claim against Defendant Doe.  For the purposes of diversity jurisdiction, "[a]n individual's citizenship . . . is determined by his domicile."  *Palazo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000).  "Domicile is the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning."  *Id.* (citations omitted).  Plaintiff Roe asserts he is domiciled in Queens, New York.  (Amend. Compl. at ¶ 1).  Defendant Doe avers that she is domiciled in Athens, New York.  (Counterclaims at ¶ 4).  As both Roe and Doe have citizenship in New York,

there is no diversity of citizenship, and thus, the court will not have jurisdiction over Roe's remaining claim against Doe.

A district court's exercise of supplemental jurisdiction is a matter of discretion. *Parker v. Della Rocco*, 252 F.3d 663, 665–68 (2d Cir. 2001). Whether a court should consider exercising supplemental jurisdiction where the original basis jurisdiction has been dismissed from the case looks to a number of factors. *Valencia v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003). The court looks at: (1) whether state law claims implicate the doctrine of preemption; (2) whether judicial economy, convenience, fairness, and comity dictate that the case should remain in federal court; (3) the existence of "novel or unresolved questions of state law;" and (4) whether state law claims "concern the state's interest in the administration of its government." *Valencia v. Lee*, 316 F.3d at 306.

Here, Roe brings a claim of defamation against Roe. This is a state law claim that does not implicate the doctrine of preemption, thus the first factor weighs against exercising supplemental jurisdiction. Second, the case is still at its early pleading stages so judicial economy does not support exercising supplemental jurisdiction. *See Valencia v. Lee*, 316 F.3d at 307 (finding that even where pretrial discovery had been completed, the case was still in its early stages and thus, judicial economy did not lend toward allowing the court to continue under supplemental jurisdiction). Third, Roe's claim against Doe is for defamation. This is not a novel or unresolved question of state law and New York state courts will be apt to handle such a claim. Lastly, all parties in this lawsuit are private parties, and as such Roe's claim for defamation does not "concern the state's interest in the administration of its government." *Id.* at 306.

None of the four factors supporting supplemental jurisdiction are applicable in this case. Therefore, if the Court dismisses the Title IX claims against St. John's—the claims providing for

the court's original jurisdiction over this case—then the court must dismiss the claim against Doe for lack of subject matter jurisdiction.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Defendant Jane Doe respectfully requests that:

1. Should this Court grant Defendant St. John University's Motion to Dismiss, Defendant Jane Doe respectfully requests that this Court order Plaintiff to proceed under his legal name, and discontinue the action in this Court for lack of supplemental jurisdiction over Defendant Doe, along with any other and/or further relief that this Court deems just and proper; or

2. Should this Court deny Defendant St. John's Motion to Dismiss, Defendant Jane Doe respectfully requests that this Court order Plaintiff to proceed under his legal name, amend the case caption accordingly as well as any other/and or further relief that this Court deems just and proper.

Dated: June 29, 2020  
      New York, New York

Respectfully submitted,

**BAKER HOSTETLER LLP**

*/S/ Chardaie Charlemagne*
Melissa M. Carvalho, Esq.
Chardaie C. Charlemagne, Esq.
45 Rockefeller Plaza
New York, New York 10111
Tel: 212.589.4200
Fax: 212.589.4201

*Attorneys for Defendant Jane Doe*