**UNITED STATES DISTRICT COURT:**
**EASTERN DISTRICT OF NEW YORK**

Richard Roe,

                                  Plaintiff,         **ORAL ARGUMENT REQUESTED**

    -  against –

St. John's University and Jane Doe,                      19-cv-04694

                                 Defendants.        PKC-RER

_____

**ROE'S MEMORANDUM OF LAW IN OPPOSITION TO ST.**
**JOHN'S MOTION TO DISMISS HIS SECOND AMENDED**
**COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

July 28, 2020                     **Attorneys for plaintiff Richard Roe**

Peter G. Eikenberry (7257)
75 Maiden Lane, Room 402
New York, NY 10038
(917) 596-4168, and
pete@eikenberrylaw.com

Michael Valentine
61 Third Place
Brooklyn, New York 11231
Tel: (718) 858 0818
Cell: (917) 593 1047
mvalentine@valentinelaw.nyc

(Derya Lane, on the brief)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... IV

PRELIMINARY STATEMENT ...................................................................................1

    Statements of fact from Roe's complaint (April 2018 – January 2019) ....................2

        The incident in Paris. ...........................................................................................2

        Does's September 2018 complaint and the October faculty board proceeding. ............3

        Doe's three unproved allegations. ..........................................................................3

        Roe's November appeal of the October 15 ruling and his re-admission to class. ...........3

    St. John's inaccurate statements to the Court ...........................................................3

        a) Inaccurate statement # 1 ...................................................................................3

        b) Inaccurate statement #s 2 and 3 .........................................................................4

    Statements of fact (January 4, 2019 – January 16, 2019) .........................................4

        a) The "tweet storm." ...........................................................................................4

        b) Doe's defamatory tweet ....................................................................................4

        c) The "tweet storm" affected Roe ..........................................................................5

        d) St. John's arbitrary reversal of ruling ..................................................................5

        e) Determination of Roe's October 2018 appeal .......................................................5

        f) St. John's failure to investigate ..........................................................................6

        g) St. John's recognation of Roe as a "victim of sexual misconduct" ...........................6

    Roe's repeated complaints against Doe. .................................................................7

    St. John's misleading assertions of its investigation of Roe's complaints. ...................7

    The Mary Smith incident. .....................................................................................7

ST. JOHN'S POLICY 703 SECTION: VII PROCESS FOR INVESTIGATING AND
RESOLVING COMPLAINTS OF SEXUAL MISCONDUCT ...........................................9

    A. Initial Assessment. ..........................................................................................9

    B. Prelimiary Investigation. ..................................................................................9

    C. Interim Remedies. ...........................................................................................9

    D. Notice of Outcome. ..........................................................................................9

    Sequence of events as to Roe's complaint against Doe .............................................9

INTRODUCTION TO ARGUMENT ...........................................................................10

a) The Second Circuit's minimal pleading standards in determining a Rule 12(b)(6)..10
b) Title IX and St. John's Policty 703 ..............................................................10
c) The erroneous pleading standard stated by St. John's................................11

ARGUMENT ....................................................................................................12

I.   SINCE, INTER ALIA, ROE WAS SUSPENDED WITHOUT EXPLAINATION AND HIS APPEAL OF
     SANCTIONS DENIED THREE DAYS AFTER THE TWEET STORM, HE COULD NO LONGER
     BENEFIT FROM ST. JOHN'S EDUCATIONAL PROGRAMS AND STATES A CLAIM FOR SEXUAL
     DISCRIMINATION UNDER TITLE VII AND ST. JOHN'S POLICY 703, PURSUANT TO THE MINIMAL
     PLEADING STANDARDS OF MCDONNEL DOUGLAS. ........................................................ 12

II.  SINCE ST. JOHN'S ERRONEOUSLY DETERMINED THAT ROE ENGAGED IN NON_CONSENSUAL
     SEXUAL CONTACT WITH DOE, ROE STATES A CLAIM FOR GENDER DISCRIMINATION UNDER
     TITLE IX. ..................................................................................................... 13

III. BECAUSE OF ST. JOHN'S  DELIBERATE INDIFFERENCE TO INVESTIGATE ROE'S CLAIM THAT
     DOE SEXUALLY HARASSED HIM BY FALSELY ACCUSING HIM OF RAPE, ROE STATES A CLAIM
     FOR HOSTILE EDUCATIONAL ENVIRONMENT. ...................................................... 14

IV.  SINCE ST. JOHN'S ATTACHED TWENTY EXHIBITS TO ITS MOTION PAPERS INCLUDING
     "INVESTIGATORS' REPORTS" AND OTHER CONFIDENTIAL DOCUMENTS NOT AVAILABLE TO
     PLAINTIFF OR RELIED UPON HIM IN DRAFTING HIS COMPLAINT, ROE ASKS THIS COURT TO
     STRIKE THE EXHIBITS. ................................................................................. 15

V.   SINCE ST. JOHN'S FAILED TO INVESTIGATE ROE'S COMPLAINT AGAINST DOE AND FAILED
     TO PROTECT ROE BY NOTIFYING THE PUBLIC OF THE FALSITY OF THE TWEET, ST. JOHN'S
     FAILED TO CORRECT A HOSTILE WORKING ENVIRONMENT IN VIOLATION OF TITLE VII
     POLICY 703.................................................................................................. 16

VI.  ALTHOUGH ST. JOHN'S ACKNOWLEDGED ROE'S COMPLAINT AGAINST DOE, THAT HAD
     RESULTED IN ROE BEING A "VICTIM OF SEXUAL MISCONDUCT," IT DID NOT NOTIFY DOE OF
     ROE'S COMPLAINT IN WRITING, DID NOT SCHEDULE A MEETING WITH DOE, OR PROTECT
     ROE BY CORRECTING THE FALSITY OF THE TWEET AS REQUIRED BY POLICY 703 SECTION
     VII. ......................................................................................................... 17

