21-1125
*Roe v. St. John's University*

PARKER, *Circuit Judge*, concurring:

I concur in the Court's opinion. In doing so, I am of course aware that university disciplinary processes can present sensitive and difficult adjudicative concerns. *See Vengalattore v. Cornell University*, 36 F.4th 87, 114-15 (2d Cir. 2022) (Cabranes, J., concurring); *Doe v. Miami Univ.*, 882 F.3d 579, 599-603 (6th Cir. 2018*); Doe v. Baum*, 903 F.3d 575, 581-85 (6th Cir. 2018); *Plummer v. University of Houston*, 860 F.3d 767, 778-84 (5th Cir. 2017) (Jones, J., dissenting); *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 403-07 (6th Cir. 2017); *Messeri v. DiStefano*, 480 F. Supp. 3d 1157, 1164-66 (D. Colo. 2020); *Doe v. Univ. of Mississippi*, 361 F. Supp. 3d 597, 608-14 (S.D. Miss. 2019); *Doe v. N. Michigan Univ.*, 393 F. Supp. 3d 683, 693-95 (W.D. Mich. 2019); *Walter v. Queens Coll.*, 390 F. Supp. 3d 382, 402-03 (E.D.N.Y. 2019). While these issues will undoubtedly come before us in the future, I believe the district court decided this case correctly.

I write separately to draw attention to the complicated circumstances under which Saint John's University ("SJU") adjudicated Doe's and Smith's sexual assault allegations against Roe, circumstances that may require university adjudicators to make difficult decisions in the face of competing considerations.

21-1125
*Roe v. St. John's University*

While Roe's complaint, whose well-pleaded allegations the Court rightfully takes as true at the motion-to-dismiss stage, alleged that it was Doe who initiated sexual contact with Roe before subsequently submitting a sexual assault complaint against him to SJU, Doe's account of her encounter with Roe differed markedly. Doe and Roe were both SJU students studying abroad in Paris. According to Doe, on the night of the alleged assault, Roe pulled her away from her friends at the club "to dance with him and then he kissed her." JA 267. Doe further claimed that Roe made her feel uncomfortable "immediately" at the club. She "signaled her discomfort to her friend who came over and pulled Doe away from [Roe] and they rushed to the bathroom together to get away from" Roe. *Id.* Doe then left the club to return to her residence. After Doe returned to her room and fell asleep, "[Roe] entered Doe's dorm room while Doe was still sleeping." Doe recalled that she "awoke to [Roe] on top of her in bed." *Id.* Doe's "pants had been pulled down and [Roe] was digitally penetrating her vagina," causing Doe to be "frozen in shock" and unable to speak or scream. Doe eventually managed to turn herself over and asked Roe to stop, but instead "felt [Roe] begin to masturbate against her back." *Id.* Doe asked Roe to stop once more, and he finally left. Doe's account is, of course, not relevant to the opinion's

1   Rule 12(b)(6) analysis, *see Majority Op.* at 5 n.3, but it demonstrates that during

2   the hearing, SJU was faced with competing accounts of what had transpired

3   between the two.

4   As with Doe's allegations, the majority opinion correctly refrains from

5   considering Smith's underlying accusations in its analysis. *See id.* at 9 n.6.

6   However, both Smith's allegations and the context in which they were made

7   further underscore that extensively second-guessing SJU's handling of these

8   accusations is a road we should proceed down with caution.

9   Contrary to Roe's recollection of their interaction, Smith reported "falling

10  asleep on the living room couch and awakening to discover [Roe] . . . with his

11  hand inside her pants" and "penetrating her vagina with his fingers" without her

12  consent. JA 28. Subsequently, she alleged violations of SJU's policies against

13  non-consensual sexual contact and non-consensual sexual penetration. The

14  issues surrounding SJU's consideration of the Smith incident were arguably

15  more complex because they followed the Doe hearing and SJU's imposition of a

16  suspension on Roe for assaulting Doe. Given this sequence of events, the

17  opinion concludes, SJU reasonably suspended Roe pending further investigation

18  into Smith's accusations. *See Majority Op.* at 32.

3

Roe argues on appeal that his due process rights were violated by SJU's handling of both the Doe and Smith adjudicative processes. But the Court's opinion correctly notes that any potential procedural errors in SJU's adjudication do not *ipso facto* demonstrate sex bias against Roe, as he claims. *See id.* at 21-23.

As the opinion recognizes, school officials are responsible for the education and wellbeing of their students, and they are obligated to balance myriad interests, particularly those of the accused, when dealing with allegations of sexual assault. These officials are not federal judges presiding at criminal trials. *See id.* at 39. Thus, we should be cautious about reflexively imposing the requirements and expectations of an Article III tribunal on them. Accordingly, I concur.