VII. SINCE DISCLOSURE OF ROE'S IDENTITY WOULD REVEAL PERSONAL AND SENSITIVE
     INFORMATION AND WILL LIKELY SUBJECT HIM TO FURTHER PHYSICAL AND MENTAL
     HARM, HE ASKS THIS COURT TO PROTECT HIS IDENTITY............................................ 18

CONCLUSION ..................................................................................................19

# TABLE OF AUTHORITIES

<u>Page</u>

## Cases

*A.B. v. Hofstra Univ.*
No. 2:17-cv-5562 (DRH)(AYS), 2018 U.S. Dist. LEXIS 68918 (E.D.N.Y. Apr. 24, 2018)........18

*Chambers v. Time Warner, Inc.*
282 F. 3d 147 (2d Cir. 2002) ....................................................................................................15

*Doe v. Columbia Univ.*
831 F.3d 46 (2d Cir. 2016) ................................................................................................10, 12

*Doe v. Sarah Lawrence Coll.*
No. 19-CV-10028 (PMH), 2020 U.S. Dist. LEXIS 64245 (S.D.N.Y. Apr. 10, 2020)................15

*Karol v. City of New York*
396 F. Supp. 3d 309 (S.D.N.Y. 2019) .....................................................................................15

*McDonnell Douglas Corp. v. Green*
411 U.S. 792 ...........................................................................................................................10

*Menaker v. Hofstra Univ.*
935 F. 3d 20 (2nd Cir., 2019) ..............................................................................12, 13, 15, 16

*Novio v. N.Y. Acad. of Art*
317 F. Supp. 3d 803, 813 (S.D.N.Y. 2018) .............................................................................16

*Papelino v. Albany Coll. of Pharmacy*
633 F. 3d 81 (2nd Cir. 2017) ...........................................................................................14, 17

*Rolph v. Hobart and William Smith Colleges*
271 F. Supp. 3d 386 (W.D.N.Y. 2017)....................................................................................13

*Tubbs v. Stony Brook Univ.*
343 F. Supp. 3d 292 (S.D.N.Y. 2018) .....................................................................................11

*Vill. Cmty. Sch. v. Adler*
124 Misc. 2d 817, 817, 478 N.Y.S.2d 546 (Civ. Ct. 1984)......................................................17

## Statutes

28 C.F.R. § 54.135(b) .................................................................................................10

34 C.F.R. § 106.8(b) ..................................................................................................10

Title IX of the Education Amendments of 1972 ...................................4, 5, 6, 9, 10, 11, 13, 14, 15

## Rules

Fed. R. Civ. P. 12(b)(6) .............................................................................................10

**UNITED STATES DISTRICT COURT:**
**EASTERN DISTRICT OF NEW YORK**

Richard Roe,

        Plaintiff,        19-cv-04694

- against –

                 PKC-RER

St. John's University and Jane Doe,

        Defendants.

_____

**Preliminary Statement**

   In September 2018, fellow student Jane Doe complained to St. John's about plaintiff Roe's April 2018 alleged sexual misconduct against her in her bed at a dormitory in Paris, including alleged digital penetration. But on October 15, a St. John's faculty hearing board determined that Roe was responsible *only* for conduct he admitted – that Doe took his hand and placed it on her breasts and that he was not drinking at the time. Nevertheless, St. John's suspended Roe for a semester.

   After St. John's re-admitted Roe for the spring semester in November, Doe authored the language of a January 4, 2019, tweet. It falsely stated that Roe had received only a half semester "suspension" for "raping me." More than 2,000 other tweets were also posted on January 4 2019, detailing women's alleged experiences of sexual misconduct at St. John's. (the "tweet storm") As a result of the tweet, a second accuser of Roe ("Mary Smith") came forward on January 5, 2019. St. John's gave Roe a standard no contact letter with respect to Smith's complaint on January 7, 2019, but then, on January 8, 2019, without explanation, St. John's summarily suspended Roe. Two hours later, St. John's, denied Roe's November appeal of the Doe complaint sanctions.

    Roe's counsel complained against Doe about the tweet to both a St. John's Dean and its Counsel on January 7, 2019. St. John's memo (at page 5) falsely states that St. John's "immediately investigated." Although, St. John's acknowledged in writing on January 16 that Roe was a "victim" of "sexual misconduct" because of the tweet, it never investigated or corrected the falsity of the tweet. It merely took the position that the tweet was anonymous without even a phone call to Doe.

Roe's counsel made complaints about Doe with respect to the tweet on January 7, June 12 and July 18, because the tweet had "gone viral" and Roe's counsel was concerned that Roe would not be able to receive a fair hearing on the Smith complaint. The panel members would obviously be aware from the tweet of Roe's "suspension" for "rape." Nevertheless, the Smith hearing went forward, Roe was found to have committed a "non-consensual sexual touching," and he was permanently "expelled." St. John's rejected his appeal, the Chair of the appeals body stating, *inter alia,* that Roe had "digitally penetrated" Smith, directly contrary to the finding of the hearing panel.

**1)  Statements of fact from Roe's complaint (April 2018 – January 2019)**

**The incident in Paris:** On April 12, 2018, Roe was in Paris at a local club, to celebrate a birthday with fellow St. John's students studying abroad. (Cpl. ¶ 13). Doe asked Roe to dance, and they did. (Cpl. ¶ 14). Sometime later, Doe told Roe that she was returning to the St. John's dorm where both were staying. (Cpl. ¶ 15). Doe said she was taking an Uber, gave Roe her room number and asked him to "check on her" when he arrived back at the dorm. (Cpl. ¶ 17). Several hours later, Roe went to Doe's room and found her awake and on her phone. (Cpl. ¶ 18). Doe invited Roe into her room, and, thereafter, Doe took Roe's right hand and placed it upon her fully clothed breasts. (Cpl. ¶ 19). He told Doe, "I am not interested in sex." (Cpl. ¶ 20). She replied, "Then, get the hell out of here," and he left. (Cpl. ¶ 21).

**Doe's September 2018 complaint and the October faculty board proceeding:** On September 4, 2018, Roe was notified by St. John's that Doe had submitted a complaint ("Doe's complaint") alleging four St. John's Code of Conduct violations. (Cpl. ¶ 22).  On October 3, 2018, Roe attended a St. John's Faculty Board "Conduct Hearing" scheduled to determine them. (Cpl. ¶ 26). On October 15, 2018, St. John's notified Roe (the "October 15 letter") that he had been found "in violation" of one of St. John's rules, *i.e.,* prohibiting "Non-Consensual Sexual Contact." It informed him that he was suspended indefinitely. (Cpl. ¶ 27). The October 15 letter stated the Faculty Board grounds for its finding as follows:

> The following rationale has been provided by the hearing officer/board:
> "The respondent *admitted* (emphasis supplied) in engaging in physical contact of a sexual nature with the complainant, and the evidence demonstrated a lack of affirmative consent to engage in such contact. Such evidence included the complainant's intoxication, as described by multiple witnesses, and the respondent's assertion, which was not disputed, that he was not impaired by alcohol." (Cpl. ¶ 28)

Roe admitted only that Doe took his hand and placed it on her fully- clothed breasts, and that he had not been drinking.

**Doe's three unproved allegations.** Roe was found innocent of the following three of Doe's complaints. (From St. John's Exhibit G, available to Roe in drafting his complaint.)

1. Non-Consensual Sexual Contact: The Complainant stated that on April 12, 2018, she and other friends had decided to go to a local club ("Duplex") to celebrate a birthday. While at the club, the Complainant stated that the Respondent had approached her on the dance floor and kissed her on the mouth without prompting or invitation.

2. Sexually Inappropriate Conduct: At approximately 6:30 AM, the Complainant reported that she awoke to find the Respondent in her bed without permission or knowledge of how he got there. The Complainant stated that the Respondent moved to the side of the bed and began to masturbate.

4. Non-Consensual Sexual Penetration: At approximately 6:30AM, the Complainant reported that she awoke to find the Respondent in her bed without permission or knowledge of how he got there. The Complainant stated that the Respondent was laying in the bed and that he was digitally penetrating her vagina.

**Roe's November appeal of the October 15 ruling and his re-admission to class**

In November, Roe appealed his October 2018 suspension to the St. John's conduct appeals board (the "Appeals Board") on grounds, *inter alia*, that he was not given the "opportunity," pursuant to Policy 703, to submit a written impact statement "to the decision-maker prior to a determination of an appropriate sanction(s)." (Cpl. ¶ 35). Also, in November, St. John's readmitted Roe to resume classes in January. (Cpl. ¶'s 36).

2) **St. John's inaccurate statements to the Court**

In St. John's memo, it made material inaccurate statements to the Court as follows:

   a) **Inaccurate statement #1:**

On page 3 of its Memorandum, St. John's states:

The first of Plaintiff's two violations of the Student Code occurred on April 12, 2018, when he and co-defendant "Jane Doe" ("Doe") were studying abroad. Specifically, Doe reported that "At approximately 6:30 AM, [she] reported that she awoke to find the [Plaintiff] in her bed without permission or knowledge of how he got there[.] Doe reported that "[Plaintiff] was laying in the bed and touching her breasts, that he was digitally penetrating her vagina, and that she could feel his erect penis touching her back." (Hurwit Decl., Ex. E.)

In fact, as set forth above, the St. John's faculty board found Roe innocent of most of these allegations and ignored the rest. The quote is from Doe's complaint to a St. John's investigator which preceded the faculty board hearing. (Exhibit E was not available to plaintiff in drafting his complaint.) (See Eikenberry affirmation.).

**b) Inaccurate statements #s 2 and 3:**

St. John's counsel Joshua S. Hurwit, in his May 8, 2020, declaration, affirmed as follows that:

> Attached as Exhibit E is a true and correct copy of SJU's Final Title IX Investigating Officers Report (without exhibits), dated July 19, 2018, *a copy of which Plaintiff received*. (Emphasis supplied)

Mr. Hurwit also affirmed as follows that:

> Attached as Exhibit K is a true and correct copy of SJU's Final Title IX Investigating Officers Report (without exhibits), dated February 7, 2019, *a copy of which Plaintiff received.* (Emphasis supplied).

Yet, neither Roe nor his counsel "received" a copy of either of the two investigators' reports prior to receipt of Mr. Hurwit's declaration. (Eikenberry affirmation).

**3) Statements of fact (January 4, 2019 – January 16, 2019)**

**a) The "tweet storm."** On January 4, 2019, the hashtag "#SurvivingSJU" was created. (Cpl. ¶ 37). It was the number one hashtag "trending" on Twitter in the U.S. from January 4, 2019, to January 6, 2019. (Cpl. ¶ 38). On January 8, the St. John's student newspaper, "The Torch," reported that:

> More than 2,000 tweets surfaced on Friday, Jan. 4 [the date #SurvivingSJU was created] detailing alleged experiences of sexual misconduct that had taken place at St. John's. (Cpl. ¶ 48).

In response to the over 2,000 tweets posted to the #SurvivngSJU hashtag, on January 8, St. John's publicly announced that it would investigate all posted claims. (Cpl. ¶'s 48- 49).

**b) Doe's defamatory tweet.** On January 4, 2019, Doe authored a tweet (the "tweet") which stated that, "[Roe] after raping me…only got half a semester suspension…" (Cpl. Ex. 2); the tweet included a picture of Roe. Doe almost instantly "liked" the anonymously posted tweet, and less than 30 minutes later, posted in another tweet from her personal account that

she had written a "final statement" for the University Conduct Hearing (referencing the confidential proceedings) instead of "writing essays" for her classes. (Cpl. ¶'s 37-40).

St. John's Policy 703 mandates confidentiality with respect to sexual misconduct hearing and findings, and only Doe, Roe and University officials were informed of Roe's suspension and the reason for it. Since the tweet specifically references Roe's suspension for sexual misconduct against the author of the tweet, the only person who could have authored the confidential information in the tweet was Doe.

c) **The "tweet storm" affected Roe.** On January 5, 2019, one day after the tweet, a male student threatened to "fuck [Roe] up" via phone calls and text messages. On January 5, 2019, one day after the tweet was published, in a complaint to St. John's, a second female student ("Mary Smith") complained to St. John's about Roe's sexual misconduct. A female St. John's student punched Roe in his face at a bar (Cpl. ¶'s 46-47).

d) **St. John's arbitrary reversal of ruling.** On January 7, 2019, Roe was given a "no contact" notification which permitted him to attend classes. One day later, on January 8, 2019, St. John's abruptly reversed its prior ruling regarding Roe's status at St. John's and arbitrarily suspended him from St. John's without a hearing, explanation or citation of rule. Later the same day, Roe was confusingly given a second "no contact" letter permitting him to attend classes. (In contrast, Roe attended classes during investigation of Doe's complaint.) (Cpl. ¶'s 51-53).

e) **Determination of Roe's October 2018 appeal:** On January 8, 2019, St. John's also determined Roe's appeal as follows:

> [Roe] argues that the "Conduct Board mandated sanctions simultaneously with the finding of his misconduct" and, therefore, he did not have the opportunity to submit a written impact statement
> Section VII (G) of University Policy 703…is not part of the Code of Student Conduct or its process. . The Code of Student Conduct provides that only a complainant in a Title IX-related student conduct matter has a right to present a written impact statement.
> *                          *                          *
> There was… time for Respondent to submit whatever impact statement he wished. Although the Respondent may not have known of the Board's decision, he had admitted to the physical touching at issue here and, thus should have expected a sanction of some kind. (Cpl. ¶ 54).

However, Policy 703 supersedes "any other University policy to the extent that such policy applies to sexual misconduct." (Cpl. ¶ 55). Policy 703 was revised as of March 13, 2018, (Cpl. Ex. 1) whereas the Student Code of Conduct was revised as of August 16, 2016**.** (St. John's Exhibit A).

      **f)**    **St. John's failure to investigate:** On January 7, 2019, Roe's counsel made a complaint against Doe by telephone and email to Dean Jackie Lochrie and St. John's Counsel Josh Hurwit as follows:

> I am attorney for [Roe]… I have forwarded a tweet- apparently from [Jane Doe]. As a result of the tweet, [Roe] received calls and messages  from someone threatening to "fuck up" [Roe]. I ask for University action to protect [Roe] from a violation of policy and false allegations. (Cpl. ¶ 61).

      **g)**    **St. John's recognition of Roe as a "victim of sexual misconduct:"** On January 16, 2019, Keaton Wong, St. John's Director of Title IX Compliance, responded to Roe's January 7 complaint against Doe as follows:

> Thank you for bringing to the University's attention the tweet that was recently posted about you. Although the University cannot sanction the individual who posted the tweet because we cannot confirm their identity, we recognize that it has deeply affected you and other students in the St. John's University community. Attached is the University's 'You are Not alone' guide. (Cpl. ¶ 66)

In its "Preface," the **"You are Not Alone"** guide provides, *inter-alia*, as follows:

> St. John's University is committed to supporting survivors of sexual violence…by providing the necessary safety and support services so that students can remain at St. John's University, meet academic standards, obtain necessary health/mental health treatment, and maintain social relationships. This document is written for survivors of sexual misconduct…in order to assist survivors in the recovery process and in their efforts to heal from this unacceptable form of violence. (Cpl. ¶ 67).

Thus, because of Roe's January 7 complaint against Doe, St. John's recognized him as a "survivor of sexual misconduct," yet failed to undertake the "impartial" investigation of Doe as required by Policy 703 and Title IX.  (Cpl. ¶ 68-69).

4) **Roe's repeated complaints against Doe.** Roe's counsel again complained to St. John's Counsel, Joshua Hurwit, on June 12 and July 18. (Cpl. ¶ 71). On July 18, Mr. Hurwit responded as follows:

> Your requests regarding the "tweet" are self-serving and inaccurate. As I have explained to you on multiple occasions, the "tweet" was made anonymously, St. John's University has no evidence whatsoever that [Doe] is the author of the "tweet…" (Cpl. ¶'s 71-72).

Mr. Hurwit had evidence that the author of the tweet was almost certainly Doe since it referred to Roe as having been "suspended" for "raping me." When Roe was suspended for alleged misconduct against Doe, St. John's actively investigated, yet it did not investigate Roe's complaint against Doe. (Cpl. ¶ 70- 73).

5) **St. John's misleading assertions of its investigation of Roe's complaints.**

In St. John's memo, it does report that Roe's counsel complained of the tweet creating a hostile working environment on January 7, June 12 and July 18. St. John's memo states that it "immediately investigated" the January 7 complaint. (St. John's memo, page 5). It states that "St. John's Department of Public Safety attempted to investigate" Roe's June 12 complaint. (St. John's memo page 7). Yet, St. John's offers no evidence that it ever investigated or attempted to investigate the tweet. St. John's offers only evidence that it investigated or attempted to investigate physical threats or attacks on Roe.

6) **The Mary Smith incident:** In December 2018, Roe was a passenger in an automobile which brought a very intoxicated "Mary Smith" to his apartment for her to see Roe's roommate with whom she had had an affair. (Cpl. ¶s 96-97). After the roommate refused to permit her to enter his room, she went outside and slept on the concrete patio in the cold and rain. (Cpl. ¶s 99-100). The roommate refused to talk to her and to bring her back inside. (Cpl. ¶ 102). Thus, Roe brought her in to sleep on a couch and sat at the end of the couch to ensure that she did not vomit and endanger herself. (Cpl. ¶s 102-106). She left the following morning without incident. (Cpl. ¶ 107).

However, she filed a complaint against Roe with St. John's on January 5, 2019, one day after the "tweet storm" against St. John's commenced. (Cpl. ¶ 108). Although Roe's counsel

advocated for a fair procedure in adjudicating her complaint because the tweet storm against St. John's had "gone viral" – St. John's commenced the faculty hearing panel which heard Mary Smith's complaint without even correcting the false statement of the tweet (Cpl. ¶s 111-114).

The hearing started an hour late while the three hearing panel members, St. John's investigator, its Director of Student Conduct and the St. John's lawyer conferred with each other. At the hearing, the investigator responded to a question from the panel as to Roe's credibility. He said that he found that Roe was not credible because he said he moved out of his apartment for his convenience. The investigator stated that Roe had actually moved out of his apartment to live with his mother 15 miles away. Roe responded that he left to live with his father near the campus. (Cpl. ¶s 116-123).

The Mary Smith hearing board found Roe innocent of Smith's accusation of "digital penetration," but did find him "In Violation" of non-consensual sexual contact. However, on Roe's appeal, the Chair of the St. John's appeal's board, who had also been the Chair of Roe's first appeals panel, falsely stated as follows:

> After a hearing on September 17, 2019, the University Conduct Board found the Respondent to have violated the Code's provision[s]. The evidence showed that the Respondent digitally penetrated the Complainant's vagina while she was asleep at an off-campus private house.
>
>        *            *            *
>
> Respondent twice committed violations of a sexual nature. Both instances occurred while the complainants were unconscious. The Respondent has now a demonstrable history of preying on women while they were in a vulnerable state. (Cpl. ¶s 125)

These were false statements. In the second hearing the panel found him innocent of the complaint of digital penetration. In the first hearing, Doe was not found to have been asleep during the incident. These statements refute the improper findings by an appeals Chair that Roe had a "history of preying on women." The Chair's improper findings demonstrate bias against Roe. Roe's counsel moved to recuse the Chair of the Smith panel for possible bias against Roe, but the Chair declined in a lengthy statement.

**St. John's Policy 703 Section: VII. Process for Investigating
and Resolving Complaints of Sexual Misconduct**

**A. Initial Assessment**

Once a complaint or notice of any allegation of sexual misconduct is received, the Title IX Coordinator, or a designee, will make an initial assessment of the reported information.

**B. Preliminary Investigation**

If the Title IX Coordinator, or a designee, determines that this Policy or the Code of Conduct may have been violated, the Title IX Coordinator, or a designee, will notify the respondent in writing that a complaint has been filed and provide the factual allegations concerning the alleged violation, and possible sanctions…

The Title IX Coordinator, or a designee, will schedule a meeting with the respondent, within a reasonable amount of time…

**C. Interim Remedies**

The University offers a wide range of interim remedies for students and employees designed to stop the alleged sexual misconduct, and/or to protect the safety and wellbeing of the individuals involved and the University Community.

**D. Notice of Outcome**

Both the Complainant and Respondent will receive simultaneous written notice of the outcome…

**Sequence of events as to Roe's complaint against Doe**

1. January 7, 2019. Roe made a written complaint against Doe about the tweet.

2. January 16, 2019. St. John's acknowledged Roe as "victim of sexual misconduct" with respect to the tweet, based upon Roe's January 7 complaint.

3. St. John's failed to:

   a) notify Doe that a complaint was made against her, and

   b) schedule a meeting with Doe about Roe's complaint, and

   c) determine the remedy to prevent recurrence of the misconduct.

**Introduction to argument**

> **a)  The Second Circuit's minimal pleading standards
> in determining a Rule 12(b)(6) motion**

In *Doe v. Columbia* Univ., 831 F.3d 46, 55 (2d Cir. 2016) the court stated the

standard for the Rule 12 (b)(6) as follows:

> At the 12(b)(6) stage of a Title VII suit, allegation of facts supporting a minimal
> plausible inference of discriminatory intent suffices as to this element of the claim
> because this entitles the plaintiff to the temporary presumption of *McDonnell
> Douglas* until the defendant furnishes its asserted reasons for its action against the
> plaintiff.

> For this reason, we have often vacated 12(b)(6) and 12(c) dismissals of
> complaints alleging discrimination. We have also cautioned district courts against
> imposing too high a burden on plaintiffs alleging discrimination at the 12(b)(6)
> stage… "At the pleading stage, district courts would do well to remember this
> exceedingly low burden that discrimination plaintiffs face...." (citations omitted)

**b)  Title IX and St. John's Policy 703**

> Title IX of the Education Amendments of 1972 provides, *inter alia*, that:

> No person in the United States, shall on the basis of sex, be excluded from
> participation in, be denied the benefits of, or be subjected to discrimination under
> any education program or activity receiving Federal financial assistance. (Cpl. ¶'s
> 80- 82).

Both the U.S. Department of Education and the U.S. Department of Justice have promulgated

regulations under Title IX that require a school to "adopt and publish grievance procedures

providing for the prompt and equitable resolution of student... complaints alleging any action

which would be prohibited by" Title IX or regulations thereunder. 34 C.F.R. § 106.8(b) (U.S.

Dep't of Education); 28 C.F.R. § 54.135(b) (U.S. Dep't of Justice). Policy 703 was promulgated

pursuant to Title IX and its implementing regulations.

Such prohibited actions include all forms of sexual harassment. (Cpl. ¶ 85) "The

'prompt and equitable' procedures that a school must implement pursuant to Title IX to

"accord due process to both parties involved" must include, at a minimum: "Adequate,

reliable and impartial investigation of complaints…" (Cpl. ¶'s 83- 86).

Pursuant to Policy 703, all claims of violation must be investigated:

> Once a complaint or notice of any allegation of sexual misconduct is received, the Title IX Coordinator…will make an initial assessment of the reported information.
>
> \*                                        \*                                        \*
>
> A preliminary investigation is when an investigator conducts a preliminary investigation and the Title IX Coordinator…will assess whether this Policy or the Student Code of Conduct may have been violated. (Cpl. ¶ 62).

Pursuant to Policy 703, "Sexual Harassment" includes "sexual offensive comments…" and provides that:

> Sex discrimination is an act that disadvantages a person and that occurs because of the affected individual's gender … Sexual harassment includes … verbal conduct of a sexual nature, when … such conduct is sufficiently severe…such that it limits an individual's ability to participate in, or benefit from, the University's education or work programs or activities (hostile environment). (Cpl. ¶ 63).

Pursuant to Policy 703, St. John's defines "hostile environment" as follows:

> A "hostile environment" exists when the conduct is sufficiently severe… that it is unreasonably interferes with, limits, or deprives an individual from participation in or benefiting from the University's education… when judged against a reasonable person standard.

### c) The erroneous pleading standard stated by St. John's

St. John's states a pleading standard of "severe and pervasive" for a finding determining sexual misconduct cases. (See St. John's memo pp. 16 and 17). However, the actual pleading standard is "severe *or* pervasive." See, *Tubbs v. Stony Brook Univ.*, 343 F. Supp. 3d 292, 307 (S.D.N.Y. 2018).

**The Argument**

**POINT I**

**SINCE, *INTER ALIA*, ROE WAS SUSPENDED WITHOUT EXPLAINATION AND HIS APPEAL OF SANCTIONS DENIED THREE DAYS AFTER THE TWEET STORM, HE COULD NO LONGER BENEFIT FROM ST. JOHN'S EDUCATIONAL PROGRAMS AND STATES A CLAIM FOR SEXUAL DISCRIMINATION UNDER TITLE VII AND ST. JOHN'S POLICY 703, PURSUANT TO THE MINIMAL PLEADING STANDARDS OF MCDONNEL DOUGLAS.**

Since, *inter alia*, Roe was suspended without explanation and his appeal of sanctions denied three days after the tweet storm, he could no longer benefit from St. John's educational programs and states a claim for sexual discrimination under title VII and St. John's Policy 703, pursuant to the minimal pleading standards of *McDonnel Douglas.* See *Menaker v. Hofstra Univ.*, 935 F. 3d 20, 33-34 (2nd Cir., 2019), where the court held as follows:

> …*Doe v. Columbia* stands for the general principle that where a university (1) takes an adverse action against a student… (2) in response to allegations of sexual misconduct, (3) following a clearly irregular investigative or adjudicative process, (4) amid criticism for reacting inadequately to allegations of sexual misconduct by members of one sex, these circumstances provide the requisite support for a *prima facie* case of sex discrimination.

Within five days of the tweet storm, St. John's lapsed into a confusing and irregular pattern of responding to complaints of sexual harassment. Since, *inter alia*, Roe was suspended without explanation and his appeal of sanctions denied three days after the tweet storm, he could no longer benefit from St. John's educational programs and states a claim for sexual discrimination under title VII and St. John's Policy 703, pursuant to the minimal pleading standards of *McDonnel Douglas.*

12

**POINT II**

**SINCE ST. JOHN'S ERRONEOUSLY DETERMINED THAT ROE ENGAGED IN NON-CONSENSUAL SEXUAL CONTACT WITH DOE, ROE STATES A CLAIM FOR GENDER DISCRIMINATION UNDER TITLE IX.**

Since St. John's erroneously determined that Roe engaged in non-consensual sexual contact with Doe, Roe states a claim for gender discrimination under Title IX. See *Menaker v. Hofstra Univ.*, 935 F. 3d 20, 50-52 (2nd Cir., 2019), where the court held that:

> "[W]hen the evidence substantially favors one party's version of a disputed matter, but an evaluator forms a conclusion in favor of the other side (without an apparent reason based in the evidence), it is plausible to infer (although by no means necessarily correct) that the evaluator has been influenced by bias." *Id.*

After the faculty board made a finding that Doe had been drinking at the time of the incident in Paris in April 2018, it concluded that Roe was guilty of sexual misconduct based solely on two admissions. They were 1) that he had not been drinking, and 2) that Doe had taken his hand and placed it upon her fully clothed breasts. (Cpl. ¶s 28-29). Of course, the faculty board was not assembled to judge a complaint against Doe, but the conduct admitted by Roe was conduct which, if proven, would be a violation of the student code by her. (Cpl. ¶ 32).

Obviously, the conduct to which Roe admitted actually constituted a violation of the Student Code by his accuser, not conduct constituting a violation of the Student Code by him. Thus, the decision was biased, since her conduct should be irrelevant to finding of a misconduct against him. Thus, on these facts, the evidence was clearly in favor of Roe, but the panel favored Doe. See also, *Rolph v. Hobart and William Smith Colleges,* 271 F. Supp. 3d 386, 399 (W.D.N.Y. 2017) where the court stated that:

> …[A] plaintiff bringing an erroneous outcome challenge must allege the complaint (1) 'particular facts sufficient to cast some articulatable doubt on the accuracy of the outcome of the disciplinary proceedings'; and (2) 'a causal connection between the flawed outcome and gender bias.'

Since St. John's erroneously determined that Roe engaged in non-consensual sexual contact with Doe, Roe states a claim for gender discrimination under Title IX.

## POINT III

## BECAUSE OF ST. JOHN'S DELIBERATE INDIFFERENCE TO INVESTIGATE ROE'S CLAIM THAT DOE SEXUALLY HARASSED HIM BY FALSELY ACCUSING HIM OF RAPE, ROE STATES A CLAIM FOR HOSTILE EDUCATIONAL ENVIRONMENT.

Because of St. John's deliberate indifference to investigate Roe's claim that Doe sexually harassed him by falsely accusing him of rape, Roe states a claim for hostile educational environment. See *Papelino v. Albany Coll. of Pharmacy,* 633 F. 3d 81, 88-89 (2nd Cir. 2017).

The court in *Papelino* held as follows:

A plaintiff can establish a hostile educational environment claim under Title IX if he demonstrates that he objectively perceives the environment to be hostile or abusive and that the environment permeated with discriminatory intimidation, ridicule, and insult sufficiently severe and pervasive that it altered the conditions of his education. *Id.* at 89*.*

In addition, an educational institution will be held liable under Title IX if the plaintiff establishes that "a school official with authority to address the alleged discrimination and to institute corrective measures" knew of the discrimination and "failed to respond." had actual knowledge to the discrimination and failed to adequately respond. *Id.*

St. John's counsel Josh Hurwit had knowledge of Doe's sexual harassment of Roe since Doe was the only logical author of the language of the tweet, yet neither he nor any other person in authority at St. John's investigated Roe's complaint against Doe, notified Doe of Roe's complaint, interviewed her on Roe's complaint, or took corrective action as to the tweet in violation of Policy 703 Section VII.

Mr. Hurwit's and St. John's inaction regarding Doe's misconduct was obviously motivated by the "tweet storm" directed at St. John's mistreatment of its female students. The entire conduct resolution process became corrupted by St. John's bias in favor of its female students. Roe's counsel contacted St. John's counsel asking how a faculty board hearing could go forward since the tweet had "gone viral." Roe was likely to be prejudiced by the false publicity of a confidential proceeding.

Because of St. John's deliberate indifference to investigate Roe's claim that Doe sexually harassed him by falsely accusing him of rape, Roe states a claim for hostile educational environment.

**POINT IV**

**SINCE ST. JOHN'S ATTACHED TWENTY EXHIBITS TO ITS MOTION
PAPERS INCLUDING "INVESTIGATORS' REPORTS" AND OTHER
CONFIDENTIAL DOCUMENTS NOT AVAILABLE TO PLAINTIFF OR
RELIED UPON HIM IN DRAFTING HIS COMPLAINT, ROE ASKS THIS
COURT TO STRIKE THE EXHIBITS.**

Since St. John's attached twenty exhibits to its motion papers including "investigators'
reports" and other confidential documents not available to Roe or relied upon him in drafting his
complaint, Roe asks this Court to strike the exhibits. See *Menaker v. Hofstra Univ.*, 935 F. 3d 20,
26 (2nd Cir., 2019) where the Court held that:

> As we have explained, "a plaintiff's *reliance* on the terms and effect of a document
> in drafting the complaint is a necessary prerequisite to the court's consideration of
> the document on a dismissal motion; mere notice or possession is not enough. *Id.*
> at 153 (emphasis in original). Menaker's Amended Complaint does not rely on
> these extrinsic materials. *Id.* at 27 n.7.

See also, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) where the court held
that "a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a
necessary prerequisite to the court's consideration of the document on a dismissal motion; mere
notice or possession is not enough."

In, *Doe v. Sarah Lawrence Coll.*, No. 19-CV-10028 (PMH), 2020 U.S. Dist. LEXIS
64245, at *16 (S.D.N.Y. Apr. 10, 2020) where the court faced a remarkably similar question.
The plaintiff had sued his university for gender discrimination under Title IX after he was
expelled as a result of a sexual assault claim. The university attached (1) the student handbook,
(2) the final investigatory report, (3) the Hearing Panel's determination letters, and (4) emails
relevant to the motion to dismiss. The court struck the exhibits because "while such exhibits may
be helpful at trial on the merits of Plaintiff's allegations, it cannot be said, at this juncture, that
such exhibits are integral to the complaint." *Id.* at 16.

Similarly, St. John's attached its Student Code of Conduct, personal and confidential
letters and emails, and investigators' reports. The reports are replete with purported hearsay
statements from unidentified witnesses, which are not considered at the pleading stage. *See
Karol v. City of New York*, 396 F. Supp. 3d 309, 318 (S.D.N.Y. 2019) ("Evidence attached by the
defendants [as exhibits to the motion to dismiss] is plainly hearsay and is not proper for
consideration on a motion to dismiss.").

15

St. John's concluded, without support, that Roe relied upon its investigators' reports in drafting the complaint, and Mr. Hurwit's statement that Roe "received" copies of the investigators' reports is false. (Eikenberry affirmation). Since St. John's attached twenty exhibits to its motion papers including "investigators' reports" and other confidential documents not available to Roe or relied upon him in drafting his complaint, Roe asks this Court to strike the exhibits.

## POINT V

**SINCE ST. JOHN'S FAILED TO INVESTIGATE ROE'S COMPLAINT AGAINST DOE AND FAILED TO PROTECT ROE BY NOTIFYING THE PUBLIC OF THE FALSITY OF THE TWEET, ST. JOHN'S FAILED TO CORRECT A HOSTILE WORKING ENVIRONMENT IN VIOLATION OF TITLE VII POLICY 703.**

Since St. John's failed to investigate Roe's complaint against Doe and failed to protect Roe by notifying the public of the falsity of the tweet, St. John's failed to correct a hostile working environment in violation of Title VII and Policy 703. *Menaker v. Hofstra Univ., supra* (2nd Cir., 2019) where the Court held as follows:

> First, it is plausible that Kaplan's accusations were motivated, at least in part, by Menaker's sex. While Kaplan's *primary* motivation may have been financial or vindictive, Title VII requires that we look beyond primary motivations. Indeed, courts must determine whether sex was a motivating factor, *i.e.*, whether an adverse employment action was based, even "in part," on sex discrimination. Here, Kaplan did not accuse Menaker of just any misconduct; she accused him of *sexual* misconduct. That choice is significant, and it suggests that Menaker's sex played a part in her allegations. A rational finder of fact could therefore infer that such an accusation was based, at least in part, on Menaker's sex. *Id.* at 39.

Here St. John's was aware that someone breached its confidentiality mandate. St. John's knew that the tweet was false since Roe was not suspended for rape. St. John's Counsel knew that Doe was the most obvious author of the language of the tweet. Indeed, St. John's had determined on January 16, 2019, that Roe was a "victim" of "sexual misconduct" by reason of the tweet. Yet, after Roe's counsel made a complaint against Doe to St. John's Counsel Hurwit on January 7, Mr. Hurwit permitted Roe to be summarily suspended on January 8 and expelled on October 3, 2019, without even correcting the false statement that Roe had been suspended for rape.

Since St. John's failed to investigate Roe's complaint against Doe and failed to protect Roe by notifying the public of the falsity of the tweet, St. John's failed to correct a hostile working environment in violation of Title VII and Policy 703.

## POINT VI

**ALTHOUGH ST. JOHN'S ACKNOWLEDGED ROE'S COMPLAINT AGAINST DOE, THAT HAD RESULTED IN ROE BEING A "VICTIM OF SEXUAL MISCONDUCT," IT DID NOT NOTIFY DOE OF ROE'S COMPLAINT IN WRITING, DID NOT SCHEDULE A MEETING WITH DOE, OR PROTECT ROE BY CORRECTING THE FALSITY OF THE TWEET AS REQUIRED BY POLICY 703 SECTION VII.**

Although St. John's acknowledged Roe's complaint against Doe, that had resulted in Roe being a "victim of sexual misconduct," it did not notify Doe of Roe's complaint in writing, did not schedule a meeting with Doe, or protect Roe by correcting the falsity of the tweet as required by Policy 703 Section VII.  See, *Novio v. New York Acad. of Art*, 317 F. Supp. 3d 803, 813 (S.D.N.Y. 2018) where the court held as follows:

> Defendant Academy's assertions "to respond promptly to complaints of sexual harassment ...," and "to take immediate action to eliminate sexual harassment, prevent its recurrence, and address its effects" mirror the promises made by the school in *Village Community School v. Adler* "to detect learning deficiencies, and to provide the necessary tutorial and guidance services." *Vill. Cmty. Sch. v. Adler*, 124 Misc. 2d 817, 817, 478 N.Y.S.2d 546, 547 (Civ. Ct. 1984). In making each of the above assertions via the Student Handbook and/or the Website, Defendant Academy put itself out as an entity that would act in particular ways in certain situations, and as such, made specific, concrete promises. As such, the Academy stated that it would engage in actual, finite promises of action, and Plaintiff has sufficiently alleged as such to withstand dismissal on this motion. (Citations omitted)

In *Papelino v. Albany Coll. Of Pharmacy of Union Univ.,* 633 F.3d 81, 93-94 (2d Cir. 2011), the court held that a contract between a student and the school is created at point of enrollment and if the student "complies with the terms prescribed by the university and completes the required courses, the university must award him a degree. The court also held that the school needs to "act in good faith in its dealing with its students" [and] that the school breached this duty by failing to investigate Papelino's complaint of sexual harassment…"

Mr. Hurwit permitted an investigation to go forward and a hearing to occur on Smith's complaint but did not treat Roe with the same procedural regularity and process his

complaint. Although St. John's acknowledged Roe's complaint against Doe, that had resulted in Roe being a "victim of sexual misconduct," it did not notify Doe of Roe's complaint in writing, did not schedule a meeting with Doe, or protect Roe by correcting the falsity of the tweet as required by Policy 703 Section VII.

**POINT VII**

**SINCE DISCLOSURE OF ROE'S IDENTITY WOULD REVEAL PERSONAL AND SENSITIVE INFORMATION AND WILL LIKELY SUBJECT HIM TO FURTHER PHYSICAL AND MENTAL HARM, HE ASKs THIS COURT TO PROTECT HIS IDENTITY.**

Since disclosure of Roe's identity would reveal personal and sensitive information and will likely subject him to further physical and mental harm, he asks this Court to protect his identity pursuant to factors 1 and 2 of *A.B. v. Hofstra Univ.*, No. 2:17-cv-5562 (DRH)(AYS), 2018 U.S. Dist. LEXIS 68918, at *2 (E.D.N.Y. Apr. 24, 2018) and set forth on page 32 of St. John's memo. The factors are as to:

1. Whether the litigation involves matter that are highly sensitive and personal [in] nature, and
2. Whether identification poses a risk or retaliatory physical or mental harm to the… party [seeking anonymity]…

Roe was subjected to violent threats and experienced physical attacks upon the posting of the Tweet. (Cpl. ¶'s 45-47). Doe alleged violent sexual misconduct by Roe which allegations were admittedly rejected by the French police. (Doe's memo page 3). The St. John's faculty hearing board also rejected them. St. John's cannot demonstrate a significant reason that any real interest would be served by revealing Roe's identity other than to victimize him and to further victimize him by republicizing the tweet.

Since disclosure of Roe's identity would reveal personal and sensitive information and will likely subject him to further physical and mental harm, he asks this Court to protect his identity.

**Conclusion**

       Wherefore, Roe respectfully requests that this Court deny St. John's motion in all respects and award Roe his attorney's fees and such other and further relief as shall be just and equitable.

                                            **Attorneys for plaintiff Richard Roe**

July 28, 2020

                                            _____
Peter G. Eikenberry (7257)
75 Maiden Lane, Room 402
New York, NY 10038
(917) 596-4168, and
pete@eikenberrylaw.com

Michael Valentine
61 Third Place
Brooklyn, New York 11231
Tel: (718) 858 0818
Cell: (917) 593 1047
mvalentine@valentinelaw.nyc

(Derya Lane, on the brief)

19